

Beau Buffier
bbuffier@wsgr.com
O: 212.999.5800
F: 866.974.7329

Wilson Sonsini Goodrich & Rosati
Professional Corporation
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022

June 30, 2025

**VIA ECF**

The Honorable Jeannette A. Vargas
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, New York, NY 10007

      Re:    *Compass, Inc. v. Zillow, Inc. et al*, Case No. 1:25-cv-05201-JAV (S.D.N.Y.)

Dear Judge Vargas:

      The Court should deny Compass's Motion for Expedited Discovery, Dkt. 31 ("Discovery Motion") or, alternatively, defer a decision until after Zillow has opposed Compass's Preliminary Injunction Motion, Dkt. 23 ("PI Motion"). There is no emergency here: Compass waited ***nearly three months*** to bring this lawsuit, has proposed a three-month schedule for its PI Motion, and faces no irreparable harm. Here, Compass seeks to turn back the industry-wide status quo of transparency and liquidity in for-sale residential real estate markets. Full briefing on the PI Motion will allow the Court to assess whether discovery is necessary or whether the motion can be denied on the papers. If the Court decides limited discovery is needed, additional time to reach that decision will not unduly prejudice Plaintiff's request for a hearing this fall.

**I.**    <u>**Compass's Lawsuit Will Impair Competition Rather Than Promote It.**</u>

      Since its founding in 2004, Zillow's mission has been to make home a reality for more people. Zillow has innovated to democratize real estate information, creating a platform that simplifies the process of buying, selling, or renting a home. Zillow's websites and apps have succeeded because they provide consumers with free access to for-sale listings alongside highly useful information and tools. Zillow provides maximum transparency and has become a trusted resource for millions of users, who are able to use Zillow to find buyer agents who represent their best interests rather than relying on listing agents whose duty is to the seller. A vital aspect of attracting and maintaining the trust of users is ensuring that Zillow has complete, timely, and accurate information about home sale listings in a given area. Most for-sale listings displayed on Zillow are not submitted directly to Zillow but rather obtained from feeds provided by local Multiple Listing Services ("MLSs"). These same feeds that Zillow relies on are widely available to others in the real estate industry, including to other websites (Realtor.com, Homes.com) and brokerages (Compass, Keller Williams) who offer the same syndicated listings to consumers.

      Many MLSs require their member brokers, such as Compass, to report a for-sale listing to the MLS within one day of being publicly marketed (which may be subject to exceptions that can vary by local MLS). This is reflected in the Clear Cooperation Policy ("CCP") the National Association of Realtors introduced in 2020 to make the real estate market more liquid,

**WILSON SONSINI**

Hon. Jeannette A. Vargas
June 30, 2025

transparent, and accessible for all. The CCP ensures buyers have access to all available listings, provides sellers with access to the widest pool of buyers, and fosters competition between brokers and agents. Although Compass recently lobbied (unsuccessfully) for a full repeal of the CCP, it has been revised, effective later this year, to allow certain delayed listings to be excluded from public syndication while still being submitted to the MLS and accessible to all brokers.

On April 10, 2025, nearly three months ago, Zillow publicly announced its Listing Access Standards ("Standards") to explain how Zillow is implementing the CCP *on its own websites and apps*. To publish a listing on Zillow, the Standards require that the home be submitted to the applicable MLS and that the listing information be accessible by anyone (not just Zillow) within one business day after the first public marketing. This requirement applies to *all* for-sale listings, not just listings from Compass. Sellers who do not want to publicly advertise their listing on the MLS or on Zillow remain free to do so and can limit public display. Likewise, other entities that display for-sale listings to prospective buyers, including Compass, remain free to display such listings from any source, including the MLS, regardless of whether Zillow would display them.

Compass's lawsuit seeks to reverse the technological transformation—pioneered by Zillow and others—that has allowed home sale listings to be available for free to anyone on the Internet. Compass would erect new barriers for buyers by making listings exclusive to each broker—resulting in reduced transparency, less market liquidity, and a more frustrating and less efficient experience for buyers and sellers. Compass seeks to unravel this innovation and transparency for buyers and sellers in favor of Compass's own gain. Compass claims to "differentiate" itself from other brokers by maintaining a stock of home sale listings that buyers can access only through Compass and therefore create a sense of "urgency" to sell homes at a "premium." Complaint ¶¶ 7, 34, 58, 61 (fig. 3). Nothing in Zillow's Standards prevents Compass from doing this. But when Compass fails to sell a home through its own agents and "public-facing" platform (contrary to its appeals to privacy), Dkt. 24 at 8, it asks the Court to *force* Zillow to display that listing for free.

It is well-settled that the antitrust laws do not impose such a duty to deal. The Supreme Court has repeatedly recognized that "businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). Compass has advanced even weaker theories of conspiracy that should be dismissed outright for several reasons. As a threshold matter, Compass lacks antitrust standing because it has failed to plausibly plead harm to competition or any causal connection between the challenged conduct and its alleged injuries. *See Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121–122 (2d Cir. 2007). And Compass has not plausibly pleaded any conspiracy where, as here, industry participants are alleged to have acted in parallel out of self-interest to protect themselves from the evident harms of Compass's action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553–54 (2007) (parallel or common reaction among firms is not in itself unlawful). As Zillow's PI opposition and Motion to Dismiss will establish, no discovery is necessary to decide the PI Motion and dispense with this case.

