# EXHIBIT K

https://www.caare.org/2025/04/14/zillows-stand-against-private-listing-networks-exposes-harm-to-sellers-and-buyers/

**CAARE** Consumer Advocates
in American Real Estate *(501(c)(3))*

  


DONATE

| CONSUMER ALERTS | BUYER | SELLER | PROFESSIONAL | SERVICE PROVIDERS | HELP CAARE | RESOURCES |

# Zillow's Stand Against Private Listing Networks, Exposes Harm to Sellers, Buyers, and Market Competition

**The Hidden Cost of Private Listing Networks: Why Zillow's Policy Shift Matters for Consumers and Competition**

By Douglas R. Miller, Executive Director of Consumer Advocates in American Real Estate

**Overview**

In April 2025, Zillow announced it would no longer accept listings from brokers who market properties privately while withholding them from the MLS and public portals. This decision, which aligns with long-standing concerns from consumer advocates, represents a significant step toward restoring transparency, fairness, and competition in the residential real estate market. This white paper explores why private listing networks (PLNs) are harmful to both buyers and sellers, how they exploit regulatory loopholes, and why Zillow's policy change is not just welcome, but necessary.

**I. What Are Private Listing Networks?**

Private Listing Networks, also known as office exclusives or delayed marketing exempt listings, are properties marketed internally by a brokerage or to a limited group of agents, often while being publicly promoted through signage, email blasts, and social media. These listings are kept off the MLS and out of public portals like Zillow, Redfin, and Realtor.com, at least initially.

Brokerages often claim that PLNs offer "discretion" or "control" to the seller, but in practice, they serve to consolidate power within large brokerages by:

- Increasing the chances of double-ending deals
- Steering buyers toward in-house agents
- Denying sellers full exposure to the open market
- Undermining small brokers and FSBO alternatives

PLNs are frequently marketed under two misleading justifications: that they allow sellers to "test the market" before going fully public, and that they protect the seller's privacy. Both claims are largely unfounded.

Testing the market without full exposure provides misleading data and undermines the core principle of market competition. A seller cannot truly gauge interest or value without access to a wide pool of potential buyers. As for privacy, listing your home for sale inherently requires some level of public disclosure. There are already established ways to manage privacy—such as restricted showing times or NDAs for luxury listings—without sacrificing public visibility. The vast majority of sellers benefit more from broad exposure than from limited, broker-controlled visibility.

A 2021 study by Bright MLS found that homes marketed through the MLS sold for an average of 16.98% more than those that were not—further underscoring the financial risks of limiting visibility.[1]

**II. How PLNs Harm Consumers**

For Sellers:
PLNs restrict exposure, which limits competition among buyers. Fewer offers typically mean lower sale prices. Sellers are often not fully informed of the tradeoffs and may be misled into believing that private marketing is a strategic advantage.

For Buyers:
PLNs deny buyers access to the full range of available homes. This often pressures them to work with agents from large brokerages who claim to have access to off-market listings, thereby creating coercive and anti-competitive dynamics.

For the Market:
PLNs fragment the marketplace, reduce transparency, and allow dominant brokers to manipulate inventory and control who gets access to listings and when. This undermines the integrity of the entire system.

**III. How NAR's Clear Cooperation Policy Enabled PLNs**

The National Association of Realtors (NAR) introduced the Clear Cooperation Policy (CCP) under the pretense of eliminating pocket listings. But instead of banning all private marketing, NAR carved out an exception for office exclusives—effectively legalizing a new form of inventory hoarding.

Even more troubling, the CCP was weaponized to eliminate competition from FSBO firms. These firms had offered affordable public-facing marketing services for sellers who didn't want to use the MLS or a full-service Realtor. The CCP forced those listings off the public platforms, reducing consumer choice and insulating the MLS cartel from market disruption.

According to a 2022 paper by the Brookings Institution, the real estate industry's reliance on self-regulation and limited competition has contributed to inflated transaction costs and limited innovation in the brokerage sector.[2]

**IV. Why Zillow's Policy Is a Game Changer**

Zillow's new policy prohibits listings from brokers who market properties privately while withholding them from the MLS and public portals. This move:

- Aligns with the original intent of CCP—to prevent hidden inventory
- Restores visibility for buyers
- Pressures brokers to abandon self-serving listing practices
- Signals a major tech platform is willing to challenge the old brokerage cartel

This shift also implicitly supports the role of consumer-first FSBO models by creating a more level playing field for alternative listing strategies.

Zillow's stance reflects a growing awareness that the traditional brokerage model too often prioritizes internal deal flow over client outcomes. When inventory is withheld for the benefit of internal agents or affiliate relationships, the consumer loses.

### V. Recommendations

**1. Support Zillow's Policy** – Other portals should follow Zillow's lead to preserve transparency and buyer access.
**2. Ban Dual and Designated Agency** – No one—agent or broker—should represent both sides of a transaction.
**3. Reinstate FSBO Access** – Platforms should explicitly welcome FSBO marketing firms that do not rely on the MLS.
**4. Close the Office Exclusive Loophole** – Regulators should end the exemption that allows large firms to withhold listings from the public.
**5. Encourage DOJ Oversight** – Antitrust enforcers must monitor the use of PLNs to restrict competition and consumer choice.

### Conclusion

Zillow's decision to limit private listing networks is not just a policy tweak, but a stand for consumer protection, marketplace transparency, and real competition. For too long, the real estate industry has allowed dominant brokers to game the system with impunity. This is a rare moment of alignment between a tech platform, legal reformers, and consumer advocates. The market, and the public, will be better for it.

### Footnotes:

[1] Bright MLS, "The MLS Effect: How Access to the MLS Impacts Home Sale Prices," April 2021.

[2] Aaron Klein, "Reimagining Real Estate: Why the Brokerage Industry Needs Reform," Brookings Institution, October 2022.

[/vc_column_text][/vc_column][/vc_row]

## Stay Informed! Join our Email List

Full Name | Subscription Email | SUBMIT

**BUYER**
Buying a Home
Searching Online
Negotiating With Agents
Open Houses
Real Estate Attorneys
Dual Agency
Designated Agency
Home Warranties
Bonuses
Consumer Alerts

**SELLER**
How to Sell a House
Listing Contract Clauses
Consumer Friendly Listing Contract
How to Negotiate Commissions
10 Worst Practices
Dual Agency
Designated Agency
Open Houses
Do It Yourself Homebuyers
Home Warranties

**PROFESSIONAL**
ARE
Lenders
Media
Real Estate Action Lawyers
Real Estate Professional
Regulators
Legislators

**ABOUT CAARE**
CAARE non-profit status and more.

CAARE Consumer Advocates in American Real Estate 501(c)3

Consumer Advocates in American Real Estate 501(c)3

Excelsior, MN 55331 email us:
info@caare.org

We are the only non-profit charity dedicated to consumer protection in residential brokerage, title insurance and legal services. We empower consumers with information, tools, and advocacy.

DONATE