July 19, 2025

<u>*Via CM/ECF*</u>

The Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      **Re: <u>*Compass, Inc. v. Zillow, Inc. et al.*</u>, Case No. 1:25-cv-05201-JAV (S.D.N.Y.)**

Dear Judge Vargas:

      Plaintiff Compass, Inc. ("Plaintiff") and Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC (collectively, "Defendants") respectfully submit this joint letter regarding the current status of the parties' discussions in advance of the status conference on July 21, 2025. The parties have continued to meet and confer regarding discovery and scheduling since the last status hearing on July 10, 2025. Although the parties have made great progress in their discussions and worked collaboratively to determine the scope of expedited discovery in advance of a preliminary injunction hearing, this letter provides details regarding several areas where the parties continue to discuss open issues or are at an impasse. Further, this letter attaches proposed schedules for the Court to consider.

      Each party reserves its right to serve and obtain more fulsome discovery without these limitations during merits discovery.

    **A.  Requests for Production of Documents – Custodial Files**

      The parties have reached a consensus regarding the general scope and procedures for responding to each other's requests for production of documents with respect to custodial documents for purposes of expedited discovery. The parties have agreed on a set of 5 document custodians per side.

      The parties have exchanged search terms to apply across the custodians' documents, excluding text messages.[1] The parties are continuing to meet and confer regarding these search terms. The parties have further negotiated in good faith and agreed to limit the relevant time period for the majority of custodial documents to March 1, 2025 through June 23, 2025.

      However, the parties seek the Court's guidance regarding the number of documents to be reviewed in expedited discovery.

    **Plaintiff's Position**

---

[1] With respect to text messages, the parties agreed to not limit the review by search terms and will negotiate a separate review protocol.

The Honorable Jeannette A. Vargas
July 19, 2025
Page 2

    Although Plaintiff is willing to continue to negotiate with Defendants regarding the scope of its proposed search terms, Defendants have stated that they are only willing to review for responsiveness 10,000 to 12,000 documents total.[2] This proposal includes not only documents "hitting" (i.e. that contain) on Plaintiff's proposed search terms, but also those documents' family members (i.e. documents attached to or embedded in the documents hitting on Plaintiff's terms). Plaintiff's current search term proposal (which it is willing to consider narrowing further) hits on only 15,000 documents, but inclusive of family members the total is approximately 39,000. Plaintiff believes that it can negotiate with Defendants additional ways to narrow its search terms so its terms are only hitting between 10,000-15,000 documents, but there may be a point where Plaintiff cannot narrow its search terms any further to reduce the total set for review—*inclusive of family members*—to the range that Defendants assert they will agree to. Plaintiff would appreciate the Court's guidance regarding what is an appropriate number of documents for Defendants' to review for purposes of expedited discovery.

**Defendants' Position**

    When advising the parties on the appropriate scope of expedited discovery, the Court instructed the parties to meet and confer to aim for "a discovery world of … several thousands of documents, but not tens of thousands." July 1, 2025 Conf. Tr. at 6:3-5. Since then, Zillow has worked diligently with Compass to attempt to reach agreement on a search term proposal that would result in a review population approaching the Court's guidance. But Compass continues to insist on terms resulting in tens of thousands of hits, an overbroad population for a review and production process occurring over mere weeks.

    Compass's most recent search term proposal results in a population of over 39,000 documents, a number that will only grow as Zillow continues to load text messages from agreed custodians. Rather discuss the kind of significant modifications needed to cut this population to a reasonable size, Compass has tried move the goalpost, arguing that the parties should count only documents directly hitting on search terms, not the total resulting review population when document family members (e.g., all the attachments to an email that hit on a search term) are included. In the case of Compass's latest proposal, this still includes over 15,000 hits, a still-excessive number even by Compass's measure.[3]

    Compass's new approach ignores the actual burden of the discovery Compass seeks. Zillow will need to review the entire population, including families, for production,

---

[2] Note that this figure does not mean that Defendants would be *producing* 10,000-12,000 documents. This is the total number of custodial files that Defendants are willing to review for responsiveness.

