July 28, 2025

*Via CM/ECF*

The Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: ***Compass, Inc. v. Zillow, Inc. et al.***, **Case No. 1:25-cv-05201-JAV (S.D.N.Y.)**

Dear Judge Vargas:

Plaintiff Compass, Inc. ("Plaintiff") and Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC (collectively, "Defendants") respectfully submit this joint letter in advance of the status conference on July 30, 2025. The parties have continued to meet and confer regarding discovery and scheduling since the last status hearing, and the parties have reached an agreement regarding the outstanding discovery issues. This letter sets forth the parties' respective positions regarding (1) the proper scope of expert declarations and testimony for purposes of the preliminary injunction hearing; (2) the number of depositions in advance of the hearing; and (3) the schedule and format of the hearing.

A. **Scope of Expert Testimony**

The parties agree that experts may opine on the following topics during expedited discovery:

- Real estate industry background
- The nature, rationale, and effect of the 3-Phased Marketing Strategy and Listing Access Standards
- Harm to the market and competition (or lack thereof) with respect to the Listing Access Standards
- Balancing of anticompetitive effects and procompetitive benefits with respect to the Listing Access Standards
- Market definition
- Market power (or lack thereof)
- Rebuttal to opinions raised by other side's expert

***Data analysis***: The Parties have agreed to withdraw their respective data-related discovery requests for purposes of the limited and expedited preliminary injunction discovery, without waiver of the ability to issue such discovery requests for data after the preliminary injunction evidentiary and hearing phase of the case is complete. The Parties recognize and agree that as part of the expert discovery for the preliminary injunction, their experts may need to and are free to perform certain calculations to analyze information produced during discovery or

The Honorable Jeannette A. Vargas
July 28, 2025
Page 2

publicly available information, but agree that their experts will not be doing in-depth data analyses such as regression analyses and will not rely on raw data from internal or third-party sources.

**Plaintiff's Position**

Plaintiff has limited the scope of expert discovery to areas that (1) provide necessary background to guide the Court, and (2) only those elements of Plaintiff's claims that are in dispute.[1] Further, Plaintiff proposes that the parties be limited to one expert each at this stage.

***Expert Testimony on the Irreparable Injury Suffered by Compass.*** Plaintiff submits that, in addition to the areas identified above, the scope of expert discovery should cover the harm suffered by Compass, including why it is irreparable in nature. This testimony would include explanations of why and how the Zillow Ban harms Compass and other market participants, including competing home search platforms like Redfin and eXp, brokerages, real estate agents, home sellers, and home buyers, as a matter of economics. The testimony will also clarify why the injury suffered by Compass—loss of goodwill, business control, reputation, and market share—is irreparable. These concepts are economic in nature and appropriately within the bounds of expert testimony. *See, e.g.*, *Zesty Paws LLC v. Nutramax Laboratories, Inc.*, No. 23-cv-10849, 2024 WL 2853622, at *6 (S.D.N.Y. June 4, 2024) (finding irreparable injury based on expert testimony regarding loss of goodwill and market share). Plaintiff's expert also will explain why competitive differentiation is procompetitive as a matter of economics, and why depriving the market of Compass's 3-Phased Marketing Strategy (or others like it) will in turn flatten competition, stymying continued innovation and growth of differentiated platforms and services. Similarly, Plaintiff's expert will explain why home sellers and buyers—who make home purchases only once every seven years—will be irreparably harmed by not being able to use these services now when they are selling or buying their homes.

In opposing expert testimony on irreparable injury, Defendants again attempt to re-litigate the Court's decision permitting expert testimony. Defendants' argument is misplaced; the Court has permitted expert testimony in connection with the PI Motion, the nature of Compass's injury is plainly within the scope of such testimony, and the Court has not excluded expert testimony on the topic. This is not surprising, as irreparable injury is a topic on which experts testify during PI motions. *Id.* (granting preliminary injunction in part because defendant's arguments were "outweighed by the testimony of Nutramax's experts, which specifically addresses the irreparable nature of the expected harm").

