IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMPASS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> ZILLOW, INC., ZILLOW GROUP, INC., and TRULIA, LLC, <br><br> *Defendants.* | Civil Action No. 1:25-cv-05201-JAV |

**[PROPOSED] ORDER ADOPTING PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Pursuant to the agreement reached between Plaintiff Compass, Inc. ("Compass") and Defendants Zillow, Inc. Zillow Group, Inc., and Trulia, LLC (together "Zillow" or "Defendants") (Compass and Zillow, together, "the Parties") herein, this Court adopts and orders the following Protocol relating to the Production of Documents and Electronically Stored Information in these Proceedings, which binds all Parties and their counsel of record in this Action, whether they currently are involved or become so in the future. The failure of this Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

I.   **DEFINITIONS**

A.   "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

B.   "Document" and "Electronically Stored Information" ("ESI") shall have the same meaning as the usage of these terms in Civil Rule 26.3(c)(2) of the Local District Rules and Federal Rule of Civil Procedure 34(a)(l)(A).

C.   "Native Format" means and refers to the file structure of a document created by

1

the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

  D. "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

  E. "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, as well as OCR or Extracted Text, should such data be available.

  F. "OCR" means optical character recognition technology which is created by software used in conjunction with a scanner that is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software.

  G. "Extracted Text" means the text extracted from a native document, and includes all header, footer, and document body information, including any hidden content, when available. A "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

  H. "Media" means an object or device, including but not limited to, a disc, tape, computer, or other device, on which data is or was stored.

I. "Parties" collectively shall mean all named parties to any action in these Proceedings, including any Party added or joined to any complaint in these Proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

J. "Production" or "Produced" includes any disclosure or exchange of Documents or ESI between the Parties, whether voluntarily or in response to a formal or informal request.

K. "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

L. "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format ("TIFF") image is an example of a Static Image.

M. "Predictive Coding" or "Technology Assisted Review" shall mean processes for prioritizing or coding a collection of documents using computerized systems, such as machine-learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject matter of this Action regarding the responsiveness of a subset of documents and extrapolates those judgments to a designated document set. For purposes of this Protocol, Predictive Coding or Technology Assisted Review is synonymous with computer-assisted review, computer-aided review, continuous active learning, and content-based advanced analytics or other terms used to refer to search methodologies that rely on machine-based learning to identify documents.

N. "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations,

email, and image files.

## II. SCOPE

A. **General**. The procedures and protocols outlined herein govern the Production of Documents and ESI by all Parties. The Parties will take reasonable steps to comply with this agreed-upon Protocol for the Production of Documents and Electronically Stored Information ("Protocol"). All Productions made pursuant to this Protocol are subject to the Protective Order agreed to by the Parties and entered by the Court on July 11, 2025 ("Protective Order"), and any further protective orders or privilege orders entered in these Proceedings. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI ("Producing Party") or a Party requesting Documents or ESI ("Requesting Party").

To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

B. **Limitations and Non-Waiver**. The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. All Parties preserve their attorney-client privileges, work product protection, and other privileges. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of Documents and ESI. All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at any time.

C. **Reservation of Rights**. For the avoidance of doubt, the inclusion of any platform, program, application, or software in Section I as examples does not create any independent

4

obligation or commitment to preserve or collect ESI from such platform, program, application, or software. The Parties reserve all rights to object to any demand to collect or produce documents or ESI from any or all of the examples listed in Section I.

D. **Modification by Agreement**. Any practice or procedure set forth herein may be varied by agreement of affected Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI. Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the above-captioned matter after the date of this Protocol that seeks to deviate from Protocol set forth herein must obtain leave of Court to do so unless all affected Parties otherwise consent in writing. Before seeking Court intervention, Plaintiffs and Defendants shall meet and confer in good faith regarding any modification.

E. **Modification by Court Order**. Nothing in this Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing party; and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Agreement and Order prior to seeking relief from the Court.

