# Exhibit 4

September 11, 2025

<u>**Via CM/ECF**</u>

The Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
500 Pearl Street
New York, New York10007

Re: <u>***Compass, Inc. v. Zillow, Inc. et al.***</u>, Case No. 1:25-cv-05201-JAV (S.D.N.Y.)

Dear Judge Vargas:

Plaintiff Compass, Inc. ("Plaintiff" or "Compass") and Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC (collectively, "Defendants" or "Zillow") respectfully submit this joint letter regarding the deposition of Lloyd Frink, Co-Founder, President, and Co-Executive Chairman of the Board of Directors of Zillow Group. The Parties previously raised this issue with the Court, ECF 71 at 3-5, and believe the issue is now ripe for the Court to resolve. This letter sets forth the Parties' respective positions as to whether Mr. Frink should be deposed. The Parties have reserved September 24, 2025 as the date for Mr. Frink's deposition should it go forward.

**Plaintiff's Position**

The Court should allow Compass to depose Mr. Frink because despite Zillow's recent claims to the contrary, both the depositions of Zillow's executives and Zillow's documents have shown that Mr. Frink is not an apex witness, and even if he was, Mr. Frink has unique and important information that no other witness can provide.

Mr. Frink has relevant information. Discovery has demonstrated that Mr. Frink is not entitled to any additional protection from a deposition as compared to any other corporate executive. As courts have stated, "[w]hen considering whether to allow the deposition of a corporate executive, the Court must 'begin with the proposition that plaintiffs have no burden to show that the deponents have any relevant knowledge.'" *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122. (S.D.N.Y. 2015) (quoting *In re Garlock*, 463 F. Supp. 2d 478, 481 (S.D.N.Y. 2006)). Rather, the court must consider "the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business." *Scott*, 306 F.R.D at 122. Corporate executives are only excused from testimony "in compelling circumstances." *Id.*

There is no such compelling circumstance here. Zillow does not contest that Mr. Frink has knowledge relevant to Compass's claims. Zillow cannot reasonably claim that there is a possibility of harassment. Nor has Zillow explained what potential disruption of business would occur if Mr. Frink were deposed. Multiple Zillow witnesses have testified that Mr. Frink does not run Zillow's day-to-day operations anymore, meaning that Mr. Frink is not an apex witness that is entitled to additional protection from discovery. *See* Ex. 1 Samuelson Dep. 119:22-120:1

The Honorable Jeannette A. Vargas
September 11, 2025
Page 2

(stating that both Mr. Frink "and his cofounder have stepped back quite a bit from the business");
Ex. 2 Hofmann Dep. 139:12-24 (explaining that Mr. Hofmann copied Mr. Frink on an email
regarding negotiations with Compass the day before Zillow announced the Zillow Ban because
Mr. Frink "over the past year-plus, had started to step back in day-to-day operations . . . but we
would find points in time where we thought it was relevant for [him], to make sure [he]
understood what was going on, and this was one of those").  Indeed, the burden argument cuts in
the opposite direction—given that Mr. Frink no longer runs Zillow's day-to-day operations, Mr.
Frink sitting for a four-hour deposition is *less* burdensome on Zillow than getting discovery from
another source that may be heavily involved in Zillow's day-to-day operations.

Zillow's only argument is about the uniqueness of the information known by Mr. Frink as
compared to the other witnesses already deposed. Discovery thus far[1] has demonstrated that the
information possessed by Mr. Frink is unique and important to the core issues of the case,
particularly given Mr. Frink's knowledge of the company as one of the co-founders, and his
specific knowledge of the industry.

First, the record shows that Mr. Frink was a unique leadership figure regarding Zillow's
Listing Access Standards strategy well before it was developed, and Zillow executives and
employees frequently went to him for his unique perspective on that issue.  For example:

- One of the central Zillow strategy documents includes an important comment relaying
  Mr. Frink's larger strategic view on shifting industry dynamics, ▓▓▓▓▓▓▓▓▓▓▓
  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
  According to the comment bubble input by Zillow executive Curt Beardsley, Mr. Frink
  told Mr. Beardsley at an event ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
  ▓. *See* ZG-00026158 at -59; *see also* Ex. 1 Samuelson Dep. 119:9-122:5.[2]

- Mr. Wacksman testified that Mr. Frink was  involved in Zillow's strategy for its listing
  access standards; that he and Mr. Frink had  conversations about such issues; and that he
  and Mr. Frink had discussed strategies for how to get other industry players to align with
  Zillow.  Ex. 3 Wacksman Dep. 107:9-16 and 108:7-19.

