October 1, 2025

*Via CM/ECF*

The Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Compass, Inc. v. Zillow, Inc. et al.*, Case No. 1:25-cv-05201-JAV (S.D.N.Y.)

Dear Judge Vargas:

Plaintiff Compass, Inc. ("Plaintiff" or "Compass") and Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC (collectively, "Defendants" or "Zillow") respectfully submit this joint letter regarding Defendants' request to serve supplemental discovery on Compass relating to Compass's September 22, 2025 announcement that it would merge with Anywhere Real Estate, Inc. ("Anywhere"). The parties met and conferred on September 24 and 26, 2025 and have reached an impasse.

**Defendants' Position**

Zillow learned last week on September 22, 2025, that Compass had entered into a definitive merger agreement to acquire its competitor Anywhere in an all-stock transaction worth approximately $1.6 billion in Compass stock (the "Transaction").[1] Anywhere is the parent company of major real estate brands—Better Homes and Gardens, Corcoran, ERA, Sotheby's International, Century 21, and Coldwell Banker—and the combined company is expected to have a network of over 340,000 real estate agents and an enterprise value of approximately $10 billion.[2] Zillow respectfully requests leave to serve narrow expedited Requests for Production ("RFPs") on Compass relating to the Transaction and to conduct a supplemental 2-hour deposition. *See* Exhibit 1. The Court should grant this request because the proposed discovery is relevant, narrowly tailored, and timely and may help resolve the issue of Compass's claimed irreparable harm.

**First**, the proposed discovery is directly relevant to Compass's motion for a preliminary injunction ("PI Motion"). Compass claims that it will be irreparably harmed because it "staked

---

[1] Rukmini Callimachi, Compass to Buy Top Rival, Further Condensing Brokerage Industry, N.Y. Times (Sept. 22, 2025), https://www.nytimes.com/2025/09/22/realestate/compass-anywhere-real-estate-deal.html.

[2] Compass Announces Combination with Anywhere Real Estate in All-Stock Transaction, Compass and Anywhere (Sept. 22, 2025), https://s27.q4cdn.com/379551815/files/doc_downloads/2025/09/22/Compass-to-Combine-with-Anywhere-Press-Release-2.pdf.

The Honorable Jeannette A. Vargas
October 1, 2025
Page 2

its future" on implementing its 3-Phased Marketing Strategy ("3PM") and because Zillow's Listing Access Standards (the "Standards") allegedly prevent Compass from implementing that strategy. ECF No. 24 at 10-11. For example, Compass CEO Robert Reffkin attested that 3PM is "essential to the future of Compass and its growth"; that "[t]he Zillow LAS prevents [Compass] from delivering on that value proposition"; that "[t]he damage to Compass's goodwill amongst its agents and clients is irreversible"; and that "uncertainty and confusion has caused Compass's investors to doubt the soundness of their investment and the future growth of the company." 6/26/25 Declaration of Robert Reffkin, ECF No. 25 at ¶¶ 16-18. Compass's ability to acquire a major competitor and tens of thousands of new agents and clients in exchange for $1.6 billion worth of its own stock suggests that Compass (and Anywhere) believe Compass is in excellent financial health and has strong future growth prospects.[3] Zillow is entitled to test whether the Standards (or 3PM) are as material to Compass's business as it claims.

For example, Zillow seeks documents showing whether Compass made representations or disclosures to Anywhere about the Standards or risks to its financial health that are inconsistent with the theories of harm it claimed in the PI Motion. Documents prepared by Compass and its advisors, such as synergy and efficiencies analyses and documents that analyze the potential for sales growth and geographic expansion are also likely to be highly probative of whether Compass believes the Standards hamper the business plan and financial performance for the combined company. Other analyses of Compass's projected stock value, financial performance, and agent recruiting as a result of the Transaction may show the extent to which Compass actually believes it will be harmed by the Standards, and whether it in fact staked the future of the company on implementing 3PM. Likewise, Compass's board of directors—which has a fiduciary duty to Compass's shareholders—is likely to have considered the impact of 3PM or the Standards.[4]

