

Bonnie Lau
blau@wsgr.com
O: 415-947-2000

Wilson Sonsini Goodrich & Rosati
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126

**VIA ECF**                                                                October 6, 2025

The Honorable Jeannette A. Vargas
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, New York, NY 10007

   Re: *Compass, Inc. v. Zillow, Inc. et al*, Case No. 1:25-cv-05201-JAV (S.D.N.Y.)

Dear Judge Vargas:

  Zillow respectfully requests to be heard on which, if any, material factual issues require live testimony at the PI evidentiary hearing. Now that expedited fact discovery has closed and Compass has served its expert report, the record is clear that Compass cannot sustain its burden on the PI Motion for several reasons, two of which are ripe for decision now: First, Compass presents no actual, non-speculative evidence of irreparable harm. *See Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999) ("[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction") (cleaned up). Second, Compass has failed to establish its Section 2 claim as a matter of law, and thus cannot show a likelihood of success. Removing the Section 2 claim would meaningfully narrow the scope of the PI hearing, as fewer witnesses are relevant to the Section 1 claim.[1] Compass's showing is deficient even if the Court applies a summary-judgment-like standard and draws all inferences in favor of Compass.

  ***Compass Cannot Sustain its Burden to Establish Irreparable Harm.*** In the PI Motion, Compass claimed that it would be irreparably harmed because Zillow's Listing Access Standards (the "Standards") (1) completely prevented Compass from implementing its 3-Phased Marketing Strategy ("3PM"); (2) caused Compass to lose time and money from having launched 3PM; (3) caused Compass's investors to become "confused and concerned"; and (4) caused Compass to lose home seller clients and real estate agents. ECF No. 24 at 10–11. Expedited discovery has shown that every one of those purported harms is unsupported and indeed, directly contradicted by the evidence. Below are just a few examples:

- Contrary to Compass's claim that the Standards completely prevented it from implementing 3PM, nearly every Compass witness admitted that Compass continues to implement 3PM in some form. *See, e.g.,* Reffkin Dep. 113:10–18 (Q: "Is Compass still doing private exclusives today?" A: "Compass is still doing Compass private exclusives today." Q: "Is Compass still doing Compass coming soons today?" A: "Homeowners are still choosing to work with Compass agents to do coming soons today."); *see also* Hardy Dep. 103:02–104:11; Navab Dep. 24:05–26:07; Bhonsle Dep. 13:04–15:03, 55:17–56:12*;* Golod Dep. 130:08–132:10. Likewise, when asked about impact of the Standards to 3PM

---

[1] As third-party discovery relevant to Compass's Section 1 claim is ongoing, Zillow does not ask the Court to address that claim at this time, but reserves the right to do so at an appropriate time.

**WILSON SONSINI**

Hon. Jeannette Vargas
October 6, 2025

- during Compass's July 30 investor call, Compass's CEO Robert Reffkin said "Compass private exclusives have stayed at basically the same level throughout the last number of months." Compass, Inc. FQ2 2025 Earnings Call, S&P Global (Jul. 30, 2025).

- On the same day that this lawsuit was filed, Compass's President of Growth, Rory Golod, sent an email to all of Compass's national sales leaders stating: "**Private Exclusives and the Compass 3-Phased Marketing Strategy are still allowed under Zillow's ban and we encourage every agent to share the benefits of them with their clients.**" CZ_COMP_000046443 (emphasis in original).

- Contrary to Compass's claim that investors were "confused and concerned," Compass's Head of Investor Relations, Soham Bhonsle, testified that, since Zillow began enforcing the Standards in June, Compass's stock price increased by approximately 40%, a sign of positive investor sentiment. *See* Bhonsle Dep. 144:14–145:16. And since the Standards were announced in April, ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████. *See id.* at 43:14–44:18, 64:10–65:11.

