

October 24, 2025

**VIA CM/ECF**

The Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: ***Compass, Inc. v. Zillow, Inc. et al*, Case No. 1:25-cv-05201 (S.D.N.Y.)**

Dear Judge Vargas:

Compass, Inc. ("Compass") moves to compel third-party Redfin Corporation ("Redfin") to produce three documents in response to Compass's subpoenas *duces tucum*. Based on the testimony of Redfin's Chief Executive Officer, Glenn Kelman, at his October 9, 2025 deposition, Compass requested that Redfin produce specific go-get documents: (1) copies of Mr. Kelman's draft blog posts prepared between April 10, 2025 and April 14, 2025; and (2) an unredacted copy of the Rental Agreement between Redfin and Zillow. Redfin has refused to produce these highly relevant materials.[1]

**Background**

As the Court knows, one of the claims in this case involves allegations that Zillow and Redfin conspired to adopt similar policies, including Zillow's Listing Access Standards (the "Zillow Ban"), to boycott Compass. ECF No. 15 at ¶ 74. Compass's conspiracy claim is supported by evidence that the CEOs of Zillow and Redfin ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Compass further alleges that Zillow and Redfin had the motive and opportunity to collude because they executed another unlawful and anti-competitive agreement (the "Rental Agreement") earlier this year, shortly before the conspiracy alleged here. ECF No. 15 at ¶ 75. Under the agreement, Zillow paid Redfin approximately $100 million for Redfin to stop advertising multifamily rental properties. *Id.*

On July 21, 2025, and August 22, 2025, Compass served subpoenas on Redfin, which included requests for documents regarding the Zillow Ban and the Rental Agreement.

---

[1] In accordance with the Court's individual rules, Compass met and conferred with Redfin's counsel, Robert Maguire and Emily Parsons, for approximately one half hour on October 21, 2025. The parties were unable to reach an agreement, and Compass informed Redfin's counsel it planned to request relief from the Court.



The Honorable Jeannette A. Vargas
October 23, 2025
Page 2

**<u>Argument</u>**

     A party may issue subpoenas to third-parties seeking discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 45(a), 26(b)(1). "The party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that the information sought is privileged or unduly burdensome." *Lelchook v. Lebanese Canadian Bank, SAL*, 670 F. Supp. 3d 51, 54-55 (S.D.N.Y. 2023).

     **1. Mr. Kelman's Draft Blog Posts.** During his deposition, Mr. Kelman was asked about



     After Compass's counsel met and conferred with Redfin's counsel on October 21, 2025, Redfin's counsel provided a privilege log identifying two versions of the draft blog post. Ex. C. The first draft was shared via Google Documents with four individuals, including one in-house attorney. The second draft was shared with six individuals, including two in-house attorneys. The privilege log contains the following descriptions for the basis of the privilege claim: "Legal advice requested and provided; Attorney Client Privilege." *Id.*

     The draft blog posts are highly relevant to Compass's claims and to demonstrate the merits of its Section 1 claim at the preliminary injunction hearing. The fact that Redfin's CEO drafted a blog post regarding the Zillow Ban before Zillow had publicly announced its policy is significant. Redfin does not appear to contest the relevance of these documents. Compass's request for two documents that Redfin has already identified places minimal to no burden on Redfin to produce.

     Redfin has not met its burden to demonstrate that the blog post drafts can be fully withheld as privileged. It is well settled that the attorney-client privilege only protects against the disclosure of legal, not business advice. *See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984). The party asserting privilege has the burden to show the communications with the attorney were made "solely for the purpose of the [client] seeking legal advice and its counsel rendering it, and not for the purpose of advancing a party's



The Honorable Jeannette A. Vargas
October 23, 2025
Page 3

business ventures." *Renner v. Chase Manhattan Bank*, 2001 WL 388044, at *1 (S.D.N.Y. Apr. 17, 2001) (citation and quotation marks omitted).

Here, the evidence shows that Mr. Kelman created and shared the blog post for fundamentally business rather than legal purposes. Indeed, Mr. Kelman's testimony and the produced email thread regarding the blog post demonstrate that Mr. Kelman ███████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ To the extent any attorney commented or edited the post to convey legal advice (not business advice), Redfin would have grounds to redact *those* communications. But Redfin cannot shield the content of the entire blog post—including the very first draft Mr. Kelman sent that was not drafted for the purpose of obtaining legal advice and contained no legal advice, or any subsequent drafts that included comments or edits from other business professionals—under the guise of privilege. Indeed, simply sending an already-created business document to counsel does not magically cloak the document in privilege.  *See, e.g.*, *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at *5 (S.D.N.Y. Apr. 17, 2006) ("[M]erely because a document is sent to an attorney does not render it a privileged attorney-client communication."). And, given the nature and context surrounding the creation of the blog post, Redfin has produced a deficient privilege log. Because Redfin's privilege log fails to explain the subject matter of the legal advice or adequately demonstrate how the document might be privileged, Redfin additionally has failed to satisfy its burden to prove the document is privileged in whole or in part. Fed. R. Civ. P. 26(b)(5)(A).

