October 27, 2025

*Via CM/ECF*

The Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re: **_Compass, Inc. v. Zillow, Inc. et al._**, Case No. 1:25-cv-05201-JAV (S.D.N.Y.)

Dear Judge Vargas:

    Plaintiff Compass, Inc. ("Plaintiff" or "Compass") and Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC (collectively, "Defendants" or "Zillow") respectfully submit this joint letter regarding certain issues: (1) Compass's October 23, 2025 disclosure that it intends to call a real estate agent affiliated with Compass as a witness at the preliminary injunction ("PI") hearing;[1] (2) the length of the supplemental PI briefs ordered by the Court; and (3) sealing procedures. The parties met and conferred on October 24, 2025. In light of the short time before the PI hearing, the parties respectfully request a ruling as soon as possible on ▮▮▮▮▮▮ testimony and can be available any day this week if this Court wishes to conduct a hearing.

    **I.**    **Compass's Witness Disclosure**

    On October 24, 2025, the Parties exchanged witness lists, as required by the Scheduling Order. ECF No. 50. Compass included on its list a Compass real estate agent, and Zillow opposes the inclusion of this witness.

    **Defendants' Position**

    **A.**    *Compass Must Show Good Cause to Add a Compass Agent to the Witness List at This Late Stage*

    The Court's July 31 Order set a deadline of August 8 for the parties to exchange lists of "first-party fact witnesses" that they intend to call at the hearing. Dkt. 65. During the related status conference, the Court made clear that the parties could not thereafter substitute witnesses absent "good cause." *See* Jul. 30, 2025 Hearing Tr. at 11:13–22. Compass had proposed that "each side shall have the ability to list on their final [witness] list the name of a witness that was not previously deposed." Dkt. 63 at 4. The Court explicitly rejected that proposal, explaining: "having late depositions in the weeks leading up to the PI, potential substitution of witnesses, all of this seems very chaotic and not what I had envisioned when putting this on a fast track for a PI motion." Jul. 30, 2025 Hearing Tr. at 8:5–10. The Court further noted that Compass should already (as of late July) "have a fairly good idea" of who its PI hearing witnesses would be, and

---

[1] Zillow does not oppose Compass's motion to redact certain information within this letter.

The Honorable Jeannette A. Vargas
October 27, 2025
Page 2

that it was unclear to the Court why Compass "would need to reserve some ability to substitute out." *Id.* at 8:19–9:2. The Court set an orderly schedule with witness list disclosures, document production, fact witness depositions, and close of fact discovery, followed by third party and expert discovery, supplemental briefing, and prehearing preparation, both so that Compass had the opportunity "to obtain information to potentially support their claims, but also for [Zillow] to be prepared to defend itself at a PI [hearing]. And if the target is ever moving, I don't know how, in the short period of time that we have, we can have an orderly process." *Id.* at 8:12–18. Substitution of new witnesses on the final witness list without a showing of good cause would be "too prejudicial to the defendants, particularly on the timelines that we're setting for this." *Id.* at 11:17-22. These concerns dovetail with the Court's similar concerns about Compass "sandbagging" Zillow with belated disclosures. *See, e.g.*, Jul. 21 Hearing Tr. at 8:14–21, 16:19–24.

Yet here we are, at the exchange of final witness lists, only three weeks from the PI hearing—11 weeks after initial witness lists were exchanged, and seven weeks after the close of fact discovery—and Compass belatedly seeks to upend the Court's orderly process by adding a new Compass witness to its list. This addition would require Compass to search for and produce additional documents related to the witness and Zillow to scramble to depose her in the days preceding the hearing. Compass fails to identify good cause for such disruption.

