November 16, 2025

**VIA ECF**

The Honorable Jeannette A. Vargas
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Compass, Inc. v. Zillow, Inc., et al.*; Case No: 1:25-cv-05201-JAV (S.D.N.Y.)

Dear Judge Vargas:

     Plaintiff Compass, Inc. ("Compass") and Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC (collectively "Zillow) submit this letter to raise confidentiality disputes for the Court. The parties have met and conferred related to these issues and have agreed on the approach to many trial exhibits, including that they will seal personal identifiable information in hearing exhibits used in court. Compass also brings to the Court's attention three trial exhibits produced by third-party Redfin; despite meeting and conferring with Redfin over the sealing of these exhibits, Redfin and Compass remain at an impasse.

**Compass's Position**

     Compass thanks the Court for its diligence and expedient earlier order regarding confidentiality (ECF No. 131), after which Zillow withdrew most of its confidentiality claims, allowed Mr. Glass to help Compass counsel prepare for the hearing, and thus resolved much of the issues raised by Compass's earlier letter motion (ECF No. 129). However, there remains an issue with Zillow's designations for seven documents: (i) PX-010, PX-015, PX-020, PX-056 produced by Zillow, and (ii) PX-121, PX-121, and PX-133 produced by Redfin. This is a public hearing, and Zillow bears a heavy burden to deprive the public from seeing relevant information. Not only has Zillow failed to meet that burden, but accommodating Zillow's demand that some of the hearing be secret would unduly impair the Court's receipt of relevant information and Compass's presentation.

    I.    **Zillow Exhibits**

     The public and real estate industry have an interest in hearing the evidence related to this dispute, and the material that Zillow wants to seal is not sufficiently sensitive to override that interest and the presumption of publicity in proceedings like this one.[1] *In re Demetriades*, 58

---

[1] Zillow's claim that Compass desires to broadcast Zillow's proprietary information is untrue. Compass is not contesting Zillow's motion to seal dozens of exhibits that likely will not be used at the hearing and that contain information that is not relevant to this dispute. Compass has

F.4th 37, 47 (2d Cir. 2023) ("[A]s we have explained in the context of reprimanding a district court for sealing *its* courtroom, 'the power to close a court room where proceedings are being conducted . . . is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons.'") (citation omitted) (emphasis in original).

Compass's proposal for sealing exhibits used at the hearing is straightforward and seeks to balance the relevant considerations at play here. Compass believes the parties should be allowed to redact confidential, commercially sensitive information in the exhibits used in court when the redacted information is not relevant to issues in this case. Accordingly, Compass seeks to seal certain irrelevant and commercially sensitive sections of its Board of Director materials.[2] Compass also does not oppose Zillow's motion to seal similar materials not relevant to the core issues in dispute.

However, Compass opposes Zillow's attempt to seal portions of hearing exhibits that are highly relevant, not sealable, and likely will be used in depth in court. First, these exhibits are over five months old and discuss a policy that *was adopted months ago*. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *4 (S.D.N.Y. Jan. 17, 2023) (explaining that it is "less appropriate" to seal older information). Zillow cannot claim some secret sauce for such outdated information, which is publicly available today. Second, because the exhibits go directly to the disputed issues—including competition between Zillow and Compass—they are critical to Compass's examination of witnesses and the testimony Compass will elicit at the hearing. Because the exhibits contain highly relevant information, language, and terminology essential to Compass's examinations and case theory, there is not a workable process to reference this information during the hearing absent closing the courtroom. *See, e.g., United States v. Childs*, No. 1:05-CR-160, 2006 WL 3257048, at *1 (W.D. Mich. Nov. 9, 2006) (severing trial of joint co-defendants instead of using proposed redacted statement of co-defendant where proposed redaction "would prevent [the co-defendant] from effectively cross-examining the government witnesses on the entire statement").