**WILSON SONSINI**

Hon. Jeannette A. Vargas
June 30, 2025

### II. <u>Compass's Motion for Expedited Discovery Should Be Denied or Deferred.</u>

Compass has not met its burden to show "good cause" for expedited discovery or that its proposed discovery is "reasonable[]" in these circumstances. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005). As the Supreme Court cautions, "antitrust discovery can be expensive" and those burdens generally should not be imposed until a court is satisfied that the plaintiff has adequately pleaded its claims. *Twombly*, 550 U.S. at 558. Zillow's PI opposition will show that Compass's allegations are facially deficient on all Counts. Compass should not be permitted burdensome discovery before the Court at least considers Zillow's arguments. *See Edstrom v. Anheuser-Busch InBEV SA/NV*, 2013 WL 4529725, at *3 (N.D. Cal. 2013) (denying expedited discovery in antitrust case where preliminary injunction was sought, as courts "must 'take care' 'to avoid the potentially enormous expense of discovery' until [a court] has determined that plaintiffs' allegations reach the level" of plausibility). The Court will be better positioned to assess whether the PI Motion may be decided on the papers, or if there is any need for limited discovery, after Defendants respond to the PI Motion. Indeed, when a request for expedited discovery is filed alongside a PI motion, courts frequently decide them together. *See, e.g.*, *Geminatio, Inc. v. Hustad*, 2025 WL 1220233, *8–*9 (N.D.N.Y. Apr. 28, 2025) (simultaneously denying preliminary injunction and request for expedited discovery); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998) (same).

**A.     Compass Has Not Shown Good Cause.** "A party may show good cause [for expedited discovery] through evidence of '(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.'" *Shaughnessy v. Scotiabank*, 2024 WL 1350083, at *3 (S.D.N.Y. Mar. 29, 2024). Compass's Discovery Motion fails in every respect.

***There is no emergency or irreparable injury.*** Compass's claimed irreparable injury and need for urgent relief ring hollow when Compass waited nearly three months to bring suit and is willing to wait three ***more*** months before any hearing on its motion. *See* Dkt. 24 at 6 ("[O]n ***April 10, 2025***, Zillow announced its Listing Access Standards"); *see also Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (delay in seeking preliminary relief "suggests that there is, in fact, no irreparable injury"). As the PI opposition will show, the injuries Compass alleges are either compensable through damages (if Compass prevails) or are too speculative to support a preliminary injunction. Critically, it is Compass that seeks to upend the status quo and turn back years of progress in promoting listings access and transparency.

***Compass has no reasonable probability of success.*** Compass's claims have no merit, as Zillow's PI opposition will explain in detail. At its core, Compass complains that Zillow has a duty to carry Compass for-sale listings that Zillow does not want to carry, a highly disfavored and inactionable theory. *See linkLine*, 555 U.S. at 448. Dressing up that claim in the purported

**WILSON SONSINI**

Hon. Jeannette A. Vargas
June 30, 2025

mantle of conspiracy does not help, because Compass has not adequately or plausibly alleged any anticompetitive agreement. Compass also fails to plausibly allege antitrust standing, a proper relevant market, or market power, among other deficiencies.

***Compass fails to show that discovery is needed to avoid irreparable harm or decide the PI Motion.*** The filing of a preliminary injunction motion indicates that the plaintiff "believes that the information it has attached to its motion is adequate to prevail." *Citigroup Inc. v. AT&T Inc.*, 2016 WL 8794472, *1–2 (S.D.N.Y. July 1, 2016). Nowhere does the Discovery Motion articulate *why* any evidence is necessary to decide the PI Motion or avoid irreparable harm. This is not a situation, for example, where evidence may be lost. *Cf. Ayyash*, 233 F.R.D. at 327.

**B.     Compass's Proposed Discovery Is Not Reasonable.** The Discovery Motion should also be denied because it "seek[s] relatively broad discovery on issues going to the merits of [the plaintiff's] case" and is "not narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97–99 (D.D.C. 2014). Compass proposes that Zillow respond to ten expansive Requests for Production ("RFPs") and five Interrogatories, all broadly relating to the merits of Compass's claims. For example, Compass seeks "All documents concerning the market and competition for online home search services" and "All Zillow Data Sets concerning consumers' use of Zillow." Dkt. 31-1 at 6–7. Compass also seeks communications with *all* "other brokerages or other home search platforms," *id.* at 6, even though the only alleged co-conspirators Compass identifies in its PI Motion are Redfin and eXp. *See* Dkt. 24 at 22–28. Compass's requests seek potentially hundreds of thousands of documents (if not more) and terabytes of highly confidential data. Compass, without seeking leave, has also indicated that it will seek fact depositions and expert discovery. Compass's proposed discovery would be aggressive and overbroad on a normal timeline, let alone on this expedited one. As Defendants' PI opposition will establish, discovery is unnecessary here, and at minimum, should be postponed or narrowed significantly.

**C.     Any Discovery Should Be Narrowly Tailored and Reciprocal.** If the Court allows any discovery before ruling on the PI Motion, it should be narrowed significantly. *See Russell Reynolds Assocs., Inc. v. Usina*, 2023 WL 3270344, at *1 (S.D.N.Y. May 5, 2023); *In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, 2014 WL 12959675, *2 (S.D.N.Y. July 23, 2014) (authorizing limited expedited discovery "sufficient to show" each topic). Here, only Compass's RFP Nos. 1–2 are remotely practical and relevant to the PI Motion. If limited to a handful of custodians and modified per Exhibit 1, Zillow believes it can respond to these requests in a few weeks. The others are overbroad, unduly burdensome, and indistinguishable from full merits discovery. Should the Court authorize any discovery, Zillow respectfully requests leave to promptly propound discovery reciprocal in number and scope.

Sincerely,
*/s/ Beau Buffier*
WILSON SONSINI GOODRICH & ROSATI, P.C.