[3] Compass notes that the number of documents ultimately produced after responsiveness and privilege review may be smaller than the review population. But the burden and time required is driven by the size of the *review* population, as Zillow must review them all. Moreover, Compass offers no basis to conclude that responsiveness review will substantially reduce the size. A review population of 10,000 – 12,000 helps ensure that the number of *produced* documents also will be in the thousands.

2

regardless of which documents in a family hit on search terms. The burden comes not from the number of hits, but from the number of documents to be reviewed and produced.

In seeking an extremely aggressive discovery schedule and production deadlines, the Court emphasized that the Parties would need "to focus on the best way to narrow the scope of [the] discovery" they were seeking. July 1, 2025 Conf. Tr. at 9:17-18. If Compass continues to demand more extensive discovery than the schedule permits, it may simply not be feasible for Zillow to meet the production timeframes which the parties have been negotiating. Accordingly, Zillow asks that the Court reaffirm its guidance that the parties aim for a review population numbering in the thousands, not tens of thousands.

### B. Requests for Production of Documents – Non-Custodial Files

#### a. Plaintiff's Go-Gets to Defendants

The parties both seek a limited set of "go-gets" or non-custodial documents. Plaintiff seeks from Defendants the following categories of go-gets: (1) Documents sufficient to show Defendants' view of the competitive landscape between January 1, 2024 to June 23, 2025, such as market share or competitive landscape studies; (2) Defendants' board presentations or minutes, strategic plans, and SWOT analyses from January 1, 2024 to June 23, 2025; and (3) any playbook developed by Defendants that outlines how Defendants would target, undermine, penalize, or impact any brokerage that did not list all of its listings on Zillow.

The parties have reached agreement regarding the scope of go-get (1) and expect they will be able to reach an agreement regarding (3). Regarding (2), the parties are at an impasse regarding Plaintiff's request for "board presentations or minutes."

**Defendants' Position**

Zillow should not be required to produce its board presentations or board minutes during expedited discovery. These documents are only marginally relevant to the issues raised in Compass's PI motion, and any potentially relevant portions of these documents are largely duplicative of other documents that Zillow has already agreed to produce. Given the high degree of competitive sensitivity, the Court should find that the burden of producing these documents outweighs the benefit, and therefore should not require production. *See* Fed. R. Civ. P. 26(b)(1).

Discovery at this stage should be narrowly tailored to address issues necessary to decide the preliminary injunction. *See In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, 2014 WL 12959675, at *2 (S.D.N.Y. July 23, 2014) ("Where [expedited] discovery has been granted [to allow a court to better evaluate a motion for a preliminary injunction], courts have circumscribed the scope of such discovery."). Compass acknowledged as such when it initially requested "targeted and limited discovery to support its request for preliminary injunction." ECF No. 31 at 2.

Zillow has already agreed to produce documents that satisfy Compass's purported need for board materials. The only reasonably specific basis that Compass has articulated for this

The Honorable Jeannette A. Vargas
July 19, 2025
Page 4

request is that the board presentations and minutes may be relevant to show Zillow's assessment of its market power, an element of Compass's monopolization claim. Compass has contended that Zillow's board presentations and minutes may provide insight into Zillow's understanding of its market share, the growth of its business, and how Zillow's alleged conduct might affect its market position. But Zillow has already agreed to produce documents regarding the "competitive landscape," "market share or competitive landscape studies," "strategic plans" and "SWOT analyses" for the relevant portion of its business from January 1, 2024 to June 23, 2005. Any market share analysis presented to the Board is very likely duplicative and cumulative of the other analyses Defendants have agreed to produce.

The board materials are also largely irrelevant. Zillow has many parts of its business that have nothing to do with the PI Motion, or even the Complaint.  For example, Zillow has a mortgage lending arm; advertising products that it sells to mortgage lenders; and advertising and technology solutions for real estate professionals. The board materials will often cover current and future, highly sensitive commercial information regarding these irrelevant portions of Zillow's business, none of which are even mentioned in Compass's PI Motion. Compass has conceded in meet and confers that it does not seek expedited discovery related to mortgage lending, or these other non-relevant areas. The narrow scope of PI discovery should not extend to Zillow's highly commercially sensitive board materials. If board materials are required to be produced, then Zillow asks that it be required to produce only portions discussing issues related to the reason Compass gave during the meet and confer process for needing them: market power/share/position.