---

[1] While the parties generally agree on the fact that relevant market should be the focus of expert testimony, Compass's position is that the geographic component is the only component of the relevant market analysis in dispute here because Zillow did not oppose Compass's product market definition. *See* Defendants' Memorandum in Opposition, ECF No. 50 at 15 (challenging only Compass's geographic market definition). During the parties' conferences, Zillow has not definitively responded to Compass's position in this respect; Zillow has only agreed at this time to consider it. Compass thus reserves the right to offer expert testimony with respect to the relevant product market (online home search) as well as the relevant geographic market.

2

The Honorable Jeannette A. Vargas
July 28, 2025
Page 3

*Expert Testimony Need Not Be Identical to the Moving Papers*. Last, Plaintiff disagrees with Defendants' position that expert testimony must be identical or restricted to Plaintiff's opening papers. Since Plaintiff filed its opening papers, Defendants have filed their opposition, and the Court has ordered expedited discovery. The experts should be able to incorporate and respond to those developments accordingly. Prohibiting the experts from fully considering and incorporating the record evidence would do a disservice to the parties, the Court, and market participants in the real estate industry. And preserving Plaintiff's expert's ability to respond to Defendants' arguments certainly does not amount to "recasting" Plaintiff's essential theories of the case—which are unambiguous and well understood by Defendants. Further, Plaintiff refutes any assertion that Defendants are being "sandbagged" given that fact discovery has barely begun (other than the nearly 1,000 documents that Plaintiff has produced to Defendants) and that there has been no other discovery exchanged for the experts to rely upon.

Given that the parties have agreed on the majority of the topics to be covered, and the Court will provide guidance on the rest, both parties are now fully aware of what will be covered during expert discovery, with neither party at a greater advantage than the other. In fact, Defendants have now received nearly 1,000 documents from Plaintiff, which along with the narrowed scope of expert discovery, allows them to start working on their expert discovery. Much of what Defendants will offer as expert testimony does not involve solely rebutting or refuting what Plaintiff's expert might say.

**Defendants' Position**

*No Opinions on Irreparable Harm to Compass:* Defendants submit that allowing expert testimony on irreparable harm to Compass (or lack thereof) is both unnecessary and would constitute sandbagging. Any information relating to harms that Compass claims to have suffered is within Compass's own knowledge and could and should have been set out with Compass's PI Motion. No discovery from Zillow or any other party was needed, nor could such discovery alter whatever harms Compass claims it has suffered. Indeed, those harms are fact-based (e.g., lost expenditures) and are already outlined in Compass's PI Motion and supporting declarations. No expert testimony is necessary to identify or explain those harms. But to the extent Compass wanted expert testimony, it could and should have included that with its motion. Indeed, in *Zesty Paws LLC*, which Plaintiff points to as support for its position that expert discovery on irreparable harm is appropriate, counter-claim plaintiff Nutramax filed an expert report addressing irreparable harm concurrently with its motion for a preliminary injunction. *See* Expert Report of Professor Nathan Novemsky, Ph.D. at 10-14, *Zesty Paws, LLC*, Docket No. 14-3, 1:23-cv-10849-LGS (S.D.N.Y December 22, 2023). Plaintiff chose not to do so here. Adding new information about its own harms through its expert after the close of expedited fact discovery would be sandbagging.

*Limitation on New Theories*: Plaintiff's expert report should be limited to the theories it has articulated in the Complaint and PI Motion. For example, Plaintiff has alleged only a nationwide market and does not allege any direct evidence of market power, such as increased

3

The Honorable Jeannette A. Vargas
July 28, 2025
Page 4

costs and reduced output. Plaintiff should not be permitted to change those theories in its expert report. This expedited schedule for fact and expert discovery is only workable if Defendants have a fixed target of the theories on which Plaintiff is proceeding, as set out in their Complaint and PI Motion. That allows Defendants to know what to focus on in fact discovery and to begin preparing expert analysis for an eventual expert report. Allowing Plaintiff to change the whole theories of their antitrust claims after the close of expedited fact discovery and in an expert report, with only 3-4 weeks for Defendants to respond, would be highly prejudicial and akin to allowing a Plaintiff to amend its complaint after the close of merits fact discovery and in the middle of expert discovery.

Defendants understand that discovery may reveal additional *facts* that Plaintiff may use to support the theories set out in their PI Motion. That is the purpose of expedited discovery. The purpose is not to allow Plaintiff to entirely recast their antitrust claims and change theories on the fly.