III. **PRESERVATION**

The Parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportionate steps to preserve and shall continue to preserve relevant and discoverable Documents and ESI in the Parties' possession, custody, or control in accordance with their obligations under applicable law. The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation. The Parties will timely make disclosures regarding custodians, data sources, date ranges, and categories of

information to be preserved, as are necessary to facilitate the Parties' meet and confer discussions. By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

If a Producing Party identifies a source of potentially relevant information that it does not intend to preserve or search because the source is not reasonably accessible because of undue burden or cost, or for any other reason, the Producing Party shall timely disclose that intention, identify the source and set forth the justification for not searching that source. The Parties shall timely meet and confer regarding any disputes regarding sources of potentially responsive information, and submit any unresolved disputes to the Court for resolution.

Notwithstanding the above, the Parties agree that the following sources of potentially relevant information do not need to be preserved because the source is not reasonably accessible because of undue burden or cost or not proportional to the needs of the case:

1. automatically saved versions of documents and emails;
2. systems, server and network logs;
3. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
4. on-line access data such as temporary internet files, history, cache, cookies, and the like;
5. dynamic fields of databases or log files that are not retained in the usual course of business; and
6. data in metadata fields that are frequently updated automatically, such as last opened dates.

IV. **IDENTIFICATION AND COLLECTION OF DOCUMENTS**

    A.    The Parties will meet and confer to discuss potential custodians, non-custodial

sources, and search methodology. At a time agreed to by the Parties, each Party shall disclose:

1. <u>Potential Custodians</u>. The custodians that it reasonably believes are most likely to have potentially relevant and reasonably accessible Documents or ESI in their possession, custody, or control. The custodians shall be identified by name, connection to the litigation, and job title or description.

2. <u>Non-Custodial Data Sources</u>. A list of non-custodial data sources (*e.g.*, shared drives, servers, structured data sources, cloud resources, etc.), if any, that the party reasonably believes are likely to contain potentially relevant and reasonably accessible Documents or ESI.

3. <u>Search Methodologies.</u> The Producing Party shall conduct a reasonable and good faith search for Documents and ESI (including family members) that are subject to production under the Federal Rules of Civil Procedure. The Requesting Party may propose search terms, date restrictions and other search methodologies for consideration by the Producing Party. To the extent the Producing Party identifies any search terms it deems objectionable, the Producing Party shall propose alternative terms and the Parties shall meet and confer promptly to discuss alternatives. The Parties shall cooperate with each other in the running and exchange of search term hit reports (including hits, hits with attachments, and unique hits) to facilitate such meet and confer process. The Parties shall not delay implementing agreed upon searches and related production while seeking resolution on others.

4. <u>Technology-Assisted Review</u>. The Parties may, but shall not be required to, use technology-assisted review tools or analytics (including but not limited to near duplicate analysis, continuous active learning, or predictive coding) to expedite

7

their review. To the extent the Parties employ predictive coding for uses other than prioritization of documents being reviewed or assistance identifying potentially privileged otherwise protected documents, the Parties shall disclose the tools and methodologies employed and agree to meet and confer as to these tools and methodologies. The Parties will notify each other in advance in writing if they intend to use any predictive coding or technology assisted review (TAR), and will provide a summary of the software, techniques, or technology used and the workflow process for the same. Should disputes about searches or culling methodologies arise, the Parties agree to meet and confer to attempt to resolve them.

In addition to ESI addressed by this provision, the Producing Party shall perform a reasonable and diligent search to locate potentially relevant non-ESI Documents (i.e., paper documents) for the identified custodians and other potentially relevant and reasonably accessible locations not attributed to any specific custodian that the party identifies following a reasonable and diligent investigation.

## V.    ELECTRONICALLY STORED INFORMATION (ESI)

A.    Each of the Parties agrees to conduct a reasonable and proportionate search for ESI and Documents of the identified custodians, if any.