- Mr. Hofmann testified that he discussed the development of Zillow's Listing Access
  Standards with Mr. Frink "from time to time" and that Mr. Frink was invited to attend an
  "industry meeting that we had on pretty much weekly basis" which he would indeed
  attend on occasion. Ex. 2 Hofmann Dep. 131:20-132:10.

[1] The parties have negotiated to considerably limit the amount of discovery for purposes of the Preliminary
Injunction, including limits to date ranges. The number of documents produced by Mr. Frink is not commensurate
with his knowledge of facts and information highly relevant to the claims in this case.
[2] Notably, Mr. Beardsley was not a custodian for purposes of expedited discovery and is not scheduled to be
deposed in advance of the PI, prohibiting Compass to explore with Mr. Beardsley what else he and Mr. Frink
discussed related to the Listing Access Standards, Compass, and the issues in this case.

The Honorable Jeannette A. Vargas
September 11, 2025
Page 3

In short, Mr. Frink was providing guidance and strategy to Zillow's executives and employees, including verbally, about how ███████████████████████. These discussions related to the strategy surrounding and ultimate adoption of Zillow's Listing Access Standards ████████████████████████████████████████.



Mr. Frink's strategic view—in addition to establishing the tone at the top related to pre-marketing and Compass—is highly relevant to Compass's PI motion in two respects. First, it speaks directly to Zillow's economic and strategic incentives to conspire and adopt the ZLAS, with Mr. Frink explaining that ████████████████████████████████████████████████████████. Second, Mr. Frink's views and statements speak directly to Zillow's ████████████████████████████████.

No other witness can testify regarding all the particular pieces of strategy and guidance Mr. Frink provided to various Zillow executives and employees, to others in the industry, and *why* exactly Mr. Frink held such views. Compass thus should be permitted to take testimony as to how Mr. Frink shaped and guided Zillow's strategy with regard to the issues in this case.

Second, the record shows that Mr. Frink was an integral part of Zillow's negotiations with Compass over whether Compass and Zillow could come to an agreement regarding Zillow's Listing Access Standards. For example, the documents and testimony show that:

- Mr. Frink was having separate conversations with former Zillow executives Susan Daimler and Matt Daimler—conversations that no other Zillow witness was party to—in an attempt to influence Compass and facilitate the negotiations between Compass and Zillow. *See, e.g.*, ZG-00009648 (March 5, 2025 texts between Mr. Wacksman to Mr. Frink asking for an update on conversations Mr. Frink was having with the Daimlers to coordinate a meeting with Mr. Reffkin); ZG-00009656 (screenshot of text message between Mr. Frink and the Daimlers, thanking them for "both facilitating the meeting" between Zillow and Mr. Reffkin); CZ_COMP_000105855 (text messages between Mr. Reffkin and the Daimlers where Mr. Daimler notes that "Lloyd [Frink] got back to me and said they are open to having a more strategic conversation (e.g. with Jeremy CEO etc) and that you could set it up by reaching out to Errol or Jeremy");
- Mr. Frink was involved in planning and strategizing for Zillow's negotiations with Compass, *see, e.g.*, ZG-00014437 (March 28, 2025 calendar invite from Mr. Frink to Zillow Chief Executive Officer Jeremy Wacksman to discuss Compass negotiations) and ZG-00008183 (April 11, 2025 e-mail from Frink to others discussing negotiations with Compass); and
- Mr. Frink attended a key meeting between Zillow and Compass executives, *see, e.g.*, Ex. 1 Samuelson Dep. 146:17-147:7 (Zillow's Chief Industry Development Officer stating that Zillow brought Mr. Frink to an April meeting with Compass to "demonstrate [] how

3

The Honorable Jeannette A. Vargas
September 11, 2025
Page 4

serious we were about trying to find a solution and reach agreement"); Ex. 2 Hofmann
Dep. 130:19-25.

In light of this evidence, Compass should be permitted to depose Mr. Frink given his unique
understanding of the issues, including, for example, (1) his individual conversations with the
former Zillow executives and potentially other industry participants regarding Compass or
Zillow's Listing Access Standards; (2) guidance or strategy Mr. Frink gave to others at Zillow;
(3) Mr. Frink's perspective on the Compass negotiations; and (4) what Mr. Frink meant when he
said ███████████████████████████████████████████.