Compass's argument that the proposed discovery is not relevant to irreparable harm is meritless. Compass "must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Nat'l Ass'n for Gun Rts. v. Lamont*, 2025 WL 2423599, at *23 (2d Cir. Aug. 22, 2025). Moreover, Compass will have to

---

[3] Compass's financial results for its second quarter ending June 30, 2025, also contradict Mr. Reffkin's June 26, 2025 declaration. Compass reported "the best quarterly results" in the company's history, including all-time highs in market share, net income, revenue, and addition of principal agents. *See* Compass, Inc. Reports Record Second Quarter 2025 Results, Compass (Jul 30, 2025), https://investors.compass.com/news/news-details/2025/Compass-Inc--Reports-Record-Second-Quarter-2025-Results/default.aspx.

[4] If it did not, that evidence would go to the materiality of the Standards. Indeed, in an all-stock transaction such as this one, Compass's and Anywhere's boards would have had a fiduciary duty to shareholders to consider all material risks, and due diligence information provided to the boards and their advisors would likely address risks to Compass's operations, competitive positioning, future prospects, and the impact of the Standards.

The Honorable Jeannette A. Vargas
October 1, 2025
Page 3

show that the balance of the equities tips in its favor. *See id.* at *8. The proposed RFPs go directly to those issues: if Compass has projected that any harms caused by the Standards have ceased or can be accounted for in its financial modeling, Zillow can use that evidence to show that the alleged harms are not imminent or irreparable. Likewise, documents showing only de minimis impact on Compass are directly relevant to balancing, especially considering that Compass's proposed injunction would force Zillow to accommodate (for free) the preferred business model of Compass, a much larger company.[5]

**Second**, the proposed discovery is narrowly tailored and not unduly burdensome. RFPs 9 and 10 (representations and disclosures to Anywhere) request a discrete subset of final, non-public Transaction documents. RFPs 11 through 13 are narrowly limited to communications exchanged between Compass and Anywhere regarding this litigation and issues at the heart of it, and should be readily available in a deal room or other centralized source. RFP 14 (financial forecasts) should be reflected in executive and board reports or in other easily accessible summary documents. Compass's complaints about broad custodial discovery are unfounded. Zillow already communicated to Compass during the meet and confer process that Compass may respond to the requests on a "go-get" basis without broad custodial searches. Compass refused to suggest any narrowing of the proposed RFPs during the meet and confer process, instead demanding that Zillow negotiate against itself, and still has not identified any specific burdens. Even if Compass had, the material relevance of Compass's representations and disclosures to Anywhere far outweigh any purported burden of collecting and producing this modest and discrete set of documents, and readily satisfy the proportionality standard.

Compass's argument that Zillow can learn much of the requested information from Compass's recent form 8-K filing or from existing discovery is unsupported. For example, the representations and warranties made in the disclosed Transaction agreement are qualified by the contents of a confidential and undisclosed "Company Disclosure Letter."[6] Without production of that letter, it is impossible for Zillow to assess the scope of the representations and warranties

---

[5] The cases relied on by Compass are inapposite. *New York v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015), was filed by the State of New York, and nothing in the court's opinion supports the argument that a private plaintiff may obtain a preliminary injunction in the absence of irreparable harm to itself. *See also Solus Alternative Asset Mgmt. LP v GSO Cap. Partners, L.P.*, 2018 WL 620490, at *6 (S.D.N.Y. Jan. 29, 2018) (finding no "authority in which a court has found irreparable injury based solely on public harm without any demonstrated irreparable harm to the plaintiff"). Likewise, *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995), is distinguishable as it involved a plaintiff that lost the ability to offer a completely new product with no track record of sales. *See id.* at 38. Compass is not similarly situated as it continues to offer brokerage services to home sellers and buyers—as it has for the past decade-plus—and multiple Compass witnesses have admitted in their depositions that Compass continues to implement its 3-Phase Marketing Strategy.

[6] Form 8-K, Exhibit 2.1 (Agreement and Plan of Merger) at 28, available at https://www.sec.gov/Archives/edgar/data/1563190/000119312525209977/d937868dex21.htm.

The Honorable Jeannette A. Vargas
October 1, 2025
Page 4

Compass made to Anywhere. Likewise, none of Compass's witnesses testified about the Transaction, and, notably, Compass cannot identify a single produced document that reflects any analysis of how the Transaction is affected by Zillow's Standards.