- Compass's August 4, 2025 10-Q filing with the S.E.C. does not disclose the Standards as a material risk to Compass, despite a legal obligation to disclose such risks. *See* Compass, Inc. Form 10-Q at 42, U.S. Securities and Exchange Commission (Aug. 4, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001563190/000156319025000158/comp-20250630.htm; *see also* 17 CFR § 229.303 (requiring disclosure of "matters that are reasonably likely based on management's assessment to have a material impact on future operations"). Compass cannot have "staked its future" on 3PM (ECF No. 24 at 10), yet failed to disclose its purported inability to implement 3PM due to the Standards.

- On July 30, 2025, Compass reported the best quarterly financial results in its history, including record revenue, profit, and agent recruitment. *See* Compass, Inc. Reports Record Q2 2025 Results (Jul. 30, 2025), https://investors.compass.com/news/news-details/2025/Compass-Inc--Reports-Record-Second-Quarter-2025-Results/default.aspx. Mr. Bhonsle testified that Compass ███████████████████████████████████ and that Compass's value proposition is stronger than ever. *See* Bhonsle Dep. 95:05–25, 117:04–118:03.

- Contrary to Compass's claim that the Standards have caused it to lose real estate agents, Compass's President of Brokerage Operations, Neda Navab, testified that the Standards are not a meaningful driver of agent retention risk. *See* Navab Dep. 195:12–23 (Q: "So as you sit here today, you do not have any impacts that you can identify from Zillow's listing access standards on Compass's ability to retain agents?" A: "I do not see [the Standards] as a source of meaningful attrition risk…").

On this record, Compass falls woefully short of showing irreparable harm to itself due to Zillow's Standards. *See Solus Alternative Asset Mgmt. LP v GSO Cap. Partners, L.P.*, 2018 WL

WILSON SONSINI

Hon. Jeannette Vargas
October 6, 2025

620490, at *6 (S.D.N.Y. Jan. 29, 2018) (irreparable harm must be specific to the plaintiff). In the absence of irreparable harm, no live testimony or evidentiary hearing is necessary because the PI Motion can and should be denied on the papers. Indeed, courts in the Second Circuit often deny preliminary injunctions without a hearing when the absence of irreparable harm is evident on the papers. *See, e.g.*, *SCM Corp. v. Xerox Corp.*, 507 F.2d 358, 361 (2d Cir. 1974) (affirming denial of preliminary injunction without hearing where movant failed to demonstrate irreparable harm); *Redac Project 6426, Inc. v. Allstate Ins. Co.*, 402 F.2d 789, 790–91 (2d Cir. 1968) (affirming denial of preliminary injunction without live testimony because written record established lack of irreparable harm); *Cano v. City of New York*, 2024 WL 3905474, at *4 (S.D.N.Y. Aug. 22, 2024) (denying preliminary injunction because evidentiary hearing was unnecessary to resolve factual issues); *Loc. 676, UA of Sprinkler Fitters & Apprentices of Conn., R.I., & W. Mass. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. of U.S. & Canada*, 2010 WL 3724258, at *10 (D. Conn. Sept. 15, 2010) (denying preliminary injunction due to lack of irreparable harm and finding an evidentiary hearing unnecessary after "in-depth discovery" and briefing); *Wallikas v. Harder*, 78 F. Supp. 2d 36, 38–39 (N.D.N.Y. 1999) (concluding "it is not necessary to hold a hearing to resolve any disputed issues of fact" on preliminary injunction motion where "paper record" showed lack of irreparable harm).

***Compass's Section 2 Claim Fails as a Matter of Law.*** Compass's expert report exposes that Compass's prima facie Section 2 claim lacks any evidentiary support on essential elements.