In *Gucci America, Inc. v. Guess?, Inc.*, the court rejected a privilege claim and ordered production of draft press statements prepared by Gucci's in-house communications department. 271 F.R.D. 58, 78 (S.D.N.Y. 2010). After an *in camera* review, the court ordered production of the materials because, as here, there was "no indication that counsel drafted the statement or rendered legal advice in connection with such review." *Id.* at 79. The court permitted Gucci to redact portions of some documents because they "implicate[d] the advice of outside counsel" but held that the "balance of the document should be produced." *Id.* Similarly, in *United States Postal Service v. Phelps Doge Refining Corporation*, the court ordered production of a draft letter, with the exception of a handwritten comment, because the document otherwise did not reflect legal opinions or client confidences. 852 F. Supp. 156, 163 (E.D.N.Y. 1994). As explained, Compass agrees that Redfin may redact any *actual legal advice* conveyed by counsel, but Redfin cannot withhold from production entire versions of the blog post—which was created for a business purpose and may contain other business commentary from non-lawyer Redfin employees—on privilege grounds.

Compass respectfully requests that the Court order Redfin to produce copies of these draft blog posts. To the extent the Court determines it is necessary, Compass requests that the Court conduct an *in camera* review of these two documents to determine what, if any, portions of the documents may be redacted as privileged.



The Honorable Jeannette A. Vargas
October 23, 2025
Page 4

**2. The Rental Agreement.** During negotiations regarding the scope of the subpoenas, Redfin argued that documents concerning the Rental Agreement were not relevant and Compass maintained that they were. Despite the relevance of these documents, Compass agreed to limit the topics requested for the purposes of Redfin's custodial document review and production.

On September 30, 2025, the Federal Trade Commission ("FTC") sued Zillow and Redfin. The FTC alleges that the Zillow-Redfin Rental Agreement is anti-competitive and violates Section 1 of the Sherman Act, among other violations. *Fed. Trade Comm'n v. Zillow Group, Inc.*, No. 1:25-cv-1638 (E.D. Va. Sep. 30, 2025). The Attorneys General of five states subsequently followed suit. The FTC's complaint against Zillow and Redfin attaches a redacted version of the Rental Agreement, which Compass used during Mr. Kelman's deposition. During the deposition, Compass requested an unredacted copy of the Rental Agreement from Redfin. Redfin's counsel objected that this agreement was irrelevant and outside the parties' negotiated scope of responsiveness during expedited discovery.

The Rental Agreement is relevant to Compass's claims. As asserted in Compass's Complaint, the Rental Agreement between Zillow and Redfin gave rise to the conspiracy directly challenged in this case. The fact that Zillow paid Redfin $100 million only a few months before Zillow and Redfin adopted their policies is highly probative of the existence of the conspiracy between Zillow and Redfin alleged here. Although Compass agreed before the filing of the FTC's complaint that Redfin need not search Mr. Kelman's custodial files for all communications related to the Rental Agreement at this time, Compass at no point suggested that these materials were irrelevant. And it never agreed not to seek discovery relating to the agreement itself. Moreover, the circumstances surrounding the discovery negotiations have materially changed: the FTC and the Attorneys General of five states have now sued Redfin and Zillow. Redfin was aware of this investigation, while Compass had no knowledge of it. Because the FTC's complaint attached an incomplete and redacted copy of the Rental Agreement, Compass simply requests a complete and unredacted copy from Redfin.[2]

Redfin has not articulated a reasonable basis for why the Rental Agreement is irrelevant to Compass's case or explained how Compass's request for a single document is burdensome. Moreover, Compass should have the ability to use—and the Court should have the benefit of assessing—the full, complete, and accurate version of the agreement at the PI Hearing, rather than a partial version of the evidence. Compass respectfully requests that the Court order Redfin to produce an unredacted and complete copy of the Rental Agreement.

Sincerely,
*/s/ Chahira Solh*
Chahira Solh

---

[2] During the October 21, 2025 meet and confer, Redfin argued that Compass should request a copy of the agreement from Zillow, but party discovery has closed while third-party discovery has not. Of course, Compass is amenable to production of the agreement by whichever party the Court determines is better situated to produce it.