### B.     ▆▆▆▆▆ *Is a First-Party Witness in Compass's Control*

Compass asserts that it was not required to disclose ▆▆▆▆▆ as a witness by August 8 because, like all 33,000 Compass real estate agents, she is technically an independent contractor and not an employee. These semantics are not well-taken. The requirement to disclose "first-party witnesses" was clearly intended to cover party-controlled and aligned witnesses, and the additional period of discovery allowed for "third-party" witnesses was clearly intended for true third parties like Redfin and eXp, which would need to be (and were) subpoenaed for records and depositions.

▆▆▆▆▆ is a Compass real estate agent, and Compass has significant control over her. The portions of Compass's contracts that Compass publicly discloses require its agents to "cooperate" with Compass in litigation; indeed, "[f]ailure to cooperate may lead to disciplinary action up to and including termination." *See* Compass Terms of Engagement, § 8(b), https://www.compassterms.com/. ▆▆▆▆▆ real estate license records with the States of Pennsylvania and New Jersey also show that the *only* brokerage she is affiliated with is Compass, indicating that she is likely dependent on Compass for her livelihood as an agent. *See* Ex. 1 (PA License); Ex. 2 (NJ License).[2] ▆▆▆▆▆ is represented by Compass's counsel in this litigation, and Compass has represented that it will make her available for a deposition and produce her documents. Clearly, Compass did not need to subpoena her like a third party to obtain her documents or testimony.

---

[2] Both of these licenses suggest that ▆▆▆▆▆ is an employee of Compass. *See* Ex. 1 (PA License) (Licensee: "COMPASS PENNSYLVANIA, LLC;" Relationship: "Employment"); Ex. 2 (NJ License) ("Employer Business Information . . . COMPASS NEW JERSEY, LLC").

⬛ also holds herself out to the public as a Compass representative. On her website, she advertises a "@compass.com" email address. *See* Ex. 3 (excerpt of website). Compass's counsel have confirmed that Compass has control over that email account and can access its contents. ⬛ website and "for sale" signs also prominently feature the Compass name and trademarks. *See* Ex. 4 (screenshots of website); Ex. 5 (Instagram of sign). ⬛ is no "third party" within the meaning of the schedule set by the Court, and this is not a close call.

    **C.**    ***Compass Has No Good Cause For Late Disclosure***

Compass identifies no good cause for its late attempt to add ⬛ to its witness list. Compass claims that ⬛ received a warning about violating Zillow's Listing Access Standards on October 13, and that this prompted Compass to notify Zillow ten days later (on October 23) that Compass intended to call her as a hearing witness. But Compass knew when it filed its PI Motion back on June 27 that Zillow had been sending warning notices to agents— including Compass agents—who violated Zillow's Standards. *See* Dkt. 26 ¶ 15 (Compass Witness Declaration) ("Starting on May 28, 2025, Zillow began sending warning notices, via email and calls/voicemail, to agents regarding listings that violate the Zillow LAS ….").

To the extent Compass wished to offer testimony from one of its agents who received a warning from Zillow, it had *repeated* opportunities—indeed, *deadlines*—to disclose such a witness. Compass could have included such an agent among its numerous declarants in support of the PI Motion. It chose not to, instead including various executives (*see* Dkt. 25–27, 29) and one Regional Vice President who oversees agents (that Compass has since abandoned as a witness) (*see* Dkt. 28). Compass also could have disclosed that it intended to have an agent testify when the parties negotiated document custodians in early July. It did not. Compass could have disclosed that it intended to call an agent on August 8, as required by the Court's scheduling order. Compass's documents show that it was tracking Zillow's warnings as of August 8, and knew before then of over *130 agents* who had received such warnings. *See* CZ_COMP_000112213. Yet Compass chose not to include any such agent on its witness list.[3] Many Compass agents have continued to receive warnings since then. That one more agent got one more warning on October 13 is not "good cause" for Compass to rue its prior omissions and throw Zillow's pretrial schedule into chaos.