As the Court recognized at the November 10 hearing, the burden to seal the courtroom here is "very high." Hearing Tr. at 14. Zillow has not satisfied its burden with respect to the at-issue exhibits here. The information contained in the exhibits would not cause significant damage to Zillow if disclosed, and certainly not so much damage to override the public's interest in hearing this evidence. Compass has explained its view since day one: the issues raised by the case are systemic, impacting how *every home seller* in the United States can sell his or her home. The real estate industry and the public should not be denied their right to hear this evidence as they evaluate the issues raised by this case and the Court's forthcoming decision. *See Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 165-66 (2d Cir. 2013) (district court erred in sealing

---

instead focused only on a handful of highly relevant documents that are critical to the issues in this case, as well as Compass's ability to elicit fulsome, important testimony and best present its case.

[2] Compass has filed a contemporaneous motion to seal in support of its request to seal such board materials. Compass has met and conferred with Zillow in connection with Compass's motion and has de-designated certain material at Zillow's request.

hearing transcript because the "district court's concerns do not outweigh the public's First Amendment presumptive right of access to court proceedings."); *Nervora Fashion, Inc.*, 2025 WL 406669 at * 4 (refusing to seal contractual terms because it was "relevant to the public reaching a full understanding of the Court's analysis").

***Discussions About the Threat Posed By and Response to Compass.*** Zillow intends to seal several exhibits that explicitly discuss the competitive threat posed by Compass and Zillow's corresponding response—essential issues in the case. For example, Zillow seeks to seal information in several exhibits (e.g., PX-010, PX-015, PX-020) related to a new product that, in large part, was designed to better counteract the competitive threat posed by Compass. In addition, Zillow intends to prevent Compass from discussing in detail PX-020, an email authored by Mr. Samuelson discussing in detail his view of the threat posed by Compass and Zillow's response to that threat. The discussion and information in these documents are conceptual and lack any specific figures, projections, pricing, trade secrets, or other highly sensitive and actionable competitive intelligence. *See, e.g., Nervora Fashion, Inc.*, No. 24-cv-4805, 2025 WL 406669, at * 3 (explaining that courts typically seal highly sensitive materials such as trade secrets, confidential research and development information, and pricing information and denying motion to seal other material not similarly sensitive). At bottom, Zillow simply has not demonstrated that the disclosure of such information will harm Zillow, and certainly not to the degree required to overcome the presumption of public access. Moreover, given how directly probative these exhibits are to Compass's theories, Compass cannot be prohibited from using them in full and in depth when examining Zillow's witnesses.

***Zillow Ban Enforcement Statistics.*** Second, Zillow intends to prevent Compass from fully examining Zillow witnesses about information related to enforcement of the Zillow Ban. As a threshold matter, Zillow cannot demonstrate that the information it seeks to seal in PX-056 is commercially sensitive. The exhibit identifies only (i) the number of warning letters sent by brokerage, and (ii) the number and identity of listings that have been banned under the Zillow Ban. This information on its own, and Zillow's conclusory statements about why said information is sufficiently sensitive, does not satisfy the standard to seal it from the public. *Id.* at 3 ("[I]n view of the strong presumption in favor of public access and the movant's burden to justify sealing, conclusory statements that documents contain confidential business information are insufficient to justify redaction") (citations omitted). Indeed, the exhibit provides no details about the mechanisms that Zillow uses to identify or ban listings; nor does it contain any specific details outlining Zillow's specific enforcement strategy.[3] Last, enforcement of the Zillow Ban— particularly as to Compass—is a central issue in this case. Compass should not be prejudiced as to how it can use that information with witnesses when they are on the stand.

---

[3] In line with the parties' agreement to seal and redact personally identifiable information, Compass has agreed to redact the address of each banned listing referenced in PX-056.