**Plaintiff's Position**

Plaintiffs' request for board materials seeks information that is highly relevant for its claims and defenses, and Defendants have not articulated a sufficient reason to withhold these materials.

First, Defendants do not assert that Plaintiff's request is burdensome or that it would be difficult to collect these materials during expedited discovery. Plaintiff has agreed to limit its request for board materials dated between September 1, 2024 through June 23, 2025 to further minimize any burden on Defendants.

Second, Defendants do not dispute that board materials contain information that is relevant but instead assert that this information is "very likely duplicative and cumulative of the other analyses Defendants have agreed to produce" or contain information relating to Defendants' other business units. Defendants are contesting Plaintiff's geographic market definition and further claim that the Zillow Ban is procompetitive. Defendants' competitive landscape presentations likely do not cover those issues, but Plaintiff expects that Defendants' board materials could discuss these issues as well as other issues that will be litigated during this phase. Regarding the relevancy of materials related to Defendants' other business units, Plaintiff's Complaint includes allegations about Defendants' other business divisions, explaining that Defendants are using the Zillow Ban to help expand and secure Defendants' competitive

4

The Honorable Jeannette A. Vargas
July 19, 2025
Page 5

position in those other divisions. (ECF No. 1, ¶ 55 ("Zillow's ambitions are clear: it wants to use its monopoly power in home search to own every facet of the home selling and buying process while making it harder for other competitors like Compass to challenge it. To do so, Zillow must maintain its monopoly in the home search market—the first and essential step to locking in the users that feed its business model."; *see also id.* ¶ 54; ¶¶ 99-103). Information relating to Defendants' other business units is relevant because it potentially shows Defendants' motivation for the Zillow Ban and Defendants' monopoly power.[4]

Finally, Plaintiff disputes Defendants' position that it should be able to withhold its board materials "given the high degree of competitive sensitivity." Defendants' confidentiality concerns are addressed by the Protective Order, which permits the parties to designate materials "Highly Confidential – Outside Counsel's Eyes Only." (ECF No. 49). *See Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 55 (S.D.N.Y. 2018) (noting that the protective order "addresses any concerns that Defendants may have regarding the confidential or sensitive nature of the information [in the] documents").

Plaintiff respectfully requests that the Court order Defendants to produce the documents responsive to this request.

### b. Defendants' Go-Gets to Plaintiff

Defendants request from Plaintiff the following go-gets: (1) Agent/brokerage training, recruiting, and marketing materials relating to 3PM; (2) Business, marketing, and strategic plans for 3PM; (3) Market and competitive landscape documents and analyses for online home search services; (4) Strategy plans and SWOT analyses for online home search services; and (5) All Documents, from January 1, 2024 to June 23, 2025, concerning any and all projected, potential, or actual impacts of Zillow implementing the Listing Access Standards and/or of the alleged Agreements to boycott You, including any harms that You allege You have suffered or will suffer as a result. Plaintiffs have agreed to the first four of these. As to the fifth, discussions are ongoing, but the parties expect to be able to reach an agreement.

### C. Requests for Production of Data

#### a. Plaintiff's Data Requests to Defendants

Plaintiff seeks the following data from Defendants between January 1, 2024 to June 23, 2025: (1) all Zillow Data Sets concerning consumers' use of Zillow, including but not limited to user data, traffic, visitors and visits, time spent on Zillow; and (2) all third-party Data Sets that Zillow possesses, uses, or relies on concerning consumers' use of Zillow or other online home search platforms (e.g., users, visits, traffic), including but not limited to Comscore data.

#### b. Defendants' Data Requests to Plaintiff

---

[4] Plaintiff is not seeking expansive discovery into these other business units at this expedited discovery stage. Plaintiff's request for board materials is the only document request that implicates this issue.

The Honorable Jeannette A. Vargas
July 19, 2025
Page 6

Should Plaintiffs get discovery on their data requests, then Defendants request the following reciprocal data from Plaintiff between January 1, 2024 to June 23, 2025:

1. All data from January 1, 2024 to June 23, 2025, concerning Consumers' use of Your home search platform, including but not limited to user data, traffic, visitors and visits, and time spent on Your home search platform. Provide such data separately for the website and mobile application of each of Compass's home search platforms; and

2. All data from January 1, 2024 to June 23, 2025, concerning each home bought or sold where You represented either the buyer or the seller, or otherwise were involved in the sale, including but not limited to: (i) MLS ID; (ii) property address; (iii) whether the listing participated in 3PM; (iv) dates the listing participated in each phase of 3PM; (v) date the property was first marketed for sale in any form (whether publicly or privately); (vi) date the property was listed in an MLS; (vii) sale date; (viii) sale price; (ix); whether You represented a buyer or seller or both in the transaction; (x) amount of all commissions received by You in connection with the transaction.