B. **Depositions**

**Plaintiff's Proposal**

Plaintiff and Defendants agree that each side should be eligible to take up to five depositions. Establishing any additional restrictions on depositions or hearing witnesses at this time is premature and unnecessary. There is no need currently to deviate from the Federal Rules of Civil Procedure as to depositions. The parties can further negotiate parameters of those depositions based on the documents and evidence produced during discovery and the realities of how this matter unfolds. The parties will proceed efficiently with depositions, but at this time, especially with Defendants having produced no documents, it is impossible to know whether the depositions will require less than the allotted time under the Federal Rules. Given that this is a period of limited discovery, Plaintiff has already agreed to a narrowed set of deponents (up to five party witnesses) and further narrowing is unwarranted. Indeed, as Plaintiff informed Defendants, Plaintiff is amenable to shorter depositions for certain witnesses, but it does not have sufficient information to make such decisions at this time. The proper time to address whether a deposition may be shorter is after substantial production of documents has been completed, and the parties will work in good faith to figure out how to efficiently conduct depositions.

Similarly, it is premature to presently limit the number of witnesses who will testify at the hearing, particularly when Plaintiff has not yet received a single document from Defendants. It is impossible at this stage to know how many witnesses need to be called at the hearing, and the proposed schedule contemplates that preliminary witness lists would be exchanged in advance of depositions, and final witness lists would be exchanged well in advance of the preliminary injunction hearing. Plaintiff further proposes that each side shall have the ability to list on their final exhibit list the name of a witness that was not previously deposed, in lieu of a witness that was deposed. Both sides shall have the ability to depose the new witness in advance of the preliminary injunction hearing. While Plaintiff agrees that it will be important to know who to depose at an early stage, there could be deposition testimony that requires a different witness than was designated to rebut it. Therefore, while Plaintiff agrees to disclose its first-

The Honorable Jeannette A. Vargas
July 28, 2025
Page 5

party witnesses by August 8, 2025, Plaintiff asserts that there must be the ability to potentially designate a different witness, if warranted, for the PI hearing.[2]

Plaintiff will be prejudiced by Defendants' proposal of having to designate, and limit the number of, fact witnesses for the preliminary injunction hearing before the completion of discovery.

**Defendants' Proposal**

Defendants propose that the number of party fact witness depositions should be based on the number of first-party witnesses each party may call at the hearing, both of which must be subject to a reasonable cap. This would ensure that the parties have a sufficient opportunity to depose any witness who may testify at the hearing. Specifically, Defendants propose that each party may call up to three first-party fact witnesses (e.g., party employees) at the hearing, and may depose up to five fact witnesses from the other party (not including third-parties and experts). Under the proposed schedule, each party will disclose the first-party witnesses it plans to call at the hearing before depositions are taken. This proposal allows Party A to depose all the employees of Party B that Party B discloses it will call at the hearing, plus at least two additional employees of Party B (who might have information helpful to Party A).

Under Plaintiff's proposal, the five deposition cap would be illusory and engender trial-by-surprise. For example, Plaintiff could disclose 10 of its *own employees* in an initial witnesses list on August 8, and Defendants would be able to depose only *half* of them.[3] Even if Defendants could seek and obtain leave from the Court to depose all 10 witnesses before the close of fact discovery, Defendants still might not be able to take depositions of Compass employees that Zillow believes may have information helpful to Zillow (and that Compass is choosing not to call at the hearing).

The prejudice is doubled by Plaintiff's separate substitution proposal. Under that proposal, Plaintiff could then submit a final witness list on October 8 that discloses entirely new Compass employees "that [were] not previously deposed," forcing Defendants to take additional depositions after the close of fact discovery and after expert reports have been submitted. The parties have access to their own witnesses now and should determine before depositions begin which of those witnesses they will call at the hearing. Plaintiff does not need discovery or depositions from Zillow to determine which Compass employees to call.

As reflected in the proposed schedule below, the initial witness list exchange should occur by August 8, well in advance of the close of fact discovery. This early disclosure will allow the other party to prioritize depositions of hearing witnesses. Any modifications to the witness disclosure should be permitted only for good cause. Plaintiff's proposal to allow

---

[2] Defendants' example, which hypothesizes that Plaintiff will disclose 10 potential Compass employees as witnesses, has no basis in reality.