B.    Each of the Parties agrees to make reasonable and proportionate efforts to produce "Discoverable Information," which is defined as ESI and Documents that are the subject of the Parties' respective propounded discovery requests, which are within the scope of Fed. R. Civ. P. 26 and 34, and that are not otherwise objectionable, or subject to a claim of privilege, or other protection afforded to the information.

C.    Only data that is accessible and active without restoration or reconstruction shall

be subject to search and production. Absent good cause shown, the Parties have no obligation to collect, search, review or produce deleted, shadowed, fragmented, residual data, or cached, temporary files, random access memory ("RAM") or other ESI that would only be obtained by taking a forensic image of a server, hard drive or device.

D. The Parties, in the production of relevant Documents and ESI, may not use "email threading"—each email in a thread, chain, or conversation must be produced as a separate file. In other words, the Parties must not limit their productions to the most inclusive email containing the thread of emails.

E. Each Party will use its best efforts to filter our common system files and application executable files by using a commercially reasonable hash identification process. For example, Hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

## VI. FORM OF PRODUCTION

A. Hard Copy Information. The Parties will produce hard copy documents as Bates numbered, single page Group IV black and white TIFF images.

B. Electronically Stored Information (ESI). The parties will produce ESI, whenever possible, in single page Group IV black and white TIFF images with accompanying metadata fields, with the exception of the following file types that, to the extent produced, shall be produced in their native file format with an accompanying placeholder image:

- Spreadsheets;
- Audio files;
- Photos (jpg and jpeg); and
- Video files.

C. Bates Numbering and Confidentiality Designations. Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed

number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder where reasonably feasible. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

  D. Global Deduplication. Global deduplication is not required. However, if any party undertakes such deduplication, removal of duplicate documents shall only be done on exact duplicate documents (based on MD5 or SHA-1 or SHA-2 hash values, at the family level). Attachments shall not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the ALLCUSTODIAN metadata field subject to any exceptions provided in this Protocol.

  E. Parent-Child Relationships. The Parties agree that if any part of a Document or its attachments is responsive, the entire Document and attachments will be produced, except any attachments that must be withheld or redacted on the basis of attorney-client privilege, work-product protection, or any other applicable privilege or immunity. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved. The child-document(s) should be consecutively produced immediately after the parent-document. Links within a document are not considered attachments. For the avoidance of doubt, any ESI

referenced in documents (or any other ESI) by a hyperlink or other pointer shall not be construed to be in the same parent-child relationship solely by virtue of the hyperlink reference.

      F.      Foreign Language Documents. To the extent that Documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language document and ESI in the original language. The Producing Party has no obligation to provide a translation of the Documents or ESI or any portion thereof.

      G.      Documents containing redactions (e.g., pursuant to attorney-client privilege, work product protection or other applicable protections or immunities) will be produced in TIFF image format, along with metadata. OCR reflecting redactions will be provided in text files. When a document is withheld for attorney-client privilege or work product, all metadata for that document is excluded from the metadata file (.DAT). Documents with embedded objects that are withheld from production will be produced in TIFF image format. The Parties have no obligation to include redacted documents on any privilege log, unless the face of the redacted document does not provide all the information that otherwise would appear on the log.

      H.      Document level text files will be named as the first Bates number of the respective document. Extracted text will be provided where it exists for non-redacted documents.

      I.      PowerPoint files shall be produced in color. Documents produced in color shall be produced as single-page, JPG images with JPG compression and a high-quality setting as to not degrade the original image. A Party may with good cause request that certain additional individual documents be reproduced in native format or in color, and such request shall not unreasonably be denied.

      J.      Page level Bates numbers will be branded on TIFF images and additional legends applied where applicable. To the extent produced, native files will be named as the Bates number.

K.  Load files will be provided in standard Concordance delimited format. A standard Opticon cross-reference file will be provided linking the Bates number to the TIFF images and the Concordance load files.