Finally, it would not be inequitable for Plaintiff to take the deposition of Mr. Frink,
particularly since the same four-hour time cap on the deposition would apply to Mr. Frink as it
did to the other depositions of Zillow executives and employees. Defendants have taken six
depositions of Plaintiff's executives, including depositions of its senior-most executives such as
Compass's Chief Executive Officer Robert Reffkin; Neda Navab, Co-President, East &
Brokerage Operations; and Rory Golod, Co-President, West & Growth, Communications, and
Events. Plaintiff has currently only taken the depositions of four of Defendants' witnesses, and
Plaintiff is scheduled to depose one more of Defendants' employees on September 11th[3]—for a
total of five depositions. As noted above, the Parties have already reserved September 24, 2025
as an available and acceptable deposition date for Mr. Frink.

**Defendants' Position**

The Court should deny Compass's renewed request to depose Lloyd Frink, Zillow's Co-
Founder, President, and Co-Executive Chairman of the Board of Directors. By this Thursday,
Compass will have already deposed *five* Zillow witnesses: Zillow's Chief Executive Officer
("CEO") (Jeremy Wacksman), Chief Financial Officer ("CFO") (Jeremy Hofmann), Chief
Industry Development Officer ("CIDO") (Errol Samuelson), Vice President of Strategic
Operations and Partnerships (Katie Berroth), and Senior Director of Strategy and Partnerships
(Steve Lake). Compass has not shown that deposing Mr. Frink—a *sixth* Zillow witness—will
elicit unique information pertinent to Compass's motion for a preliminary injunction ("PI
Motion").

### I.    *The Apex Doctrine Applies to Mr. Frink, a Current Zillow Executive*

Compass's argument that Mr. Frink is not subject to the protections of the apex doctrine
misstates the facts and law. The apex doctrine applies to "senior corporate executives." *Harapeti
v. CBS TV Stations Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021); *see also Shiber v.
Centerview Partners LLC*, 2023 WL 3071554, at *3-4 (S.D.N.Y. Apr. 25, 2023) (quashing
deposition of current executive where plaintiff failed to show "personal and *unique* knowledge of
the relevant facts.").

---

[3] Compass agreed to take these depositions outside of the Court's schedule as a compromise to accommodate the
Zillow witnesses' schedules.

The Honorable Jeannette A. Vargas
September 11, 2025
Page 5

There is no dispute that Mr. Frink is a current "senior corporate executive" in light of his dual roles as Zillow's President and the Co-Executive Chairman of its Board of Directors. That Mr. Frink now focuses more on setting overall product strategy and leading Zillow's Board than day-to-day operations does not mean that the apex doctrine does not apply. *See Treppel v. Biovail Corp.*, 2006 WL 468314, at *1-3 (S.D.N.Y. Feb. 28, 2006) (quashing deposition of board of directors' member based on apex doctrine). Indeed, while Mr. Frink is still an executive with significant current demands on his time, the apex doctrine extends even to former executives who no longer hold roles at a company. *See Harapeti*, 2021 WL 3932424, at *2; *Morrison v. Scotia Cap. (USA) Inc.*, 2024 WL 3316086, at *2-3 (S.D.N.Y. June 7, 2024) (quashing deposition of former executive). As courts in this district have found, the apex doctrine "is animated by broader principles" and "reflects the reality that depositions of high-profile or high-ranking busy individuals with exceptional demands on their schedules present a heightened risk of abuse or harassment, of the sort that Rule 26 expressly guards against." *Mark Anthony Int'l SRL v. Prime Hydration, LLC*, 2025 WL 2055998, at *2 (S.D.N.Y. July 23, 2025) (applying apex doctrine to celebrity soccer player). Simply put, Compass provides no reasonable basis to conclude that Mr. Frink is not protected by the apex doctrine.