**Third**, Zillow acted promptly and could not reasonably have served this discovery any earlier. Zillow had no notice that the Transaction was forthcoming or even contemplated until the public announcement on September 22. Compass suggests that Zillow should have pursued open-ended discovery about any possible mergers, but expedited discovery in this case was intentionally constrained, and Zillow had no reason to believe that Compass was considering a substantial merger of a larger brokerage, particularly in light of the harms alleged by Compass.[7] After learning about the Transaction through public reporting on September 22, Zillow promptly contacted Compass the next day to discuss supplemental discovery, conferred on September 24, and served the proposed RFPs that same day.

The Court should authorize Zillow to serve the proposed discovery and order Compass to substantially complete its production within 10 business days. In addition, the Court should allow Zillow a supplemental 2-hour deposition of Mr. Reffkin regarding the Anywhere Transaction to be scheduled on or before October 17, 2024.

**Plaintiff's Position**

Zillow's request for additional discovery after the close of fact discovery, including six broad document requests and a supplemental deposition of Compass's CEO Mr. Reffkin, unduly burdens Compass and the Court with a wide-ranging sideshow of an unrelated transaction. The information that Zillow demands is neither relevant to the Court's consideration of Compass's preliminary injunction motion nor proportional to the expedited discovery phase in this phase of the case.

**First**, the burden and expense of Zillow's proposed discovery far outweighs any likely benefit, and the discovery Zillow seeks is far afield from the narrow and limited discovery that the Court authorized on an expedited basis.

Zillow's six additional RFPs are broad and burdensome. For example, Zillow seeks "[a]ll disclosures" from Compass to Anywhere, "[a]ll financial forecasts, and "[a]ll Communications" between Compass and Anywhere regarding a number of broad topics, including "3PM adoption rates and/or usage," "agent recruitment and/or retention rates," and this litigation. *See* Exhibit 1. These requests will require Compass to conduct full collection and review of custodial files,

---

[7] Compass's past merger activity pales in comparison: after combining with Anywhere, Compass will have more than *10 times* the number of agents as it does today. *See* About Us, Compass, https://www.compass.com/about/ (last accessed Oct. 1, 2025).

4

The Honorable Jeannette A. Vargas
October 1, 2025
Page 5

including email and phone collections, which is significantly more burdensome than discrete "go-get" or "documents sufficient to show" requests.[8]

Zillow's demand for an additional *two*-hour deposition of Mr. Reffkin is similarly burdensome and not proportional. Zillow already deposed Mr. Reffkin for a total of *four* hours regarding all of Compass's allegations in its preliminary injunction motion. An additional two-hour deposition focused on collateral merger issues would be cumulative and disproportionate to the needs of this case. *See* Fed. R. Civ. P. 26(b)(2)(C). Asking for an additional deposition of two hours of Compass's CEO is unwarranted and only meant to distract Mr. Reffkin from his CEO duties.

Zillow already has access to publicly available information, as well as information produced in this lawsuit, regarding much of the information it now seeks. As Zillow points out in footnote 3, Compass is a public company that regularly releases its financial results and makes statements to investors about its business. These statements are more than sufficient to satisfy Zillow's purported assertions that it needs documents to "test whether the Standards (or 3PM) are as material to Compass's business as it claims." There is also publicly available information regarding the proposed transaction, including Compass's 8-K filed on September 22, 2025, which contains details on the terms of the transaction and a copy of the Agreement and Plan of Merger.[9] This agreement includes the parties' representations and warranties. Further, Compass has already produced information regarding its financial performance and performance of 3PM post-Zillow Ban in this litigation.[10] This existing and readily available information is more than sufficient to address Zillow's proffered purpose for seeking this supplemental discovery.

Zillow's request is prejudicial to Compass because it forces Compass to spend time and resources on quickly collecting and producing responsive documents—time that Compass could otherwise spend completing third-party discovery in advance of the October 24 deadline, preparing for expert depositions, and preparing for the rapidly approaching hearing.