First, Compass cannot establish that Zillow has a duty to deal with Compass on its preferred terms. Compass's expert, Dr. Debra Aron, not only fails to address this issue, but opines inconsistently with Compass's burden. Compass must establish that its claim meets the one narrow "exception to the broad right of a firm to refuse to deal with its competitors." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52–53 (2d Cir. 2007) (per curiam) (quoting *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004)). A refusal to deal with a rival can only violate the Sherman Act where a party terminates a "voluntary (and thus presumably profitable) course of dealing . . . to forsake short-term profits to achieve an anticompetitive end." *IBM v. Platform Sols., Inc.*, 658 F. Supp. 2d 603, 613 (S.D.N.Y. 2009) (quoting *Trinko*, 540 U.S. at 408). However, Dr. Aron fails to address *any* of the elements in her report. Nowhere does Dr. Aron opine that Zillow terminated a voluntary course of dealing to accept previously-marketed, stale listings. Nor does she analyze profitability *at all*. She thus offers no opinion as to whether the Standards will cause Zillow to sacrifice short- or long-term profits. And Dr. Aron does not opine that the Standards are "irrational but for [their] anticompetitive tendencies," *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013), or that they lack "a legitimate business reason," *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 126 (2d Cir. 2007).

In fact, Dr. Aron's opinions completely undermine Compass's claims, as she admits that losing listings would degrade the quality of Zillow's platform. Aron Report ¶¶ 167–72. Dr. Aron complains that "Zillow is not seeking to make its platform more attractive for Compass and other companies," and that Zillow should be forced to degrade the quality of its platform while Compass may "den[y] access" to its listings. *Id.* ¶¶ 173, 210. But the antitrust laws do not require

3

**WILSON SONSINI**

Hon. Jeannette Vargas
October 6, 2025

Zillow to "lie down and play dead, as it watches the quality of its products deteriorate. …" *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 397 (7th Cir. 2000) ("Part of competing like everyone else is the ability to make decisions about with whom and on what terms one will deal."). Compass thus cannot establish a prima facie case under Section 2.

Second, Compass must show that the Standards are anticompetitive exclusionary conduct by showing that Zillow's procompetitive justifications for the Standards are pretextual or "could have been achieved through less restrictive means." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 42 (2d Cir. 2018) (quotations omitted). Dr. Aron again offers no relevant opinions. Zillow provided detailed explanations and extensive supporting exhibits to show its procompetitive rationales for the Standards—including preventing freeriding, improving listing quality, and promoting transparency in the market. *See* ECF No. 50 at 8–9, 17–18; ECF No. 51 ¶¶ 34–35, 52, 55, 58. Compass also inquired into Zillow's procompetitive rationales in multiple depositions. Yet, Dr. Aron did not opine about any of those justifications or offer any less restrictive alternatives. The failure to do so is fatal to Compass's PI Motion. *See N. Am. Soccer League, LLC*, 883 F.3d at 45 (affirming denial of preliminary injunction where plaintiff failed to demonstrate viable less restrictive alternatives to challenged restraint); *see also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 312–13 (2d Cir. 2008) (affirming summary judgment where expert failed to address procompetitive efficiencies).

***Proposed Next Steps.*** Zillow will address the scope of the PI hearing in any format that would be convenient for the Court. Under the current schedule, the supplemental briefs are due on October 31 for Compass and November 12 for Zillow, only three business days in advance of the hearing. To obtain the Court's guidance on scope sufficiently in advance of the hearing, Zillow proposes two options: (1) The parties could file short briefs in the next two weeks on this issue, applying a standard akin to summary judgment, so the Court has sufficient time to determine whether any live hearing testimony is necessary on irreparable harm or duty to deal. (2) Alternatively, Zillow respectfully requests a short extension between the supplemental briefs and the hearing, and to postpone the hearing to December or the Court's next available date.[2] Either option would provide sufficient time for the Court's consideration and for the parties to tailor the scope of the hearing accordingly.

Sincerely,

*/s/ Bonnie Lau*
Bonnie Lau (admitted pro hac vice)
Beau Buffier (NY Bar No. 3932050)
Eric P. Tuttle (admitted pro hac vice)
Nicholas R. Sidney (admitted pro hac vice)
WILSON SONSINI GOODRICH & ROSATI, P.C.
*Attorneys for Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC*

---

[2] Compass rejected Zillow's prior proposal to shorten the time between the PI briefing and hearing by Zillow filing its expert report early and the parties moving up the briefing schedule.