Compass's relevance arguments are also misplaced. Compass must show irreparable harm to itself, not to others. *See Solus Alternative Asset Mgmt. LP v GSO Cap. Partners, L.P.*, 2018 WL 620490, at *6 (S.D.N.Y. Jan. 29, 2018) (finding no "authority in which a court has found irreparable injury based solely on public harm without any demonstrated irreparable harm to the plaintiff"). One agent's anecdotal experience about one warning—for a home listing that

---

    [3] To the extent Compass believed its agents are third parties, it could have disclosed or conducted discovery of any of its agents during the third-party discovery period, but it did not. Compass's contention that it somehow "timely disclosed" ⬛ in third party discovery (by disclosing its intention to add her name to the witness list one day before the October 24 close of third party discovery, but ten days after ⬛ received the warning) is risible.

3

The Honorable Jeannette A. Vargas
October 27, 2025
Page 4

Compass concedes was not actually removed from Zillow's platforms—will not shed light on whether Compass has been irreparably harmed.

Compass cannot show good cause for its failure to comply with the Court's scheduling order or for its disruption of orderly preparation for the PI hearing. *See Nikonov v. Flirt NY, Inc.*, 338 F.R.D. 444, 445 (S.D.N.Y. 2021) (citing Fed. R. Civ. P. 16(4)(b)); *see also See* Fed. R. Civ. P. 37(c)(1) (parties may not rely on witnesses not timely disclosed). *Lee v. Kylin Management LLC* does not support Compass's position. The Court there noted that "the moving party must demonstrate that it has been diligent in its efforts to meet the Court's deadlines, and that despite its having exercised diligence, the applicable deadline could not have been reasonably met." 2019 WL 917097 at *1 (citation omitted). But Compass has not met that standard because it could have reviewed—and indeed, was reviewing—its own records of agents who received warnings from Zillow well before the August 8 deadline to disclose first-party witnesses. Nothing is unique about ▮▮▮▮ compared to the agents Compass already knew were being warned, except that Compass has purportedly identified ▮▮▮▮ only recently. And Compass has plainly long had "a factual basis to allege" that its agents have received warnings from Zillow because it acknowledged that fact in its PI Motion papers. *See* Dkt. 26 ¶ 15.

### D. *Zillow Will Be Prejudiced if* ▮▮▮▮ *is Allowed to Testify*

The very kind of "prejudic[e] to the defendants" that gave the Court "grave concerns" when it rejected Compass's witness substitution proposal back in July will materialize if the Court permits this untimely addition of a Compass witness. *See* Jul. 30, 2025 Hearing Tr. at 8:19–25, 11:13–22.

If ▮▮▮▮ is added to the witness list at this late stage, Zillow will need to rapidly take document discovery and prepare for an additional deposition in the three weeks before the preliminary injunction hearing begins—all in parallel to significant other work, including drafting a response to the Supplemental Brief that Compass will file on October 31 (which response is due November 12) and preparing for the PI hearing that begins on November 18. *See* Dkt. 65 (scheduling order). That is exactly the sort of "chao[s]" that the Court expressly designed the schedule to avoid. *See* Jul. 30, 2025 Hearing Tr. at 8:5–10. Indeed, in the case that Compass relies on, the Second Circuit found highly relevant to a lack of prejudice the fact that "[t]his is not a case in which Appellant was presented with proposed [] witnesses on the eve of trial; to the contrary, the district court permitted the Defendants' amendment of the pretrial order *more than three and a half months prior to the hearing.*" Mandarino v. Mandarino, 408 F. App'x 428, 432 (2d Cir. 2011) (summary order) (emphasis added). Those facts are plainly not present here.

Moreover, Zillow was denied the opportunity to take into account whatever evidence Compass intends to elicit from ▮▮▮▮ when conducting fact and expert discovery for the last two and a half months. Zillow does not have its own real estate agents in the way that Compass does, but Zillow did take discovery from third parties (Redfin and eXp) who do, and whose agents presumably had different experiences from Compass's agents. Zillow conducted that third-party discovery without knowing that Compass would call one of its agents as a witness, or what that witness would say. Zillow was also unable to take Compass's use of an agent witness

4

The Honorable Jeannette A. Vargas
October 27, 2025
Page 5

into account in thinking about what documents to produce, what discovery to take from Compass and third parties, or what expert analysis and testimony to prepare. Zillow would now need to adjust its hearing strategy and prepare to cross-examine a new witness as discovery unfolds in the eleventh hour before the hearing. This would be highly prejudicial, and the Court should not allow it.