## II. **Redfin Exhibits**

For the same reasons discussed above, the three Redfin hearing exhibits at issue (PX-121, PX-125, PX-133) should not be sealed.[4] Redfin also cannot show that the information at issue is sufficiently sensitive, and damaging to Redfin if disclosed, to deny the public's right of access. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *7 (S.D.N.Y. Jan. 17, 2023) (denying request to seal because a document "cannot be sealed simply because it is subject to a protective order" and the party seeking to seal failed to "Explain why this information is sensitive or how harm will result if it is disclosed"), reconsideration denied, No. 14-MC-2542 (VSB), 2023 WL 3966703 (S.D.N.Y. June 13, 2023). These documents are not sensitive projections, analysis, or future-looking plans. They are old, limited email discussions, containing nothing sufficiently sensitive to deprive the public of access. For example, in PX-121 and PX-133, Redfin merely discusses the upside of why adopting a policy in opposition to the Zillow Ban would be beneficial to Redfin—an obvious fact that Plaintiff already alleged in its complaint; the document contains no specific information, plans, details, projections, or other proprietary analyses. PX-125 similarly contains high-level reactions and expectations about how the real estate industry, and agents in particular, will react to the policies.

Moreover, as with the Zillow exhibits, these exhibits are essential to Compass's conspiracy claims. The exhibits demonstrate that Redfin acted contrary to its economic self-interest because of its conspiracy with Zillow and also show that Redfin knew its boycott with Zillow would significantly reduce homeseller choice. Accordingly, Compass will be severely prejudiced if it cannot explain, discuss, and quote these exhibits in detail as part of its presentation of evidence.

**Zillow's Position**[5]

## I. **Zillow's Sealing Requests**

Zillow's sealing requests are narrowly targeted to protect its highly confidential, proprietary information related to future products and features, sensitive business and negotiation strategy, and ongoing efforts to detect violations of Zillow's Standards to protect its own platform. That Compass desires to reveal Zillow's proprietary information to the public *and the "real estate industry"* is not a reason to strip protection from Zillow's proprietary information or provide Compass and others unearned advantages in the market.

---

[4] Compass and counsel for Redfin met and conferred on November 13, 2025 related to these exhibits. Redfin de-designated a small portion of one exhibit but maintained confidentiality over the remaining information in that exhibit (PX-125), as well as the other two exhibits at issue (PX-121, PX-133). Compass informed counsel for Redfin that its de-designations were insufficient and that Compass would be filing this letter, giving Redfin an opportunity to file its own letter in response or appear before the Court in advance of the hearing should it choose to do so.

[5] Zillow has not had an opportunity to review Compass's sealing motion because Compass did not provide a copy prior to filing. Zillow expects to respond on Sunday.

a. The First Amendment Right of Access is Qualified

Compass positions the public right of access as an insurmountable barrier to sealing. It is not. Courts routinely seal testimony and documents that pose a risk of competitive harm.[6] *See, e.g.*, *FuboTV Inc. v. The Walt Disney Company*, No. 1:24-cv-01363 (S.D.N.Y. Sept. 3, 2024), ECF No. 296 (sealing courtroom during antitrust PI hearing when witnesses testified to "highly sensitive" matters such as "agreements, negotiation terms, . . . and business strategies"); *Federal Trade Commission v. Tapestry, Inc.*, No. 1:24-cv-03109 (S.D.N.Y. Sept. 23, 2024), ECF No. 327 (sealing portions of PI hearing transcript involving "commercially sensitive information"); *Federal Trade Commission v. IQVIA Holdings Inc.*, 1:23-cv-06188, ECF No. 309 (S.D.N.Y. 2023) (sealing courtroom for period spanning 30 pages of testimony in antitrust matter because "this case provides one of those situations where there is exceedingly sensitive competitive financial information that will be discussed"); *id.* at ECF Nos. 311, 313, 315 (repeatedly sealing courtroom); *United States of America v. American Express Company*, 1:10-cv-04496, (E.D.N.Y. 2014) (sealing entire testimony of two witnesses in antitrust matter); *EFT Servs., LLC v. I-POS Sys. LLC*, 2025 WL 1752144, at *3 (S.D.N.Y. June 25, 2025) (sealing "proprietary information or trade secrets regarding" defendants' technology and software).