The parties are continuing to meet and confer regarding their data requests and do not believe there is any ripe dispute for the Court's consideration at this time.

### D. Interrogatories

#### a. Plaintiff's Interrogatories to Defendants

Plaintiff originally proposed serving five interrogatories on Defendants. (ECF No. 31-2.) For purposes of expedited discovery, Plaintiff agreed to withdraw three of its five interrogatories during this limited discovery stage and continues to request Interrogatory Nos. 1 and 2. Both interrogatories request that Defendants "[l]ist every discussion, message, and phone call" between Defendants and Redfin Corp. or between Defendants and eXp Realty, LLC between August 1, 2024 to June 23, 2025. The parties are continuing to meet and confer regarding the scope of these interrogatories.

#### b. Defendants' Interrogatories to Plaintiff

Defendants have propounded three interrogatories on Plaintiff:

1. Identify each of Your listings marketed using 3PM and for each such listing state: (i) whether You contend that the listing has been removed from or blocked by Zillow or any other home search platform due to the Listing Access Standards and, if so, the name of the platform; (ii) the MLS ID; (iii) the date the listing was blocked from each platform; (iv) the current status of the property, including whether the property has sold; and (v) all commissions received by, or agreed to be paid by or to, a Compass or an affiliated agent involved in the transaction.

The Honorable Jeannette A. Vargas
July 19, 2025
Page 7

2. Identify and describe in detail all analyses, including the results thereof, performed by You regarding of [sic] the impact of 3PM on home sales (including prices and number of offers); commissions for You, Your affiliated agents and/or brokerages; and/or Your revenue.

3. Identify all harms that You allege You will suffer or have suffered as a result of Zillow implementing the Listing Access Standards and/or the alleged Agreements to boycott You, and for each such harm: (i) describe in detail the extent and dollar amount of any such harm; (ii) describe in detail the basis for Your contention that You would not have suffered this harm but for the Listing Access Standards; and (iii) identify the line (or lines) of business impacted by the harm.

The parties are continuing to meet and confer regarding these interrogatories.

### E. Depositions

**Plaintiff's Position**

Plaintiff respectfully requests that the Court allow the parties to take five party witness depositions per side. It is a common practice in this district to allow for depositions in advance of a preliminary injunction hearing, especially for hearings involving antitrust claims. *See e.g., fuboTV Inc. v. Walt Disney Co.*, 745 F. Supp. 3d 109, 129 (S.D.N.Y. 2024) (describing parties expedited discovery efforts in advance of preliminary injunction, including numerous depositions); *In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2014 WL 12778832, at *3 (S.D.N.Y. Sept. 19, 2014) (noting that parties engaged in depositions during expedited discovery).

**Defendants' Position**

Because Defendants do not believe an evidentiary hearing is necessary to resolve Plaintiff's motion, *see* Section G *infra*, Defendants' position is that no depositions are warranted. Should the Court determine that depositions are appropriate, Defendants request the opportunity to offer a counter-proposal regarding appropriate limitations on depositions.

### F. Expert Discovery

**Plaintiff's Position**

Plaintiff respectfully requests that the Court permit expert discovery in advance of the preliminary injunction hearing, and for expert testimony during the preliminary injunction hearing.

Expert economic analysis of a limited evidentiary record will help the Court understand how the evidence supports Plaintiff's antitrust claims. *See* Fed. R. Civ. P. 702(a). An expert in this case could: (1) help explain the underlying economic principles and benefits of Compass's three-phased model, (2) define the relevant antitrust market in which Zillow and Compass

The Honorable Jeannette A. Vargas
July 19, 2025
Page 8

compete, (3) describe Zillow's market power in the relevant antitrust market, (4) explain the harm to competition that results from the Zillow Ban, and (5) explain the irreparable harm to Compass and others that results from the Zillow Ban. Expert discovery is common in cases alleging antitrust violations. *See, e.g.*, *In re Am. Express Merchants' Litig.*, 681 F.3d 139, 142 (2d Cir. 2012) (noting that antitrust cases often "require complex discovery and expert testimony"). As stated in the Advisory Committee Notes on Federal Rule of Civil Procedure 702, "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge" and "[t]he most common source of this knowledge is the expert witness."