[3] Plaintiff does not dispute that it may disclose more than five Compass employees as witnesses for the hearing.

5

The Honorable Jeannette A. Vargas
July 28, 2025
Page 6

modifications without a showing of good cause is not workable on this expedited timeline as it would require Defendants to conduct additional depositions shortly before the hearing.

Defendants further propose that party fact witness depositions be collectively limited to 20 hours per side (with a maximum of 7 hours per witness). Plaintiff's proposal to allow 7-hour depositions of all witnesses—the same as it would be entitled to in merits fact discovery—is not consistent with the limited and targeted nature of expedited discovery.

Expert depositions should be limited to one per expert of up to 7 hours. The parties will meet and confer on time limits for third-party depositions.

C. **Expedited Discovery and Hearing Schedule**

The parties respectfully submit their proposals regarding the discovery and hearing schedule as noted below. There are some areas where the parties agree on the dates and general approach; but there are also areas of disagreement, which are discussed further below.

Defendants reserve all rights and submit this scheduling proposal without prejudice to their arguments regarding the proper scope of any issues that should be presented at the hearing. *See* 7/21/25 Tr. 21:11-20.

| Event Description | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| Deadline to serve responses and objections to requests for production | July 21, 2025 | July 21, 2025 |
| Deadline to serve objections to interrogatories | July 28, 2025 | July 28, 2025 |
| Deadline for Plaintiff to identify name of expert witness | July 31, 2025 | July 31, 2025 |
| Deadline for Defendants to identify name of expert witness | August 14, 2025 | August 14, 2025 |
| Deadline for substantial completion of production of documents | August 15, 2025 | August 15, 2025 |
| Deadline for responses to interrogatories | August 15, 2025 | August 15, 2025 |
| Deadline to exchange list of first-party fact witnesses for hearing | August 8, 2025 | August 8, 2025 |
| Deadline to conduct depositions of fact witnesses | August 29, 2025 | September 5, 2025 |
| Close of fact discovery | August 29, 2025 | September 5, 2025 |
| Plaintiff serves opening expert declarations | September 5, 2025 | September 5, 2025 |
| Defendant serves rebuttal expert declarations | September 26, 2025 | October 3, 2025 |

6

The Honorable Jeannette A. Vargas
July 28, 2025
Page 7

| | | |
|---|---|---|
| Deadline to conduct expert depositions; close of expert discovery | October 8, 2025 | October 17, 2025 |
| Close of third-party discovery; parties exchange preliminary exhibit lists and final witness lists | October 8, 2025 | October 24, 2025 |
| Plaintiff files supplemental brief ISO PI Motion | October 13, 2025 | October 13, 2025 |
| Parties file and exchange final exhibit lists | October 22, 2025 | October 31, 2025 |
| Defendants' response to Plaintiff's supplemental brief | October 27, 2025 | November 3, 2025 |
| Oral argument on legal defenses to PI Motion and scope of disputed evidentiary issues for hearing | Plaintiff proposes that oral argument on legal issues can be addressed during the preliminary injunction hearing | Week of November 17, 2025 |
| Preliminary injunction hearing begins | November 3, 2025 | December 8, 2025 (3 days) |
| Oral argument/closing arguments on PI Motion | Plaintiff proposes that oral argument on legal issues can be addressed during the preliminary injunction hearing | Week of December 15, 2025 |

**Plaintiff's Position**

Plaintiff has modified its schedule to allow for additional time for certain events over which Defendants have raised concerns, and believe that the schedule it has proposed is appropriate given the nature of a PI motion and hearing.

Plaintiff proposes that fact discovery, including depositions, closes on August 29, 2025, and that Plaintiff serves its expert report on September 5, 2025. Compass has already produced nearly 1,000 documents and will continue to produce documents on a rolling basis, so it can meet the substantial production deadline of August 15, 2025. Accordingly, Defendants may start their review of produced documents at any time to determine who they would like to depose in advance of the August 15, 2025 substantial production deadline, and the parties can start scheduling the depositions since there may be conflicts. Plaintiff is prepared to do the same as soon as Defendants start producing documents.