L.  The following fielded data and, where available, metadata will be produced.

| METADATA FIELDS | DESCRIPTION |
|---|---|
| PRODBEG | The production page label of the first page of the produced document |
| PRODEND | The production page label of the last page of the produced document |
| PRODBEGATTACH | The production page label of the first page of the parent document in a family of documents |
| PRODENDATTACH | The production page label of the last page of the last child document in a family of documents |
| TITLE | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item). |
| DOCDATE | Document last modified date or email sent date |
| SENTDATE | The date the email or calendar item was sent |
| TIMESENT | The time the email or calendar item was sent |
| RECEIVEDATE | The date the email or calendar item was received |
| TIMERECEIVED | The time the email or calendar item was received |
| DOCTYPE | Document type |
| RECORD_TYPE | Email, Attach, Edoc, Hard Copy |
| FILE EXTENSION | File extension |
| FILE NAME | Name of electronic file |
| FILEPATH | Original file/path of the location where the item was located at the time of collection |
| PAGE COUNT | Number of pages |
| ALLCUSTODIANS | All custodians or other data sources associated with the document |
| AUTHOR | Creator of the document; any value populated in the Author field of the source file metadata or document properties. |

| METADATA FIELDS | DESCRIPTION |
|---|---|
| LASTMODBY | Information in Last Saved by, Last Modified by, or Last Author in loose file documents or email attachments. |
| FROM | Sender of an email (name and SMTP email address) |
| TO | Recipient of an email (name and SMTP email address identifier) |
| COPIES | Copies of individual on an email (names and SMTP email addresses) |
| BCC | Blind copies (names and SMTP email addresses) |
| EMAIL SUBJECT | Subject of email |
| MESSAGEID | The unique message identifier generated by the source email or calendar system. |
| SOURCEFILEPATH | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| MD5HASH OR SHA1 OR SHA2 HASH | Document unique ID used to de-duplicate documents |
| NATIVELINK | Link to native file |
| TEXTLINK | Link to searchable text file |
| CONFIDENTIALITY | Confidentiality designation |
| REDACTED | User-generated field that will indicate redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| STARTDATE | Start date of chat/appointment. |
| STARTTIME | Start time of chat/appointment. |
| ENDDATE | End date of chat/appointment. |
| ENDTIME | End time of chat/appointment. |
| SIBLINGID | Group ID of text/message. |
| MOBILEORIGIN | Sent or received info. |

M. <u>Structured Data</u>: Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format. The Parties shall meet and confer to address the production and production format of any responsive data contained in a database or other

structured data source.

N.   Productions of ESI and Hard Copy documents shall be provided to the opposing party via Secure File Transfer Protocol ("SFTP"), unless a particular production is too large to be sent via SFTP, in which case individual productions may be provided to the opposing party on an encrypted CD, DVD, hard drive, or other electronic media.

O.   Time Zones.  Where technologically feasible without undue burden, the images for produced Documents, excluding Slack messages and text messages, shall show time stamps in Eastern Standard Time (Coordinated Universal Time ("UTC")-05:00).  For Slack Messages and text messages, images files may alternatively show a different time zone as a result of how such messages are stored, collected, and/or processed.  For all Documents, metadata fields listed above shall be produced in Eastern Standard Time.  Additionally, for any Slack message or text message file produced with an image file containing time stamps that does not reflect Eastern Standard Time, separate metadata fields shall be provided for the time zone reflected on the Document image.

P.   Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Discoverable Information. Any Party that seeks to deviate from or exceed the discovery parameters set forth herein, must obtain leave of Court to do so unless all Parties otherwise consent in writing. Before seeking Court intervention, the Parties shall meet and confer in good faith regarding any modification.