## II.   Compass Has Not Established That Mr. Frink Has Unique Information Relevant to the PI Motion

Nor has Compass carried its burden to establish that Mr. Frink has unique information relevant to the narrow scope of Compass's PI Motion. It is well settled that "[a]bsent a showing that the executive 'has unique evidence, personal knowledge of the claims at issue,' and 'other witnesses [are] incapable of providing testimony about the conduct alleged,' the executive is safeguarded from being deposed." *Morrison*, 2024 WL 3316086, at *2  (quashing deposition where apex witness lacked unique knowledge). That principle should apply with heightened force here, where the Court has authorized only narrowly targeted discovery relevant to Compass's PI Motion. *See, e.g.*, Jul. 1, 2025 Hearing Tr. 6:24-7:03 ("some expedited discovery is warranted, [but] it really needs to be focused."); Jul. 21, 2025 Hearing Tr. 27:02-05 ("there should be expedited discovery, but the world should be somewhat narrow"); Aug. 15, 2025 Hearing Tr. 8:02-13 ("while I'm permitting depositions they are supposed to be narrowed and targeted"). None of Compass's laundry list of arguments in support of deposing Mr. Frink holds water.

First, Compass is wrong that Mr. Frink was a "unique leadership figure" regarding Zillow's Listing Access Standards ("LAS"). Zillow's CEO Mr. Wacksman and CIDO Mr. Samuelson each testified that Mr. Frink was *not* part of the working team developing LAS. *See* Ex. 4 Wacksman Dep. 9:3-15[4] (listing members of the team that developed LAS, which did not include Mr. Frink); 42:13-16 (Mr. Frink "was not" part of the "working team" at Zillow developing relevant strategy); Ex. 1 Samuelson Dep. 125:24-25 (explaining that Mr. Frink was "not tremendously active in a lot of the discussions that we have"). Nor was Mr. Frink a relevant

---

[4] Excerpts of the relevant depositions are attached as Exhibit A (Wacksman), Exhibit B (Samuelson), and Exhibit C (Hofmann).

The Honorable Jeannette A. Vargas
September 11, 2025
Page 6

decision maker on LAS. Ex. 4 Wacksman Dep. 55:4-11 ("[Mr. Frink] wasn't part of the decision body" on LAS); Ex. 1 Samuelson Dep. 125:24-126:21 (testifying that decisions were made by "the senior leadership team," that Mr. Frink only "occasionally" attended such meetings, and that Mr. Samuelson did not expect LAS was previewed to Zillow's Board of Directors, which Mr. Frink co-chairs). Tellingly, Compass does not identify a single substantive question regarding LAS that a deponent was not able to answer or deferred to Mr. Frink. The production also does not indicate that there are unique issues where Mr. Frink's knowledge is relevant: Mr. Frink is a custodian of only 136 responsive documents out of the thousands of documents produced by Zillow. Messrs. Wacksman, Hofmann, and/or Samuelson, all of whom Compass has already deposed, are also custodians on all but 22 of those documents.

Compass's arguments to the contrary rely on misleading characterizations of the deposition testimony. For example, Compass asserts that "Mr. Wacksman testified that Mr. Frink was involved in Zillow's strategy for its listing access standards," but the cited deposition testimony merely shows that Mr. Wacksman understood that he and Mr. Frink were "aligned philosophically" on Zillow's goals regarding listing transparency, not that Mr. Frink was involved. *See* Ex. 4 Wacksman Dep. 107:9-108:25. Compass also contends that "Mr. Frink was providing guidance and strategy to Zillow's executives and employees," but cites only deposition testimony that has nothing to do with Mr. Frink. Further, that Mr. Frink was "briefed from time to time" by Mr. Hofmann (who has already been deposed), or invited to attend (but rarely attended) meetings with other executives, similarly fails to show that Mr. Frink has any unique knowledge. *See* Ex. 2 Hofmann Dep. 131:20-132:10.

Second, Compass's reliance on a single "comment bubble" relaying a brief conversation with Mr. Frink about a *possible* strategy is insufficient to compel his deposition because Compass does not even attempt to explain how that conversation is relevant to the PI Motion. To prevail on its motion, Compass must show that Zillow's actual strategy (not proposed or hypothetical ones) will cause irreparable harm absent an injunction. Regardless, whatever Mr. Beardsley took away from his conversation with Mr. Frink was reduced to writing and produced to Compass; that is more than sufficient for purposes of expedited discovery.[5] *Cf. Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122. (S.D.N.Y. 2015) (granting limited apex deposition where "no documents had been produced" on a key issue).