---

[8] Zillow's representation that "Compass has not identified any particular burdens and, during the parties' meet and confer, refused to suggest any narrowing of the proposed RFPs" is not accurate. Compass stated that it was willing to consider producing documents related to the Anywhere transaction if Zillow would narrow its overbroad requests. Zillow refused.

[9] Compass, Inc., Form 8-K (September 22, 2025), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001563190/000119312525209977/d937868d8k.htm.

[10] Compass already produced some materials after the close of first-party fact discovery at the request of Zillow, including a July 2025 Board of Directors presentation that contained information regarding Compass's financial performance and metrics on agent recruitment and retention. The presentation also includes details regarding the impact of the Zillow Ban on 3PM, including the fact that the percentage of sellers choosing to adopt 3PM has fallen significantly from a high of 39% in April 2025 to only 22% as of July 2025. Compass produced this document to Zillow in advance of Mr. Reffkin's deposition.

The Honorable Jeannette A. Vargas
October 1, 2025
Page 6

**Second**, Zillow is incorrect that Compass's ability to engage in the transaction with Anywhere has any bearing on the Court's upcoming irreparable harm analysis. Compass's merger announcement does not erase or contradict the harms identified in its motion for a preliminary injunction. (Dkt. 24). As outlined in that motion, the harms resulting from the Zillow Ban are imminent and non-quantifiable, including loss of competitive advantage, harm to Compass's reputation and prospective goodwill, and loss of future business opportunities.

In fact, that Compass is in "excellent financial health"—the only reason Zillow provides for this discovery—is not in dispute. Compass's financial health is irrelevant, as even financially sound companies can be harmed by anticompetitive conduct. Moreover, irreparable harm under Second Circuit precedent is not limited to companies on the verge of collapse and does not always require a showing that the defendant's action threatens the viability of plaintiff's entire business. *New York v. Actavis PLC*, 787 F.3d 638, 661 (2d Cir. 2015) (holding that harm to competition and consumers is a form of irreparable harm and that financial damages were not readily quantifiable); *Tom Doherty Associates v. Saban Entertainment, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (finding irreparable harm in the form of loss of prospective goodwill even though plaintiff "will not suffer any loss of existing sales and its existence will not be endangered"). Compass's financial success or ability to acquire another company in spite of the Zillow Ban does not mean that Compass has not or will not continue to be irreparably harmed by the Zillow Ban, irrespective of the Zillow Ban's continued negative impact on competition and consumers more broadly.

**Third**, Zillow's timeliness argument is unpersuasive. A "significant consideration" in deciding whether good cause exists to <u>reopen</u> discovery "is whether there has already been adequate opportunity for discovery." *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011). Zillow had the ability to request documents relating to potential acquisitions before the deadline for first-party fact discovery, and Zillow could have asked Mr. Reffkin about those topics during his four-hour deposition on September 5, 2025. It is publicly known that Compass is an acquisitive company, having completed multiple acquisitions of brokerages since November 2024, [11] and rumored to be considering others.[12] In fact, since the filing of Compass's

---

[11] Zillow's documents make clear that, given the nature of Compass's competitive threat, Zillow routinely tracks Compass's earnings calls. Moreover, Zillow's executives have routinely discussed proposed Compass transactions internally, including trying to understand the impact such deals would have on Zillow's business. The notion that Zillow was unprepared to have sought testimony from Mr. Reffkin on potential acquisitions is not credible. In fact, one of the exhibits that Zillow used during multiple depositions is Compass's Second Quarter 10-Q filing and related documents, which includes information regarding Compass's growth through its acquisitions.

[12] *See* Nicole Friedman and Lauren Thomas, "Compass in Talks to Buy Warren Buffett's Real-Estate Brokerage Unit," *The Wall Street Journal*, https://www.wsj.com/real-estate/compass-in-talks-to-buy-warren-buffetts-real-estate-brokerage-unit-5eab82e5?gaa_at=eafs&gaa_n=ASWzDAj7twoXXJ8NgyfGeiOHnkiksYhgQ4Hv8wr8BdWQFDU-fWDi6qq-

The Honorable Jeannette A. Vargas
October 1, 2025
Page 7

motion for preliminary injunction, Compass has publicly announced and closed on multiple transactions.[13] Zillow did not request documents regarding potential acquisitions or ask Mr. Reffkin (or any other witnesses) about potential acquisitions. The fact that Compass's merger announcement reminded Zillow of these perceived holes in its discovery requests and questioning cannot now serve as an excuse for Zillow to fill in those gaps after the discovery deadline.