**Plaintiff's Position**

The Court will benefit from the Compass-affiliated real estate agent's (the "Agent") testimony, the Agent has information relevant to the PI hearing and the Court's decision on Compass's PI motion, and Compass disclosed the Agent by the October 24 witness disclosure deadline.  Zillow does not contest these facts.  Instead, Zillow seeks to block the Court from hearing from the Agent because her relevance was not known to Compass earlier.

First, the Court would benefit by hearing from the Agent at the PI hearing.  The Agent will explain–from a perspective that no other witness can provide–that Zillow is a monopolist and that she cannot run her small business if blocked by Zillow, that she and her clients value options to market homes, that the Zillow Listing Access Standards (the "Zillow Ban") has changed how she competes with other agents and the options she provides for home sellers, and that the Zillow Ban has changed how brokers in her community compete with each other and the options that home sellers in her community have.  She provides an important perspective: after all, the Zillow Ban hurts agents and home sellers, in addition to hurting Compass, and the Agent can speak from personal knowledge about that harm.

Second, Zillow applies the wrong legal standard.  Courts commonly allow parties to identify witnesses in final witness lists who were not disclosed in preliminary witness lists. For example, Federal Rule of Civil Procedure 26(a)(1) requires parties to include, in their initial disclosures, the identity of any witness that party may use to support its claims or defenses.  And a party that fails to make that disclosure "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Nevertheless, Courts regularly allow parties to call witnesses to a hearing or trial that were disclosed well after the initial disclosure deadline, especially where the relevance of witness was not known to the disclosing party until later in the case.  *See, e.g., 3DT Holdings LLC v. Bard Access Systems Inc.*, No. 17-cv-5463, 2022 WL 1569493, at *3-4 ( S.D.N.Y. May 17, 2022) (refusing to exclude witness not listed on initial disclosures and permitting witness to testify because deposition of witness was offered before trial).

Here, the Agent's relevance was not known by Compass until right before the October 24 deadline. On October 13, 2025, two events occurred that warrant allowing the Agent[4] to testify at the upcoming PI Hearing.

---

[4] The Agent is an independent contractor real estate agent that is affiliated with Compass.  She is not employed by Compass.

5

On October 13, 2025, Zillow sent the Agent a warning that one of her listings was violating the Zillow Ban. The warning stated that Zillow would block the listing from its platform after the second warning if it continued to be non-compliant. As the Agent received the notification from Zillow, she has first-hand experience about the impact of the Zillow Ban on her business, her team, and her home seller clients. She also has an understanding of why her clients are concerned about not having their listings published on Zillow's sites. Compass believes the information revealed by the Agent's unique perspective will be helpful for the Court to hear during the preliminary injunction hearing. Moreover, because Zillow sent her a warning, it knew about the Agent's relevance even before Compass did.

On the same day the Agent received the warning notice, Zillow publicly announced that its Zillow Ban have been having the exact effect that Zillow wanted—chilling pre-marketing conduct across the entire industry and scaring at least 90% of agents into compliance. *See* Exhibit A. Specifically, Zillow proclaimed that "almost 9 in 10 agents" who "received a Listing Access Standards notice from Zillow only received one, meaning the initial notice resulted in most agents making sure their next listing was . . . aligned with the Zillow standards." *Id.* The Agent's testimony and experience as a real estate professional who has been targeted by the Zillow Ban will provide context on the content and impact of the warning letters referenced in Zillow's announcement, as well as the Zillow Ban more broadly. The Agent's testimony will provide insight into how the Agent perceived the notification she received, and the chilling effect it has on her ability to offer consumers the choice of pre-marketing, and show the impact on a participant in the industry of the survey that Zillow released.