Compass's cases do not support its extreme position. In *In re Demetriades,* the parties filed appellate briefing under seal without prior leave of the court, which is plainly improper. *See In re Demetriades*, 58 F.4th 37, 45–47 (2d Cir. 2023). The *Keurig* court declined to seal information that was six, eight, or even ten years old—much older than the months-old information at issue here.[7] *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *4, *8–*11 (S.D.N.Y. Jan. 17, 2023). *Childs* is an inapplicable criminal case involving the defendant's due process rights to cross-examination under the Confrontation Clause. *United States v. Childs*, 2006 WL 3257048, at *1 (W.D. Mich. Nov. 9, 2006). And *Newsday* considered a district court's decision to seal a transcript on the basis that disclosure might materially impair the performance of Article III functions. *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013). Finally, the *Nervora* court *granted* a motion to seal information similar to Zillow's requests here. *Nervora Fashion, Inc. v. Advance Mag. Publishers Inc.*, 2025 WL 406669, at *2–*4 (S.D.N.Y. Feb. 5, 2025) (sealing "financial projections, earnings, revenue, royalty payments, direct expenses, and negotiations regarding these items").

b. Zillow's Narrow Sealing Requests are Genuinely Sensitive

Compass's principal complaint is that Zillow's documents are—from the perspective of a putative competitor—not actually sensitive. The Court should not accept Compass's mere say-so and mischaracterizations of the documents, as even a cursory review reveals that public disclosure of each document presents a substantial risk of harm to Zillow, as confirmed by the Declaration of Shannon Cartales. *See* Dkt. 132-1.

---

[6] Zillow proposed that Compass could examine witnesses in open court with a high level of generality while allowing the Court, the witness, and counsel to follow along with unredacted exhibits. Compass declined that proposal.

[7] Compass's positions are inconsistent: it complains above that Zillow's documents are "months old," while several of the documents Compass intends to seal are at least as old.

PX-010: Zillow has proposed narrow redactions to 13 out of 33 pages in this document. The redacted pages discuss "work in progress concepts" for potential, new Zillow products, PX-010 at -740, -751, user experience mockups, other "products" that "are in development," and analysis of business strategies not at issue in this case. *Id.* -747-50. The document further discusses commercial terms between Zillow and a potential counterparty. *Id.* at -753 (discussing what Zillow is "offering" in a potential commercial deal).

PX-015: This email thread discusses a potential partnership with a brokerage (i.e., a competitor of Compass in the market for brokerage services), including potential collaboration on Zillow's unreleased product. PX-015 at -344 (discussing "key considerations" for the presentation to the counterparty).

PX-020: This email thread discusses a "product request" for a new, unreleased initiative. PX-020 at -457.

PX-056: This letter reveals specific statistics regarding Zillow's enforcement of the Listing Access Standards, including the number and identity of the listings that Zillow has chosen not to display on its own platform. PX-056 at 2-4. Revealing this information may allow Compass and other brokerages to develop techniques to evade detection by Zillow.

        c.    <u>Zillow Will Be Irreparably Harmed If Its Proprietary Information is Revealed</u>

The prejudice to Zillow in denying its Motion is both significant and irreparable, whereas there is no prejudice to Compass or the public in sealing the documents and related testimony.

Harm to Zillow: Once revealed to the public, the information cannot be made secret again, and Zillow's proprietary interests in the information would be destroyed. For example, releasing information about an unreleased future product would allow a competitor to undercut Zillow's efforts or race them to bring the product to market. And revealing Zillow's negotiating positions would allow a counterparty to gain an unfair advantage in future negotiations. Likewise, revealing detailed statistics regarding Zillow's enforcement of the Listing Access Standards is tantamount to disclosing where the motion sensors are placed in a bank. Compass has a vested interest in evading detection by Zillow so that it may continue freeriding on Zillow's investments and frustrate Zillow's ability to determine the content of its own platform.