This joint letter and status report is not the proper forum for the parties to dispute the merits of Plaintiff's claims, which are the main reasons that Defendants claim there should be no expert discovery. Defendants have filed their opposition, and Plaintiff will rebut their factual and legal arguments at the appropriate time. The Court has already indicated that it expects additional briefing from the parties in advance of the hearing, and Plaintiff's supplemental briefing will demonstrate the flaws in Defendants' arguments.

Setting that issue aside, Defendants' arguments for why expert discovery is not necessary actually *support* Plaintiff's position. For example, Plaintiff's expert will explain how the Zillow Ban impacts competition market-wide and operates as an anticompetitive restraint that affects commerce across the industry, not just on Zillow's platform, and works to preserve Zillow's monopoly.

The Court should also disregard Defendants' inapposite assertion that Plaintiff waived its ability to provide expert testimony on procedural grounds. First, Defendants have not cited any direct authority on this issue. The rules and case law that Defendants cite to for this purported requirement do not address expert declarations, and the very purpose of engaging in expedited discovery *after* filing a motion for preliminary injunction is to allow the parties to supplement the record and prove (or disprove) the merits of the motion. Further, requiring a plaintiff to file an expert declaration at the same time as filing a motion for preliminary injunction would be incredibly prejudicial to plaintiffs, like Compass, that work expeditiously to file motions for preliminary injunctions in a timely manner.

Second, Defendants cannot claim surprise or prejudice regarding Plaintiff's request for expert discovery in support of its motion for preliminary injunction. Plaintiff advised Defendants of its intent to engage in expert discovery and proposed deadlines during its initial meet and confer with Defendants on June 26, 2025—the day before Plaintiff filed its motion for expedited discovery. Plaintiff also provided additional detail as to the topics its expert would cover in various communications, including on July 6, 2025. Further, counsel in this case are all antitrust litigation experts who have litigated similar types of allegations before and are familiar with the types of issues that an expert would provide testimony on.

**Defendants' Position**

Defendants lack details regarding the scope of Plaintiff's anticipated expert opinions beyond five vague and far-ranging bullet points recently disclosed on July 6, 2025:

8

The Honorable Jeannette A. Vargas
July 19, 2025
Page 9

- "The underlying economic principles and benefits of Compass's 3-phased marketing strategy";

- "The relevant antitrust market in which Zillow and Compass compete";

- "Describe Zillow's market power in the relevant antitrust market";

- "Explain the harm to competition that results from the Zillow Ban";

- "Explain the irreparable harm to Compass and others that results from the Zillow Ban."

But it is clear that Plaintiff's request for expedited expert discovery on these subjects is improper, unnecessary, and would unduly prejudice Defendants.

First, as a basic matter of civil procedure, Plaintiff was obligated to submit *with its moving papers*, any material it deemed "necessary for the decision of the motion." Local Civil Rule 7.1(a)(3); *see Citigroup Inc. v. AT&T Inc.*, 2016 WL 8794472, at *1 (S.D.N.Y. July 1, 2016) (filing motion for preliminary injunction indicates that the moving party "believes that the information it has attached to its motion is adequate to prevail"); *see also* 11A Fed. Prac. & Proc. Civ. § 2949 (3d ed.) (explaining that, on a motion for a preliminary injunction, "[Federal Rule of Civil Procedure] 6(c)(2) requires any supporting affidavits to be served with the motion" and "courts carefully honor the underlying principle of giving the party opposing the application notice and an adequate opportunity to respond"). Compass argues the requirement to submit supporting evidence with a motion does not apply to expert declarations, but offers no support for that position. Notably, the topics Plaintiff identifies for expert testimony involve information already within Plaintiff's knowledge, and Plaintiff has offered no justification why it could have not filed expert materials with its moving papers, especially given the months that have elapsed since Zillow announced the policy at issue.