Second, Defendants' proposal is defective because it seeks to require Plaintiff to serve its expert report on the same day that fact discovery closes, denying Plaintiff sufficient time for its

expert to review, incorporate, and rely on all evidence submitted and deposition testimony obtained. The topics agreed upon by the parties require the analysis of discovery, both documentary and testimonial. Defendants' attempt to hamstring Plaintiff's expert in this way is impermissible.

Third, given the limited scope of expert testimony, Defendants should be able to provide any rebuttal expert testimony within three weeks of receiving Plaintiff's expert report on September 5, 2025. The parties will have access to the same limited universe of documents, information, and deposition testimony, and can start developing their analysis before fact discovery closes.

Finally, Defendants are now asking for bifurcation of a hearing, which would unnecessarily extend the schedule and inappropriately impose a new round of pre-hearing, summary-judgment-style briefing on Plaintiff and the Court. Defendants' proposal is problematic and should be rejected for several reasons. First, Defendants proposed schedule pushes out any potential ruling on Plaintiff's PI Motion until December 2025, all while Plaintiff is being irreparably harmed by Defendants' unlawful conduct. Second, as has been discussed, the Court will need to resolve several factual disputes in conjunction with the legal arguments. For example, the Court would benefit from hearing testimony related to the communications and agreement between Zillow and its co-conspirators, the geographic parameters of the relevant market, the size and power of Zillow in the home search market, and the intent and effect of the Zillow Ban. All these issues are disputed and fact-bound questions, depend in part on witness credibility, and must be resolved under the requisite elements of Plaintiff's claims. For example, Plaintiff provides evidence that the Zillow Ban's intent was to preserve and protect its monopoly and harm Compass, while Zillow offers justifications that, in Plaintiff's view, are self-serving and pretextual. Resolution of these positions should be decided at the hearing with live testimony and cross-examination. Third, Defendants' inefficient proposal tries to secure two bites at the apple. Instead of having an evidentiary hearing, that includes oral argument on legal issues, Defendants now seek to stretch argument over nearly a month. The parties can address legal arguments throughout the hearing and during closing argument, as is typical during a PI hearing. Indeed, in the most recent antitrust PI hearing in this district—which likewise involved a defendant with market power harming a rival—the court did not attempt to litigate the claims or issues piecemeal.[4]

### Defendants' Position

Defendants' proposed schedule is intended to accomplish several important objectives that are not accounted for in Plaintiff's proposed schedule.

First, in light of the breadth of Plaintiff's proposed expert discovery and the significant head start that Plaintiff has had in preparing its opening report, Defendants submit that four weeks to submit a response is appropriate. Plaintiff will not be prejudiced by submitting its expert report at the close of fact discovery, as document productions will have been substantially

---

[4] *FuboTV Inc. v. The Walt Disney Company, et al.,* 745 F.Supp.3d 109 (S.D.N.Y. 2024).

The Honorable Jeannette A. Vargas
July 28, 2025
Page 9

complete three weeks prior and transcripts for depositions can be provided same-day, as is common in expedited circumstances.

Second, Defendants have proposed one additional week to complete fact witness depositions after the deadline for substantial completion of document production. Defendants expect to identify potential deponents based in part on Plaintiff's document productions. It would not be feasible to review any final productions, identify deponents, and schedule up to 10 depositions (across both parties) in a two-week period, as Plaintiff has proposed.

Third, although Defendants' position remains that Plaintiff's motion can be determined on the papers alone, at a minimum, prior to any evidentiary hearing, the Court should hold oral argument on the legal issues raised in Defendants' opposition to the PI Motion and whether the parties' supplemental briefs reveal an absence of material disputed facts on key issues. This will allow the Court to determine whether material issues of fact remain warranting an evidentiary hearing and the proper scope for that hearing, if any. *See* 7/21/25 Tr. (The Court: "[I]n terms of the scope of the hearing itself, certainly we can have that discussion, not today, but I want both parties to have an opportunity both to discuss it and to present their positions to the Court in a fulsome manner."). The Court and the parties all would benefit from arguments and rulings that focus any hearing on the issues material to the Court's determination. Any slight delay in commencing an evidentiary hearing on legally deficient claims will not prejudice Plaintiff as its CEO concedes that it is currently marketing hidden listings on the MLS and implementing the 3-Phase Marketing Strategy "as designed." *See* ECF No. 50 at 25.