### VII.   PRIVILEGE AND PRIVILEGE LOGS

A.   The Parties may withhold documents subject to a valid assertion of privilege from production, in whole or in part, by designating the documents privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity. At

a mutually agreeable time and date after the conclusion of document production but prior to the close of fact discovery, the Producing Party will produce a privilege log in computer searchable form setting out information sufficient to satisfy the requirements of Federal Rule of Civil Procedure 26(b)(5), identifying, at a minimum:

1. Bates number or other identifier;
2. Name(s) of the Document author(s);
3. Name(s) of the Document recipient(s);
4. Name(s) of the person(s) to whom a copy was sent;
5. The date the Document was created, sent, and received;
6. The type or format of the Document (e.g. email, spreadsheet, PowerPoint, etc.);
7. The Document custodian(s);
8. The Document title or (for emails) subject; and
9. The basis for the assertion of privilege, including a general description of the privileged information.

    B.    The Producing Party shall indicate, on the privilege log or otherwise in a list delivered with the privilege log, which individuals listed on the log are attorneys, and any persons working at the direction of attorneys, including, but not limited to, paralegals and support staff.

    C.    A single Document containing multiple email messages (i.e., in an email chain) may be logged as a single entry. A Document family (e.g., email and attachments) may be logged as a single entry so long as the log entry accurately describes both the email and its attachment(s).

    D.    Communications involving work product associated with inside or outside

counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log.

  E. Upon any party's challenge to a claim of privilege, or to challenge a failure to provide a complete privilege log, the Parties shall promptly meet and confer to attempt to resolve the issue(s) prior to raising any unresolved issue(s) with the Court. If they cannot agree, pursuant to Local Civil Rule 37.2 and Section 6 of the Court's Individual Rules and Practices in Civil Cases, the Parties must request a conference with the Court before any motions may be filed.

  F. Clawback. If, in connection with this litigation, a party inadvertently discloses information that is subject to a claim of attorney-client privilege or attorney work product protection ("Inadvertently Disclosed Information"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection with respect to the Inadvertently Disclosed Information and its subject matter. Any claim of inadvertent disclosure shall be dealt with pursuant to paragraphs 23–26 of the Protective Order.

## VIII. THIRD PARTY DOCUMENTS

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party. Nothing in this Protocol is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

## IX. GOOD FAITH

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Protocol. If a Producing Party cannot comply with any material aspect of this Protocol, such Party shall inform the Requesting Party as to why compliance with

the Protocol was unreasonable or not possible within fifteen (15) days after so learning. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

## X.     NO EFFECT ON DISCOVERY OR ADMISSIBILITY

This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests. Nothing in this Protocol shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Nothing in this Protocol shall be construed to affect the admissibility of any document or data. All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time

## XI.    COSTS AND BURDEN

The parties agree to bear their own costs relating to the production, storage, and maintenance of ESI as provided in this Protocol, subject to any cost-shifting as may be agreed upon by the Parties or required by the Court. Nothing in this Protocol limits or prohibits a prevailing Party from seeking recovery of all allowable fees and costs, including attorney fees and costs, as may be permitted under applicable law and rules.

Dated:  July 29, 2025                                       Respectfully submitted,

*/s/ Chahira Solh*
Chahira Solh (*pro hac vice*)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
(949) 263-8400
csolh@crowell.com

Kenneth Dintzer (NY Bar No. 2476687)
(*admitted pro hac vice)*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
kdintzer@crowell.com

Luke Taeschler (NY Bar No. 5308325)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
ltaeschler@crowell.com

*Attorneys for Plaintiff
Compass, Inc.*

*/s/ Bonnie Lau*
Beau W. Buffier
WILSON SONSINI GOODRICH & ROSATI P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: 212-999-5800
bbuffier@wsgr.com

Bonnie Lau (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI P.C.
One Market Plaza Spear, Tower, Suite 3300
San Francisco, CA 94105
Telephone: 415-947-2000
blau@wsgr.com

Eric P. Tuttle (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: 206-883-2500
eric.tuttle@wsgr.com

*Attorneys for Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC*

**SO ORDERED:**

Dated: _____                                    _____

                                                          HON. JEANNETTE A. VARGAS
                                                          UNITED STATES DISTRICT JUDGE