Third, Compass points to an April 1 meeting attended by Zillow and Compass's own executives. However, Compass omits that it has already deposed the three senior Zillow executives who attended that meeting and who, unlike Mr. Frink, continued to participate in ongoing discussions with Compass. Deposing a fourth witness about a meeting that Compass executives also attended is plainly cumulative and lays bare Compass's apparent effort to harass Zillow by deposing yet another senior executive. Moreover, Zillow's witnesses have already testified that Mr. Frink attended the April 1 meeting simply to demonstrate "how serious [Zillow

---

[5] Compass's claim that it was prohibited from deposing Mr. Beardsley because he was not a custodian for purposes of expedited discovery is unfounded. Compass deposed Katie Berroth, who also was not a custodian. Nothing prevented Compass from seeking to depose Mr. Beardsley as one of its five witnesses, but Compass chose not to.

The Honorable Jeannette A. Vargas
September 11, 2025
Page 7

was] about trying to find a solution and reach agreement with them and work together" with Compass, and not because Mr. Frink was actually involved in strategy or decision-making related to the Listing Access Standards. *See, e.g.*, Ex. 1 Samuelson Dep. 146:23-147:7.[6]

       Finally, Compass's suggestion that it should be allowed to depose Mr. Frink because Zillow deposed six witnesses is inconsistent with the apex doctrine, which protects senior corporate executives from deposition irrespective of other discovery considerations such as numeric parity. Compass also ignores that its prior position before this Court was that each party should be limited to five depositions during expedited discovery. ECF No. 71. When Zillow requested a sixth deposition, Compass ultimately agreed given the witness's unique and central role,[7] despite Zillow having expressly maintained its objection to Mr. Frink's deposition. Moreover, Compass has advanced five witnesses in support of its PI Motion, through declarations and/or live testimony, whereas Zillow is relying on only three in opposition. Consequently, Zillow has only deposed one witness beyond those Compass put forward, whereas Compass has already deposed two additional witnesses—and Mr. Frink would be the third.

       In sum, Mr. Frink does not have any unique, relevant knowledge warranting a sixth deposition on this expedited PI schedule, and the Court should deny his apex deposition.

       Counsel for the Parties:

s/ *Chahira Solh*
Chahira Solh (admitted *pro hac vice*)
Daniel A. Sasse (admitted *pro hac vice*)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
csolh@crowell.com
dsasse@crowell.com

s/ *Beau W. Buffier*
Beau W. Buffier (NY Bar No. 3932050)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 974-5800
bbuffier@wsgr.com

---

[6] Compass identifies only one unique communication between Mr. Frink and former Zillow executives Susan and Matt Daimler, but offers no explanation why this conversation has any relevance to its PI motion. Instead, the evidence reveals that Mr. Frink was merely coordinating a meeting with Compass and referred the Daimlers to Messrs. Wacksman and Samuelson.

[7] Unlike Mr. Frink, the sixth witness Zillow deposed had unique knowledge directly relevant to the PI Motion. Rory Golod is Compass' President of Growth and has repeatedly spoken publicly on behalf of Compass about this litigation and the impact of LAS (or lack thereof) on Compass's business, and was thus uniquely positioned to address Compass's claims of irreparable harm.

The Honorable Jeannette A. Vargas
September 11, 2025
Page 8

| | |
|---|---|
| Kenneth Dintzer (NY Bar No. 2476687) (admitted pro hac vice) CROWELL & MORING LLP 1001 Pennsylvania Avenue, NW Washington, DC 20004 Telephone: (202) 624-2500 kdintzer@crowell.com | Bonnie Lau (admitted *pro hac vice*) WILSON SONSINI GOODRICH & ROSATI, P.C. One Market Plaza Spear Tower, Suite 3300 San Francisco, CA 94105 Telephone: 415-947-2414 blau@wsgr.com |
| Luke Taeschler (NY Bar No. 5308325) CROWELL & MORING LLP Two Manhattan West 375 Ninth Avenue New York, NY 10001 Telephone: (212) 223-4000 ltaeschler@crowell.com | Eric P. Tuttle (admitted *pro hac vice*) Nicholas R. Sidney (admitted *pro hac vice*) WILSON SONSINI GOODRICH & ROSATI, P.C. 701 Fifth Avenue, Suite 5100 Seattle, WA 98104 Telephone: (206) 883-2513 eric.tuttle@wsgr.com nsidney@wsgr.com |
| *Attorneys for Plaintiff Compass, Inc.* | *Attorneys for Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC* |