It is also telling that Zillow now seeks to leverage Compass's pending merger as a pretext for intrusive discovery. Public reporting has emphasized that Compass's proposed acquisition of Anywhere poses a significant competitive challenge to Zillow's dominance in the residential real estate sector.[14]

For all these reasons, the Court should deny Zillow's request to reopen discovery and to serve the proposed discovery and deny Zillow's request for a supplemental two-hour deposition of Mr. Reffkin.

* * *

**Scope of Preliminary Injunction Hearing**

The parties have also met and conferred regarding a procedure for identifying which, if any, material issues remain to be heard at the PI hearing. The parties expect to file a joint letter with their respective proposals on or before Monday, October 6, and will be prepared to discuss these proposals at any upcoming status conference.

Counsel for the Parties:

| | |
|---|---|
| */s/ Chahira Sohl* | */s/ Bonnie Lau* |
| Chahira Solh (admitted pro hac vice) | Bonnie Lau (admitted pro hac vice) |
| Daniel A. Sasse (admitted pro hac vice) | |

---

HlhB&gaa_ts=68dcf996&gaa_sig=AHG4cGTmmyUL6PU0q3TTCtrAMrQTMJN44WQkteXdq2Xr2UDfe_EkpA_wPwJXSr2O4OPEnS2v9Bnnm_8jAoZTHg%3D%3D.

[13] *See* "Compass Welcomes PorchLight Real Estate Group, Expanding Presence In Colorado," *Compass* (July 9, 2025), https://www.compass.com/newsroom/press-releases/2cCUisWHg8YHMcuO7o5Cn/; "Compass Grows North Carolina Footprint, Welcomes Cottingham Chalk," *Compass* (July 29, 2025); ; "Compass Expands Local Footprint with Addition of Colorado Home Realty," *Compass* (Sept. 4, 2025), https://www.compass.com/newsroom/press-releases/22qAKiegvR50EZhxIAgw0W/.

[14] *See, e.g.*, Dave Gallagher, "Compass deal a 'major power play' that could disrupt the industry'," *Real Estate News*, https://www.realestatenews.com/2025/09/22/compass-deal-a-major-power-play-that-could-disrupt-the-industry; Lance Lambert, "Zillow tried to stop off-market housing inventory—Compass is fighting back," https://www.fastcompany.com/91409158/housing-market-compass-zillow-anywhere-real-estate-inventory-fighting-back.

The Honorable Jeannette A. Vargas
October 1, 2025
Page 8

| | |
|---|---|
| CROWELL & MORING LLP<br>3 Park Plaza, 20th Floor<br>Irvine, CA 92614<br>Telephone: (949) 263-8400<br>csolh@crowell.com<br>dsasse@crowell.com | WILSON SONSINI GOODRICH &<br>ROSATI, P.C.<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105<br>Telephone: 415-947-2414<br>blau@wsgr.com |
| Kenneth Dintzer (NY Bar No. 2476687)<br>(admitted pro hac vice)<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 624-2500<br>kdintzer@crowell.com | Beau Buffier (NY Bar No. 3932050)<br>WILSON SONSINI GOODRICH &<br>ROSATI, P.C.<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019-6022<br>Telephone: (212) 974-5800<br>bbuffier@wsgr.com |
| Luke Taeschler (NY Bar No. 5308325)<br>CROWELL & MORING LLP<br>Two Manhattan West<br>375 Ninth Avenue<br>New York, NY 10001<br>Telephone: (212) 223-4000<br>ltaeschler@crowell.com | Eric P. Tuttle (admitted pro hac vice)<br>Nicholas R. Sidney (admitted pro hac vice)<br>WILSON SONSINI GOODRICH &<br>ROSATI, P.C.<br>701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104<br>Telephone: (206) 883-2513<br>eric.tuttle@wsgr.com<br>nsidney@wsgr.com |
| *Attorneys for Plaintiff Compass, Inc.* | *Attorneys for Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC* |