Third, Zillow's objection rests on the mistaken premise that the Agent is a "first-party" witness under Compass's control. She is not. The Agent is an independent contractor–not an employee–and Compass has no legal authority to compel her to testify or to take any action in this litigation. She is a third party who may, at any time, choose to affiliate with another brokerage. Her willingness to testify is voluntary, and Compass cannot compel her to appear or even to cooperate. Zillow's suggestion that Compass "controls" her because she uses Compass's trademarks or the company email domain is both legally incorrect and practically untrue; those are standard features of the Compass brokerage affiliation and are not indicia of control over her participation in this litigation. Compass stands in the same position as Zillow with respect to the Agent as it cannot require her to testify, produce documents, or act on its behalf. The agent's voluntary participation underscores her status as a third party and makes Compass's inclusion on its witness list proper and timely.

Fourth, to the extent that "good cause" is necessary, Compass has demonstrated said "good cause" to seek the Agent's testimony at the evidentiary hearing and there is minimal prejudice to Zillow. *See* Fed. R. Civ. Proc. 16(b)(4). Under Federal Rule of Civil Procedure ("Rule") 16(b)(4)'s "good cause" standard, courts "primar[ily] conside[r]" whether the movant can demonstrate diligence and also consider "significan[t] prejudice" to the nonmoving party. *GMO Gamecenter USA, Inc. v. Whinstone US, Inc.*, 2025 WL 2452164, at *2 (S.D.N.Y. Aug. 26, 2025) (citations omitted).

The Honorable Jeannette A. Vargas
October 27, 2025
Page 7

  For example, in *Mandarino v. Mandarino*, the Second Circuit affirmed a trial court's decision to amend a pretrial order to allow two additional witnesses to testify at an evidentiary hearing. 408 F. App'x 428, 431–32 (2d Cir. 2011). In an unpublished decision, the Second Circuit reasoned that the trial court did not abuse its discretion under Rule 16 because the opposing party failed to show sufficient prejudice. Specifically, there was no evidence the opposing party did not know the substance of the testimony (as the witnesses would testify about their time with the opposing party) or have an opportunity to depose the witnesses. *Id.* Here, there is plenty of time for Zillow to conduct discovery before the PI hearing.

  Courts have also concluded that a party satisfies Rule 16(b)(4)'s "good cause" standard where they move for relief based on recently discovered information. In *Lee v. Kylin Management LLC*, for instance, a court in this District found that the plaintiff established "good cause" to modify the scheduling order to allow an amended complaint because the plaintiff was seeking relief "based on information that he learned for the first time shortly before he filed his motion." 2019 WL 917097, at *1 (S.D.N.Y. Feb. 25, 2019) (citations omitted). The court rejected the defendant's argument that the plaintiff "should have known" and sought relief sooner, reasoning that "there is a critical difference between having information sufficient to conclude that something *could* have happened, and having a factual basis to allege that it *did* happen." *Id.* (emphasis in original).

  Compass demonstrates sufficient "good cause" under *Lee* because it seeks relief based on recently discovered information such that granting relief would not result in prejudice. Compass sought to add the Agent as a witness less than two weeks after Zillow sent the warning notification to the Agent. *See Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (Rule 16 "good cause" satisfied where motion was brought within one month after learning new information and re-raised within two months of removal from abeyance) (citation omitted). Although Compass generally knew of the Agent's existence, it had no "factual basis" to name her as a witness for the evidentiary hearing until October 13, 2025, *Lee*, 2019 WL 917097, at *1, because on that day, Zillow issued its "notification" that her listing violated the Zillow Ban and threatened to preclude the Agent's listings entirely, even after she provided evidence to the contrary. Further, Compass's need to call an agent to testify at the hearing was not apparent until Zillow's October 13th announcement where Zillow admitted that its warning letters were making agents fall into line without actually having to ban their listings. This is an experience that the Agent can provide at the hearing and goes directly to Compass's claims regarding irreparable harm. Zillow is also not prejudiced by the Agent's inclusion on the witness list because the basis of the Agent's expected testimony is Zillow's efforts to enforce its own ban.