Zillow's concerns are not theoretical. As Mr. Samuelson testified at his deposition, information about a product was "shared with Compass under an NDA, and then Compass subsequently announced that they were going to launch a similar product after that." Samuelson Tr. at 177:8–11.

Compass: There is no prejudice to Compass in granting Zillow's sealing requests. Zillow does not contest (for purposes of the PI only) Compass's ability to use the documents and enter them into evidence. There is also no reason to believe that Compass actually intends to use substantial portions of the documents it complains about. The parties have been allotted 7.25 hours per side to present their cases; it is simply not feasible for Compass to examine witnesses on 44 pages of highly confidential documents. At most, the Court may need to seal the

courtroom for twenty minutes for a single witness, and there is no cause for concern about juror misperceptions associated with sealing.

<u>Public:</u> The public also will not be harmed by maintaining Zillow's proprietary information under seal during the PI hearing. Even if the Court briefly seals the courtroom and Compass ultimately does not elicit sensitive information, the Court may restore public access by unsealing the transcript of the proceedings. As the Second Circuit explained, "[a] district judge considering whether to close a courtroom is necessarily engaged in an exercise of prediction regarding the *potential* for disclosure of material that may justifiably be protected even against the presumptive right of public access" whereas judges "deciding whether transcripts can be released after the fact have the benefit of hindsight, and can determine more clearly whether the actual testimony in fact disclosed matters that are appropriately sealed." *Newsday LLC*, 730 F.3d at 163 n.8.

## II.  **Redfin Documents**

Zillow takes no position on Compass's disputes with non-party Redfin; Zillow is not the producing party of those documents and did not designate them under the Protective Order.

Counsel for the Parties:

| | |
|---|---|
| /s/ Chahira Solh | /s/ Bonnie Lau |
| Chahira Solh (admitted pro hac vice) | Bonnie Lau (admitted pro hac vice) |
| Daniel A. Sasse (admitted pro hac vice) | WILSON SONSINI GOODRICH & |
| CROWELL & MORING LLP | ROSATI, P.C. |
| 3 Park Plaza, 20th Floor | One Market Plaza |
| Irvine, CA 92614 | Spear Tower, Suite 3300 |
| Telephone: (949) 263-8400 | San Francisco, CA 94105 |
| csolh@crowell.com | Telephone: 415-947-2414 |
| dsasse@crowell.com | blau@wsgr.com |
| | |
| Kenneth Dintzer (NY Bar No. 2476687) | Beau Buffier (NY Bar No. 3932050) |
| (admitted pro hac vice) | WILSON SONSINI GOODRICH & |
| CROWELL & MORING LLP | ROSATI, P.C. |
| 1001 Pennsylvania Avenue, NW | 1301 Avenue of the Americas, 40th Floor |
| Washington, DC 20004 | New York, NY 10019-6022 |
| Telephone: (202) 624-2500 | Telephone: (212) 974-5800 |
| kdintzer@crowell.com | bbuffier@wsgr.com |
| | |
| Luke Taeschler (NY Bar No. 5308325) | Eric P. Tuttle (admitted pro hac vice) |
| CROWELL & MORING LLP | Nicholas R. Sidney (admitted pro hac vice) |
| Two Manhattan West | WILSON SONSINI GOODRICH & |
| 375 Ninth Avenue | ROSATI, P.C. |
| New York, NY 10001 | 701 Fifth Avenue, Suite 5100 |
| Telephone: (212) 223-4000 | Seattle, WA 98104 |
| ltaeschler@crowell.com | Telephone: (206) 883-2513 |
| | eric.tuttle@wsgr.com |
| *Attorneys for Plaintiff Compass, Inc.* | nsidney@wsgr.com |

*Attorneys for Defendants Zillow, Inc., Zillow Group, Inc., and Trulia, LLC*