Second, no expert discovery is necessary to decide Plaintiff's motion. As explained in Defendant's opposition (Dkt. 50), Plaintiff's Sherman Act § 2 claim is based on a highly disfavored duty-to-deal theory, and Plaintiff fails to plead any plausible exception to the general rule that "businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009); *see also* Opp. 13-15. None of the proposed expert testimony can cure this legal defect in Plaintiff's § 2 claim. Likewise, Plaintiff's lack of antitrust standing is evident from the pleadings and is fatal to all of its claims. Zillow's Listing Access Standards govern only its own platform, and as Compass concedes, do not prevent Compass (or any other platform) from displaying its listings anywhere else. *See* Opp. 22-24. Thus, the alleged injuries to Compass *as a brokerage* are not plausibly caused by any competition-reducing aspect of Zillow's conduct in the market *for online home search*. Finally, Plaintiff's suggestion that expert testimony is necessary to determine irreparable harm is meritless. Among other deficiencies, Plaintiff's CEO concedes that it is currently marketing hidden listings on MLS and implementing the 3-Phase Marketing Strategy "as designed." Courts also routinely deny motions for a preliminary injunction based on delays far shorter than Compass's nearly three month delay here. Opp. 24-

28. The Court should not impose the tremendous expense and burden of wide-ranging expert discovery on Defendants based on such a legally deficient motion.

Finally, Plaintiff's proposed expert discovery schedule seeks, in effect, to ambush Defendants with expert reports on complex issues that it has had *months* to prepare, but then give Defendants two weeks to respond. Such a schedule would threaten due process and deprive Defendants of their ability to put on a thorough defense. *See Marshall Durbin Farms, Inc. v. Nat'l Farmers Org.*, Inc., 446 F.2d 353, 357 (5th Cir. 1971) (trial court erred in granting preliminary injunction in antitrust action where defendant was not given adequate time to muster evidence to respond).

### G. Hearing Schedule

The parties respectfully submit their proposals regarding the discovery and hearing schedule as noted in Exhibit A.

**Plaintiff's Position**

Plaintiff bears the burden of demonstrating why its motion for preliminary injunction should succeed. To meet the burden, and to aid the Court in its analysis, Plaintiff strongly believes that an evidentiary hearing is necessary. Plaintiff's proposed schedule and suggested hearing dates vary depending on whether the Court grants Plaintiff's request for expert discovery and depositions (Option 3 of Exhibit A). To the extent the Court is inclined to deny expert discovery, Plaintiff requests that the Court set an earlier hearing date (Option 2 of Exhibit A). Plaintiff recognizes that the hearing date will ultimately depend on the Court's availability, and Plaintiff's witnesses are available on the dates proposed in the two options (Options 2 and 3). Further, Plaintiff believes that the preliminary injunction hearing will likely take several days.

Defendants assert that an evidentiary hearing is not necessary—improperly relitigating an issue already decided by the Court. Defendants' opposition, which is premised on a favorable resolution of several factual disputes, clearly shows why an evidentiary hearing is necessary.

Depending on which of the Options the Court chooses, there are suggested deadlines for prehearing briefs in Exhibit A.

**Defendants' Position**

Defendants respectfully submit that no evidentiary hearing is necessary to decide Plaintiff's motion. As demonstrated in Defendants' opposition (Dkt. 50), Plaintiff's motion should be denied because its claims are deficient as a matter of law and Plaintiff has not shown irreparable harm, among other reasons. *See Redac Project 6426, Inc. v. Allstate Ins. Co.*, 402 F.2d 789, 790-91 (2d Cir. 1968) (affirming a district court's decision to deny a preliminary injunction without hearing live testimony because the written record was sufficient to establish a lack of irreparable harm); *Cano v. City of New York*, 2024 WL 3905474, at *4 (S.D.N.Y. Aug. 22, 2024) (denying PI motion without evidentiary hearing where unnecessary to resolve factual issues; noting "no hard and fast rule in this circuit" requiring evidentiary hearings); *Baerga v.*

The Honorable Jeannette A. Vargas
July 19, 2025
Page 11

*City of New York*, 2023 WL 1107633, at *1 n.1, 6 (S.D.N.Y. Jan. 30, 2023) (denying a motion for preliminary injunction without evidentiary hearing based on plaintiffs' lack of standing where no essential facts on that issue were in dispute); *Loc. 676, UA of Sprinkler Fitters & Apprentices of Connecticut, Rhode Island, & W. Massachusetts v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. of U.S. & Canada*, 2010 WL 3724258, at *10 (D. Conn. Sept. 15, 2010) (denying motion for preliminary injunction due to lack of irreparable harm and finding evidentiary hearing unnecessary where the parties "conducted in-depth discovery" and submitted briefing and arguments "highlighting the evidentiary record"—as proposed here); *Wallikas v. Harder*, 78 F. Supp. 2d 36, 38 (N.D.N.Y. 1999) (concluding "it is not necessary to hold a hearing to resolve any disputed issues of fact" on motion for preliminary injunction where "paper record" was sufficient to show "Plaintiffs have failed to establish the requisite irreparable harm"). Accordingly, Defendants request that Court adopt the schedule reflected in Option 1.

For the same reasons, Defendants do not believe fact depositions or expert reports or depositions are necessary because Plaintiff's motion can be decided on the papers; the Court should therefore not adopt Options 2 or 3. If the Court decides to hold an evidentiary hearing and/or to allow fact witness depositions and/or expert testimony, Defendants have proposed alternate schedules for Options 2 and 3.

### H. Third-Party Discovery

Plaintiff respectfully requests leave from the Court to serve the attached subpoena duces tecum on alleged co-conspirators and third parties Redfin and eXp, seeking limited and specific discovery to support Plaintiff's antitrust claims. *See* Exhibit B (Subpoena to Redfin); Exhibit C (Subpoena to eXp). Expedited third-party discovery is warranted here as this information is necessary for Plaintiff to demonstrate to the Court the merits of its claims during the preliminary injunction hearing. Plaintiff also seeks leave to serve deposition subpoenas on Redfin and eXp at a later date should the Court grant Plaintiff's request for depositions in advance of the preliminary injunction hearing.

Zillow does not oppose Plaintiff's request to serve the attached subpoenas on Redfin and eXp. If the Court allows Compass to conduct third-party discovery of Redfin and eXp, then Defendants would also request leave to conduct third-party discovery of Redfin and eXp.

Counsel for the Parties:

| | |
|---|---|
| */s/ Chahira Solh* | */s/ Bonnie Lau* |
| Chahira Solh (admitted pro hac vice) | Bonnie Lau (admitted pro hac vice) |
| Daniel A. Sasse (admitted pro hac vice) | WILSON SONSINI GOODRICH & |
| CROWELL & MORING LLP | ROSATI, P.C. |
| 3 Park Plaza, 20th Floor | One Market Plaza |
| Irvine, CA 92614 | Spear Tower, Suite 3300 |
| Telephone: (949) 263-8400 | San Francisco, CA 94105 |
| csolh@crowell.com | Telephone: 415-947-2414 |
| dsasse@crowell.com | blau@wsgr.com |

IRACTIVE-12847968.2

The Honorable Jeannette A. Vargas
July 19, 2025
Page 12

| | |
|---|---|
| Kenneth Dintzer (NY Bar No. 2476687)<br>(admitted pro hac vice)<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 624-2500<br>kdintzer@crowell.com | Beau Buffier (NY Bar No. 3932050)<br>WILSON SONSINI GOODRICH &<br>ROSATI, P.C.<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019-6022<br>Telephone: (212) 974-5800<br>bbuffier@wsgr.com |
| Luke Taeschler (NY Bar No. 5308325)<br>CROWELL & MORING LLP<br>Two Manhattan West<br>375 Ninth Avenue<br>New York, NY 10001<br>Telephone: (212) 223-4000<br>ltaeschler@crowell.com | Eric P. Tuttle (admitted pro hac vice)<br>Nicholas R. Sidney (admitted pro hac vice)<br>WILSON SONSINI GOODRICH &<br>ROSATI, P.C.<br>701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104<br>Telephone: (206) 883-2513<br>eric.tuttle@wsgr.com<br>nsidney@wsgr.com |
| *Attorneys for Plaintiff Compass, Inc* | *Attorneys for Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC* |

IRACTIVE-12847968.2