### D. Hearing Format

**Plaintiff's Position**

Plaintiff anticipates that the parties will need four to five days for the preliminary injunction hearing. Plaintiff proposes that each side give opening[5] and closing statements, and that fact and expert witnesses provide live testimony, in addition to the presentation of documentary evidence and argument on the legal merits of the claims. During this time period, the Court can also hear argument on legal issues. At this stage, the full scope of the hearing, including which witnesses will testify and what topics will be covered, is difficult to lock down given that discovery is just beginning. Plaintiff proposes that the parties meet and confer closer to the hearing date if there are issues that the parties are willing to stipulate to, which could shorten the amount of time necessary for the evidentiary hearing.

Further, Plaintiff proposes that the closing arguments can be used to address legal arguments and any questions or topics the Court prefers. The Court would have the benefit of having all the evidence—including live testimony and cross examination—when considering what legal issues to prioritize. Plaintiff submits that a full week between the close of evidence and closing statements is too long, particularly for a preliminary injunction hearing. Plaintiff

---

[5] Plaintiff believes that opening statements are necessary to properly situate the Court by presenting the order and nature of evidence that will be presented and can be short (less than an hour).

9

The Honorable Jeannette A. Vargas
July 28, 2025
Page 10

proposes one or two business days between the close of evidence and the beginning of closing arguments.

### Defendants' Position

Defendants submit that three days is sufficient for the hearing, which will allow both parties to efficiently put on fact and expert witnesses on the critical issues in dispute. The parties' supplemental briefing serves the purpose of an opening statement. Closing arguments would be more effectively and efficiently addressed in a subsequent oral argument on the PI Motion, which could be scheduled for the week following the hearing.

### E. Defendants' Answer/Motion to Dismiss

The parties agree that the deadline for Defendants to answer or a file a motion to dismiss should be 30 days after the Court rules on the PI Motion. Defendants respectfully request entry of an order holding in abeyance the deadline to answer or file a motion to dismiss until the Court has ruled on the PI Motion.

Counsel for the Parties:

| | |
|---|---|
| /s/ _Chahira Solh_ | /s/ _Bonnie Lau_ |
| Chahira Solh (admitted pro hac vice) | Bonnie Lau (admitted pro hac vice) |
| Daniel A. Sasse (admitted pro hac vice) | WILSON SONSINI GOODRICH & |
| CROWELL & MORING LLP | ROSATI, P.C. |
| 3 Park Plaza, 20th Floor | One Market Plaza |
| Irvine, CA 92614 | Spear Tower, Suite 3300 |
| Telephone: (949) 263-8400 | San Francisco, CA 94105 |
| csolh@crowell.com | Telephone: 415-947-2414 |
| dsasse@crowell.com | blau@wsgr.com |
| | |
| Kenneth Dintzer (NY Bar No. 2476687) | Beau Buffier (NY Bar No. 3932050) |
| (admitted pro hac vice) | WILSON SONSINI GOODRICH & |
| CROWELL & MORING LLP | ROSATI, P.C. |
| 1001 Pennsylvania Avenue, NW | 1301 Avenue of the Americas, 40th Floor |
| Washington, DC 20004 | New York, NY 10019-6022 |
| Telephone: (202) 624-2500 | Telephone: (212) 974-5800 |
| kdintzer@crowell.com | bbuffier@wsgr.com |
| | |
| Luke Taeschler (NY Bar No. 5308325) | Eric P. Tuttle (admitted pro hac vice) |
| CROWELL & MORING LLP | Nicholas R. Sidney (admitted pro hac vice) |
| Two Manhattan West | WILSON SONSINI GOODRICH & |
| 375 Ninth Avenue | ROSATI, P.C. |
| New York, NY 10001 | 701 Fifth Avenue, Suite 5100 |
| Telephone: (212) 223-4000 | Seattle, WA 98104 |
| ltaeschler@crowell.com | Telephone: (206) 883-2513 |
| | eric.tuttle@wsgr.com |

The Honorable Jeannette A. Vargas
July 28, 2025
Page 11

*Attorneys for Plaintiff Compass, Inc*

nsidney@wsgr.com

*Attorneys for Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC*

11