 Zillow's cursory invocations of prejudice should not shield it from evidence about *its own* actions. Compass timely disclosed the Agent in its final witness list, offered to provide responsive documents, and offered to make the Agent available for deposition well prior to the evidentiary hearing. Compass respectfully requests that the Court allow the Agent to testify at the upcoming evidentiary hearing.

  **II.** **<u>Format of Supplemental Briefs</u>**

The Honorable Jeannette A. Vargas
October 27, 2025
Page 8

The parties agree that, subject to the Court's approval, the Supplemental Briefs shall not exceed 10,000 words and shall not attach any new fact witness declarations. The parties are continuing to meet and confer in an attempt to reach agreement regarding whether the parties may attach other exhibits to the Supplemental Briefs.

### III. Sealing Procedures for Pre-Hearing Briefs

The parties respectfully request that the Court permit the parties and non-parties to adopt the following sealing procedures for Plaintiff's Supplemental Brief in Support of its Motion for Preliminary Injunction ("Supplemental Brief"), Defendants' Response to the Supplemental Brief ("Response"), and the parties' Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") (all collectively, the "Briefs") in order to allow the parties to take into account the evidence that is publicly disclosed at the PI hearing:

a. The parties will provisionally file under seal their Briefs, and redact portions of the public versions of their Briefs containing any citations, quotes, or other language that summarizes any Discovery Material that has been designated by a party or non-party as Confidential, Highly Confidential – Attorneys' Eyes Only, or Highly Confidential – Outside Counsel's Eyes Only under the terms of the Protective Order (the "Confidential Information"). ECF No. 49. The parties shall serve via e-mail (1) the other party with an unredacted copy of the Briefs; and (2) any non-party with a copy of the Briefs with the non-party's Confidential Information unredacted.

b. If a designating party or non-party seeks to maintain under seal any Confidential Information contained in the Briefs, the parties and non-parties shall exchange proposed redactions to the Briefs on December 12, 2025.

c. On December 16, 2025, Plaintiff shall file a revised version of its Supplemental Brief and Proposed Findings incorporating Plaintiff's, Defendants', and non-parties' requests for continued sealing. Defendants shall file a revised version of their Response and Proposed Findings incorporating Plaintiff's, Defendants', and non-parties' requests for continued sealing.

d. The parties and non-parties shall have until December 22, 2025, to file individual letter motions to the Court explaining the need to maintain any of their information in the Briefs under seal.

Counsel for the Parties:

/s/ Chahira Solh
Chahira Solh (admitted pro hac vice)
Daniel A. Sasse (admitted pro hac vice)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614

/s/ Bonnie Lau
Bonnie Lau (admitted pro hac vice)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300

The Honorable Jeannette A. Vargas
October 27, 2025
Page 9

Telephone: (949) 263-8400
csolh@crowell.com
dsasse@crowell.com

Kenneth Dintzer (NY Bar No. 2476687)
(admitted pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
kdintzer@crowell.com

Luke Taeschler (NY Bar No. 5308325)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
ltaeschler@crowell.com

*Attorneys for Plaintiff Compass, Inc.*

San Francisco, CA 94105
Telephone: 415-947-2414
blau@wsgr.com

Beau Buffier (NY Bar No. 3932050)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 974-5800
bbuffier@wsgr.com

Eric P. Tuttle (admitted pro hac vice)
Nicholas R. Sidney (admitted pro hac vice)
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
Telephone: (206) 883-2513
eric.tuttle@wsgr.com
nsidney@wsgr.com

*Attorneys for Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC*