COURT COPY





**AN OPEN LETTER TO THE COURT AND TO THE PARTIES – Dated December 1, 2025**

United States District Court – Southern District of New York
Compass, Inc. v. Zillow, Inc. et al.  Case No. 1:25-cv-05201 (JAV)

Re: Filing of Amicus Curiae Materials and Explanation of Issues Raised Therein

**Honorable Magistrate Judge Jeannette A. Vargas:**

Your Honor,
I respectfully submit this Open Letter in support of, and as explanation for, the
accompanying **Amicus Curiae filing**, which I believe raises issues the Court must consider
**sua sponte** to protect both the public and the integrity of interstate real estate commerce.

I am writing because even a <u>**no injunction decision**</u> **in this case will be interpreted
nationally as a green light for Off-MLS listing pipelines**, and those pipelines have already
caused **widespread financial injury**, including **criminal elder financial exploitation**
on a scale this Court has not yet been shown.

The Court must retain **full control** over this matter and require Compass to **prove
affirmatively** that its Off-MLS practices — including "Private Reserve" and similar shadow-
market listing funnels — **do not harm vulnerable seniors**, who are statistically the least
informed, most financially exposed, and most economically targeted class of sellers in the
American real estate market.

Based on the evidence I have documented and the complaints I have filed with the
**California Attorney General Rob Bonta** (attached as **Exhibit A**), I hereby **allege** that:

---

**1. Compass's Off-MLS listing practices constitute CRIMINAL conduct**

Specifically:

- **Elder Financial Exploitation**,

- **Fraudulent concealment**,

- **Intentional suppression of market exposure**, and

- **Equity stripping for the benefit of Compass and its investors.**

---

**2. When the seller is a senior, the conduct escalates to a heightened criminal category**

Under multiple state statutes nationwide (California, Michigan, New York among them), **intentional price suppression or concealed-market listing manipulation involving a senior seller constitutes <u>felony elder financial abuse</u>.**

This Court cannot allow such systemic misconduct to hide beneath the label of "competitive practices" or "industry discretion."

---

### 3. The Off-MLS marketplace is NOT a harmless marketing tool — it is a shadow system

It functions to:

- Withhold listings from the public,

- Avoid the MLS price-discovery process,

- Depress sale prices,

- Manufacture a dual-sided sale for brokerage gain,

- And route ill-gotten equity into the hands of financially obligated corporate entities whose investors expect two-sided revenue.

This is not innovation.
This is not competition.
This is not fiduciary conduct.

This is **structural elder exploitation**, dressed up in corporate branding.

---

### 4. The Court should exercise its inherent authority

I respectfully request the Court to:

### A. Issue a sua sponte order

requiring Compass to disclose, under oath:

- How many Off-MLS listings it has taken nationally;

- How many involved sellers over age 60, 70, and 80;

- The average and median price differentials between Off-MLS sales and full-market MLS sales;

- Whether Compass, or its agents, received double-ended commissions on those transactions;

- And whether any internal compensation system rewarded the suppression of MLS exposure.

These questions go directly to **consumer harm**, **elder exploitation**, **antitrust injury**, and **market integrity** — well within the Court's inherent authority to examine.

## B. Require Compass to prove that their Off-MLS system does NOT harm vulnerable seniors

The burden should be on the party conducting the hidden marketplace.
Compass must not be allowed to claim "no damage" while the victims — especially seniors — never learn what was taken from them.

## C. Preserve jurisdiction and control

The structural issues raised in this case — visibility, fairness, elder protection, and dual-sided corporate gain — demand oversight by the federal judiciary.
No regulatory body has acted.
No association has intervened.
No state enforcement agency has stepped forward.

Therefore, Your Honor, the responsibility falls to this Court.

---

**5. Closing statement — as I said years ago to a Michigan Magistrate Judge and I say again:** Your Honor, what Compass is doing is wrong, and someone needs to tell them what they have done, and are doing, is wrong. **Elder Financial Abuse is a very serious crime!**

---

Respectfully submitted,

*[signature: Gregory V. Alkema]*

**Gregory V. Alkema, REALTOR®, CRB**
Amicus Curiae
Roseville, California
Greg@GregAlkema.com
(916) 626-9464

**CERTIFICATE OF SERVICE**

I, **Greg Alkema**, certify that on **December 1, 2025,** I caused the foregoing **Motion for Leave to File Amicus Curiae Brief,** Compass vs Zillow, Case No. 1:25-cv-05201 (JAV), and the accompanying **Amicus Curiae Brief** and an **OPEN LETTER TO THE COURT** to be served on all counsel of record in this matter as follows:

> I have sent true and correct copies, by Priority Mail, Signature Required, to counsel of record at the addresses below:

**Counsel for Plaintiff, Compass, Inc.**

Latham & Watkins LLP

1271 Avenue of the Americas

New York, NY 10020

(Lead counsel: Kenneth M. Dintzer, Esq.)

**Counsel for Defendants Zillow Group, Inc., et al.**

Quinn Emanuel Urquhart & Sullivan, LLP

51 Madison Avenue, 22nd Floor

New York, NY 10010

(Lead counsel: Stephen Neuwirth, Esq.)

I further certify that I am not an attorney, am proceeding solely as a **Pro Se Amicus Curiae,** and that this service is made in good faith and in compliance with the applicable rules of this Court.

---

**Dated:** December 1, 2025

**Respectfully submitted,**

*Gregory V. Alkema*

**Gregory V. Alkema, REALTOR®, CRB**

Roseville, California

Email: Greg@GregAlkema.com

Phone: **(916) 626-9464**

**\*\*MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF OF**

GREG ALKEMA, REALTOR®, CRB\*\*

---

**Honorable Judge Vargas:**

Pursuant to Federal Rule of Appellate Procedure 29(a)(3) (applied as guidance to district courts) and this Court's inherent authority to accept filings that aid its understanding of matters affecting the public interest, **I respectfully move for leave to file the attached Amicus Curiae Brief for Compass vs Zillow, Case No. 1:25-cv-05201 (JAV).**

I am **Greg Alkema**, an **80-year-old REALTOR®** with **50 years of industry experience**, holding the **Certified Real Estate Brokerage Manager (CRB)** designation. I am currently licensed in California and have been licensed in Michigan. I am not a party to this case, have no financial stake in the outcome other than I am a Honest REALTOR® forced back to work at 80 because my inheritance is being held up by Michigan CRIMINALS, at all levels, and do not represent or work for Zillow, Compass, or any competing brokerage or portal.

I seek leave to file the proposed amicus brief because the Court's resolution of issues involving **off-MLS listing practices**, **dual-agency patterns**, **days-on-market manipulation**, and **listing concealment** will have profound consequences for the **public**, particularly **seniors**, who are disproportionately harmed by reduced exposure and suppressed pricing.

Drawing on five decades of practical experience, consumer-advocacy work, and complaints filed with relevant state agencies, my proposed brief:

1. **Explains how off-MLS practices can materially suppress sale prices**, including in rising or falling markets, based on real-world listing behavior.

2. **Identifies dual-agency patterns consistent with engineered scarcity**, using public transaction data from Northern California markets.

3. **Clarifies how manipulated marketing timelines and concealed exposure disproportionately harm senior homeowners**, whose homes are often their sole source of equity.

4. **Connects these practices to statutory elder financial abuse definitions** under California Welfare & Institutions Code § 15610.30.

5. Provides context from lived experience in uncovering elder financial abuse in Michigan, illustrating how concealment and institutional silence allow such patterns to persist.

The submission will assist the Court by offering the **on-the-ground, operational perspective** of a veteran REALTOR® who has supervised, trained, and evaluated listing behavior for decades, and who has witnessed firsthand the ways in which concealment-based models expose seniors to financial harm.

District courts routinely accept amicus briefs where the submission provides context, industry expertise, or public-interest insights beyond the parties' advocacy. This brief is offered in that spirit.

I certify that I sought consent from the parties, but as a non-party without counsel, I have not yet received a response. I therefore respectfully request that the Court grant leave directly.

For these reasons, I respectfully request that the Court **grant this Motion and file the attached Amicus Curiae Brief**.

---

**Dated:** December 1, 2025
**Respectfully submitted,**


*Gregory V. Alkema*

**Gregory V. Alkema, REALTOR®, CRB**
Roseville, California
Email: Greg@GregAlkema.com
Phone: **(916) 626-9464**

**Pro Se Amicus Curiae**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**COMPASS, INC.,**
    Plaintiff,

v.

**ZILLOW GROUP, INC., et al.,**
    Defendants.
Case No. 1:25-cv-05201 (JAV)

---

**AMICUS CURIAE BRIEF OF GREGORY V. ALKEMA, REALTOR®, CRB**

**IN SUPPORT OF PUBLIC INTEREST, TRANSPARENCY,
AND SENIOR PROTECTION IN OFF-MLS PRACTICES**

---

## I.   INTEREST OF AMICUS CURIAE

My name is **Gregory (Greg) V. Alkema**, an 80-year-old **REALTOR®** with **50 years in the profession**.  I am licensed in California (DRE #01915968) and have been licensed as a Real Estate Broker, License # 6504098063, in Michigan.

I hold the **Professional Designation CRB (Real Estate Brokerage Manager)**.  The Certified Real Estate Brokerage Manager (CRB) designation is designed for experienced owners, brokers, managers, and supervisors **to raise professional standards**, strengthen individual and office performance, and sharpen expertise in brokerage management. Since 1968, CRB has represented the highest level of professional achievement in real estate brokerage management.

I am **not** a party to this case.
I have **no financial interest** in the outcome other than I am an 80-year-old REALTOR® forced to resume selling real estate based on Elder Abuse, my inheritance stolen by Macatawa Bank, controlled by Amway co-chair Steve Van Andel, and his lawyer, Richard Postma.

I file this because I am a REALTOR® who knows wrong from right, and I live *far* to the right — by design and by conscious choice.

I have filed **DRE** and **BAR** complaints against Compass regarding **Private Reserve** and off-MLS practices and their effect on seniors. In a separate matter in Michigan, I documented elder financial abuse and sent a record known as **THE TRUTH** to every responsible authority. I asked each one to refute it. **None did.** That silence taught me how elder abuse persists when institutions look away.

I offer this Court the benefit of lived experience in two different states, across two different systems, but involving the **same pattern** of concealment, manipulation, and institutional silence.

---

## II.   SUMMARY OF ARGUMENT

This case is not only about injunctive relief.
It is about:

- Off-MLS concealment

- Price suppression

- Elevated dual-agency rates

- Distorted Days on Market

- and the **perfect conditions for elder financial abuse**

The MLS is the only transparent system that gives sellers — especially seniors — full exposure to all buyers. When a listing is concealed for 30–35 days in a "Private Reserve" or similar off-MLS funnel, full competition never occurs.

This is **not innovation**.
It is a return to pre-REALTOR® era, when Real Estate Brokers could NOT get HIGHEST and BEST price because there was not a REALTOR® MLS for 100% seller exposure.

And when the seller is a senior, concealed exposure and suppressed price fall squarely within **California Welfare & Institutions Code §15610.30** (elder financial abuse — wrongful taking of value through concealment).

Even if state regulators decline to act, the conduct remains harmful — and in substance, **criminal**.

The Court should acknowledge the public-interest dimension and consider referral to appropriate authorities.

---

## III.   REAL-WORLD MARKET TRUTH: BUYERS SHOP TODAY, NOT HISTORY

Buyers do **not** shop past sales.
They shop **current competition**:

- "What can I buy TODAY?"

- "What else is available at THIS price?"

- "If I wait, will I lose this house?"

Therefore:

1. **CMAs are lagging indicators**.
   Using past sales to lowball a senior in a rising market is **price suppression**, not fiduciary duty.

2. **Competition sets price**.
   The more buyers who can see the property, the higher the likelihood of multiple offers.

3. **Time and direction matter**.

   o   In rising markets, delay costs the seller appreciation.

   o   In falling markets, delay accelerates loss.

I have at times priced expired listings **higher** than the previous agent when I discovered a market gap with no competition, because buyers respond to competition, not history.

I have also advised seniors in falling markets to price **ahead** of the decline, because the market will not reward hesitation.

The MLS supports both strategies.
Off-MLS destroys them.

Amicus recognizes the pending litigation involves claims of irreparable harm under antitrust principles but contends **the heart of the matter is fiduciary harm to sellers, criminal if elders**.

## IV.   DUAL-AGENCY PATTERNS: THE FINGERPRINT OF SANDBAGGING

Dual agency is legal in some states — but **dangerous**.

Honest REALTORS® who expose listings fully through the MLS tend to show:

- **2–3% dual agency** (true MLS competition)

- **0%** in some ethical offices

But concentrated dual-agency levels — **20% or more** — never happen by accident. They happen only when:

- exposure is restricted

- access is controlled

- demand is suppressed

- the listing agent steers both sides

Public transaction data in a single California market show:

- A top agent with ~2,400 sales → **59 dual-agency deals** (~2%)

- Another with <300 sales → **65 dual-agency deals** (~22%)
- A former Coldwell Banker agent (now a Compass Manager) with ~1,176 sales → **zero** dual-agency transactions

These contrasting patterns **prove** the point:

- Low dual-agency = transparency
- Zero dual-agency = ethical culture
- High dual-agency = **engineered scarcity**

That is sandbagging.

And sandbagging is the **worst sin** in our profession: **cheating your own client for money**.

When the client is a senior, the conduct constitutes elder financial abuse — a felony under California law, and often a felony under other state laws as well, particularly when committed by a fiduciary. At the federal level, such abuse may also constitute wire fraud or financial exploitation under the Elder Abuse Prevention and Prosecution Act. Therefore, this Court need not resolve all factual disputes today, where criminal conduct takes precedence.

## V.  WHY THE MLS PROTECTS SENIORS — AND OFF-MLS RECREATES PAST ABUSES

The MLS solved the antitrust problems of the 1970s.

It provides:

- full exposure
- equal access
- simultaneous visibility
- consumer transparency
- competition, not control

Off-MLS "private networks" resurrect the old abuses:

- curated access
- restricted showings
- delayed syndication
- manipulated DOM

- elevated dual-agency rates
- engineered price suppression

This is **not** "privacy."
True privacy can be done **within** the MLS:

I have listed properties with remarks:

**"Qualified buyers only — all showings through listing agent."**

That protects the home.
That protects the seller.
That does NOT require hiding the listing from the entire market.

Off-MLS concealment is not privacy.
It is **control** — and control benefits brokers, not seniors.

## VI.   DAYS ON MARKET (DOM): HONEST TOOL VS. FALSE SIGNAL

DOM is an honest tool when used correctly.

When I am **working** a listing:

- Regular price reductions → signal a serious seller
- No reductions for months → signal a speculative seller

But unfair practices distort DOM:

### 1. Inherited DOM

A competent REALTOR® who takes over a failed listing may start at "2/182" — two days for the new listing, 180 for the old. This **punishes the wrong agent** and stigmatizes the listing.

A new listing is a **new professional effort**.

### 2. Off-MLS "prep periods"

A listing shop-tested off-MLS for 30–35 days, then entered as "new," produces **false DOM**:

- not truly day one
- pricing is already manipulated
- competition already suppressed
- seniors already harmed

False DOM is **information tampering**.

If the harmed party is a senior, that tampering becomes **financial abuse in effect**.

## VII.   LEGAL IMPLICATIONS: FIDUCIARY DUTY, ELDER ABUSE, ANTITRUST

### A. Fiduciary Duty

A listing broker is a **fiduciary**, not a salesperson with a "marketing option."

Deliberately engineering reduces exposure or suppressed price for a second commission (to get both sides, seller and buyer) is a **breach of loyalty, full disclosure, and care**.

### B. Elder Financial Abuse

Under **California Welfare & Institutions Code §15610.30**, elder financial abuse includes:

- taking real property
- for a wrongful use
- through concealment or undue influence

Concealing a senior's listing off-MLS — where they cannot see the harm being done — fits the statutory definition in substance.

I have lived elder-abuse patterns.
I know the pattern when I see it.

### C. Anticompetitive Conduct

Off-MLS funnels de-centralize inventory control:

- Brokers decide who sees the listing
- Brokers decide when the market sees it
- Brokers advantage in-house buyers
- Competing brokers and consumers are disadvantaged

This is **inventory monopolization** in mini-form — the same structure that fueled antitrust litigation decades ago.

## VIII. STANDING AND INDIVIDUAL AGENT CONSENT

Compass has asserted, both in public statements and in this action, that it represents the interests of its real estate agents -- agents who are, by law and contract, independent contractors, not employees. This distinction carries profound constitutional and procedural implications that bear directly on the matter of *standing*.

Under Article III of the U.S. Constitution, standing requires a plaintiff to demonstrate:

1. An injury-in-fact that is concrete and particularized.

2. A causal connection between the injury and the defendant's conduct; and

3. See Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) — requiring individualized harm for standing.

In the case at bar, Compass has not demonstrated written consent or legal authority from its thousands of independent contractors authorizing Compass to assert their rights or claim injury on their behalf. Independent contractors are not legally bound to Compass's litigation strategy, corporate positions, or settlement preferences. Nor can Compass presume a uniformity of harm or opinion across its national agent population without proof.

The Plaintiff's reliance on Kerry Carr's testimony—while specific and credentialed—does not cure the broader defect of lacking individual agent authorization. Even the strongest anecdotal testimony cannot substitute for systemic consent from independent agents whose business models, markets, and fiduciary duties may differ dramatically. If a single agent disagrees with Compass's legal strategy or claims of "irreparable harm," they have a right to opt out or intervene, as permitted under Rule 24 of the Federal Rules of Civil Procedure.

This Honorable Court should therefore consider whether Compass has legal standing to claim representation of its agents' fiduciary interests. If not, an Order to Poll or solicit written Agent Consent may be necessary to validate their claims or narrow their scope. The integrity of independent contractor status and the rights of dissenting agents depend on it.

---

## IX.   CONCLUSION

The truth may appear complicated.
Abuse often is.
It comes as a **pattern** of coordinated actions that only becomes clear to someone who has lived it.

**I have lived it.**

I recognize the pattern because I survived it.

I respectfully request that this Court:

1. Recognize the elder-abuse risk inherent in off-MLS concealment.

2. Decline to normalize or endorse off-MLS systems by treating them as harmless "marketing options."

3. **Consider referral to DOJ and/or other appropriate Government agencies for investigation of elder-financial-abuse and anticompetitive implications.**

The MLS protects seniors.
Off-MLS systems expose them to hidden harm.

As a REALTOR® and CRB who has spent 50 years raising standards, I offer this brief in defense of the profession I love, and in defense of the seniors who trust us with their homes — their greatest wealth, and often their last safeguard in life.

Respectfully submitted,

**Gregory V. Alkema, REALTOR®, CRB**
81 Hancock Dr.
Roseville, California, 95678
Email: **Greg@GregAlkema.com**
Phone: **(916) 626-9464**
Dated: December 1, 2025

Exhibit A

**Gregory V. Alkema, REALTOR®, CRB**

81 Hancock Drive

Roseville, CA 95678

Email: Greg@GregAlkema.com • Phone: (916) 626-9464

**November 10, 2025**

**Chika Sunquist, Commissioner**

California Department of Real Estate

651 Bannon Street, Suite 500

Sacramento, CA 95811

---

**Follow-Up to Prior Complaint**

**Commissioner Sunquist:**

The attached correspondence is a **criminal referral** to Attorney General Rob Bonta concerning potential violations by Compass Real Estate and its "Private Reserve" program.

I asked two things from the Department:

1. That I be authorized to collect an advance fee. After discussion, I voluntarily agreed that *Owner Plus One, Inc., REALTORS® (Coming in His Time)* would not collect such fees, understanding that trust accounts are complex to maintain.

2. That the Department address clear violations of California fiduciary and advertising law. To date, I have received **no response—nothing.**

The attached letter to Attorney General Bonta sets forth the complete record. If this Department fails to act, it becomes **complicit** in the matter.

Respectfully,

*Gregory V. Alkema*

**Gregory V. Alkema, RVP, REALTOR®, CRB**

Partner, *Owner Plus One, Inc., REALTORS® (Coming in His Time)*

California License # 01915968

**Attachments:** Complaint sent to AG Rob Bonta dated November 10, 2025.

**Gregory V. Alkema, REALTOR®, CRB**
Partner, Owner Plus One, Inc., REALTORS® (Coming in His Time)
81 Hancock Drive • Roseville, CA 95678
Email: Greg@GregAlkema.com • Phone: (916) 626-9464

**November 10, 2025**

**Attorney General Rob Bonta**
California Department of Justice
P.O. Box 944255
Sacramento, CA 94244-2550

---

# The Verdict Is In!  GUILTY!

The so-called *"Private Reserve,"* an off-REALTOR® MLS marketing scheme conceived by Mr. Robert Reffkin, CEO of Compass Real Estate, now looks like a crime scene — **and one involving likely elder financial abuse,** just like I've seen from Steve Van Andel and his lawyer, Richard L. Postma their bank, Macatawa, was used to steal $900,000 from me.

When elderly people and others are lured into **a catchy-sounding "Private Reserve,"** told it's to *"test the price"* or to *"reduce MLS days on market,"* and it produces an **18.6% lower price — an average loss of $302,000 per home** compared with MLS-listed properties (SFAR + RealReports, 2022–2024) — **that is not innovation; that is exploitation.**

According to the San Francisco Association of REALTORS® study released November 6, 2025, homes marketed openly on the MLS outperformed off-market sales by nearly one-fifth. The three-year analysis reviewed every verified, arm's-length residential sale in San Francisco County and concluded simply:

***"When listings compete in the open, sellers win."*** — Jay Pepper-Martens, CTO, SFAR

The evidence proves that Compass's "Private Reserve" systematically suppresses home values and deprives sellers — often seniors — of fair-market competition and full fiduciary representation. Such conduct may constitute fraudulent business practices, RICO violations, and Elder Financial Exploitation under California Welfare & Institutions Code § 15610.30, particularly when done with intent or reckless disregard for financial injury.

In my own case, Macatawa Bank, controlled by Amway Co-Chair Steve Van Andel and attorney Richard L. Postma, engaged in similar fiduciary deception and concealment

leading to prolonged elder harm. When institutions gain power without accountability, even law enforcement hesitates to act.

What Compass is now doing under Mr. Robert Reffkin's direction mirrors that same abuse — covert manipulation of financial outcomes for corporate advantage under the guise of sophistication. **It is a violation of fiduciary law, fair-housing ethics, and the public trust.**

**I therefore respectfully request a formal review and criminal investigation into:**

1. Compass Real Estate's "Private Reserve" marketing program, to determine whether it constitutes false advertising and elder financial exploitation under California and federal law.

2. The role of participating agents and managers who knowingly advised or pressured sellers into off-MLS sales that predictably resulted in lower prices.

3. Potential RICO and Antitrust violations arising from practices designed to undermine the REALTOR® MLS, restrain trade, and conceal market data.

This practice strikes at the heart of California's consumer-protection framework and the fiduciary duty codified in Business & Professions Code §§ 10176–10177. **No company, however large, should operate a private shadow-market that strips equity from homeowners — especially seniors — through deception cloaked as innovation.**

**The supporting evidence is now public and easily verified** through the San Francisco Association of REALTORS® and RealReports publication dated November 6, 2025.

**Based on the supporting evidence being in the public record,** if the AG fails to act on information this clearly accessible, **that failure itself becomes part of the record.**

---

Respectfully submitted,

Gregory V. Alkema, Regional Vice President (RVP), REALTOR®, CRB
*Owner Plus One, Inc., REALTORS® (Coming in His Time)*

**Gregory V. Alkema**
81 Hancock Drive
Roseville, CA 95678
Email: Greg@GregAlkema.com
Phone: (916) 626-9464

**November 10, 2025**

**Public Records Coordinator**
Office of Chief Trial Counsel
State Bar of California
845 S. Figueroa Street
Los Angeles, CA 90017

**Subject: Request for Confirmation and Records — Complaint Summary Dismissal; Attorney Response Inquiry**

Dear Public Records Coordinator,

I am the complainant in a matter previously filed with the State Bar of California concerning potential fiduciary and ethical violations involving Compass Inc. and its attorney/broker, **Samuel Kraemer**. The matter was closed by **summary dismissal**.

Pursuant to the **California Public Records Act** (Gov. Code § 6250 et seq.) and **Business & Professions Code § 6086.10**, I respectfully request written confirmation of whether Mr. Kraemer, or any counsel representing Compass Inc., submitted a **written response** to my complaint.

If such a response exists, please provide a redacted copy or specify the statutory basis for withholding it.
If no response was received, please confirm that fact in writing.

Please also note that I **appealed the summary dismissal** by reference to **Misprision of Felony (18 U.S.C. § 4)**, asserting that fiduciary misconduct of potential criminal character had been concealed. Accordingly, this follow-up is intended to document whether the Bar received and reviewed any response in light of its obligation to report or disclose such information to the appropriate authorities.

Thank you for your attention to this request.

Respectfully,

Greg Alkema

# Proving MLS Value with RESO Data

A Data-Driven Analysis from the San Francisco Association of REALTORS®

 

# Executive Summary

In a shifting real estate landscape marked by commission compression, private networks, and growing competition for control over data and client relationships, the Multiple Listing Service (MLS) remains the most transparent and trusted marketplace for residential real estate.

To empirically evaluate the continued value of the MLS, the San Francisco Association of REALTORS® (SFAR), in partnership with RealReports, conducted a data-based study examining the relationship between listing exposure on vs. off-MLS and sale price outcomes across San Francisco County. Using RESO standards as the foundation for consistent and comparable data, the analysis demonstrates that properties listed on the MLS achieve a significantly higher sale prices and show greater market transparency.

 

# Background: The Changing MLS Landscape

Industry lawsuits and private listing channels continue to challenge the traditional role of the MLS leading to questions of how off-MLS listings impact home buyers as sellers, as well as the integrity of the market overall.

What's at stake:
- Reduced transparency for buyers and sellers
- Incomplete comparable data and skewed appraisals
- Potential suppression of sale prices and longer time on market
- Erosion of trust in MLS data and systems

SFAR sought to move beyond the anecdotes and provide a collaborative, data-driven, standards-backed analysis of how the MLS impacts outcomes for consumers and practitioners alike.





# Research Objective

The study set out to measure how being listed on the MLS versus off-MLS affects sale price outcomes in San Francisco County. Specifically, SFAR aimed to:

1. Quantify on- vs. off-MLS sales trends over time.
2. Determine average sale price differences between the two groups.
3. Highlight the role of data standards (RESO) in producing credible, repeatable results.

## Methodology

Data Scope and Parameters
- Timeframe: 2022–2024
- Geography: San Francisco County
- Property Types: Single-family homes and duplexes



**4**



## Inclusions

- Verified listing data inclusive of the NORCAL MLS® Alliance (SFARMLS, MLSListings, bridgeMLS, MetroList, CRMLS, CCAR, BayEast and BAREIS MLS)
- Sales data from RealReports
- Listings identified as on-MLS and off-MLS transactions
- Unlisted, probate, and distressed sales

## Exclusions

- Top 5% of sale prices (to remove outliers)
- Inter-family, trust, and LLC transfers
- Deed renewals
- Data from 2020–2021 (excluded due to pandemic anomalies)

## Data Standards

The study utilized RESO Data Dictionary and Web API standards to normalize fields across systems, enabling an apples-to-apples comparison of listing and sales data. Using standardized schemas ensured consistency, eliminated false positives, and allowed for transparent, replicable insights.




# Key Findings

 ## Listing Count Trends

| Year | On-MLS Listings | % of Total |
|------|-----------------|------------|
| 2022 | 4,188 | 79.80% |
| 2023 | 3,198 | 82.80% |
| 2024 | 3,477 | 83.20% |

- While the absolute number of on-MLS listings declined, the percentage of on-MLS listings increased, reflecting a strengthening preference among agents to use the MLS platform despite industry disruptions.

## Mean Home Price Advantage

| Year | On-MLS Avg. Price | Change YoY |
|------|-------------------|------------|
| 2022 | $211K | 14.60% |
| 2023 | $376K | 31.90% |
| 2024 | $394K | 31.90% |

- Homes listed on the MLS sold for approximately $302K (+18.6%) more on average than those sold off-MLS.
- The on-MLS price advantage increased year-over-year, reinforcing the MLS's critical role in maximizing seller outcomes and maintaining fair market value.

6




# Why RESO Standards Matter

The integrity of this analysis hinged on consistent, standards-based data. By leveraging RESO-compliant data feeds, SFAR and RealReports were able to:

1. Ensure comparability across datasets and systems.
2. Minimize data noise and inconsistencies.
3. Accelerate time-to-insight through structured data access.
4. Support transparency, trust, and repeatability in findings.

RESO standards made it possible to measure MLS impact with scientific rigor — demonstrating the direct connection between data quality, operational standards, and market transparency.





# Implications for MLSs and Industry Partners

- **For MLS Executives:** Use similar data-driven frameworks to demonstrate value to members, regulators, and consumers.
- **For Associations:** Advocate for continued investment in RESO compliance to strengthen trust and interoperability.
- **For Vendors:** Design products that leverage standardized data models to improve analytics and member experience.

This research affirms that the MLS remains an essential public good — ensuring fairness, accuracy, and transparency in residential real estate.




8

# Conclusion

The findings from San Francisco show that on-MLS listings consistently outperform off-MLS transactions in both sale price and transparency metrics. The MLS ecosystem, grounded in RESO standards, continues to deliver measurable value to consumers and practitioners alike.

SFAR invites other MLSs and associations to collaborate on expanding this analysis nationwide — using standardized, transparent data to tell the story of MLS value at scale.

**Contact:**

Hud Bixler, CIO, SFAR

Jay Pepper-Martens, CTO, SFAR

James Rogers, CEO, RealReports

*Interested in replicating this study in your market?*

*Reach out to SFAR and RealReports to learn how RESO-compliant data can help quantify MLS value.*







UNITED ST
STAL SE

**P** | US POSTAGE PAID

**$16.85**

Origin: 95678
12/01/25
0566260678-12

PRIORITY MAIL®

0 Lb 10.60 Oz

**RDC 03**

EXPECTED DELIVERY DAY:  12/05/25

C003

SHIP
TO:
300 QUARROPAS ST
WHITE PLAINS NY 10601-4140



USPS SIGNATURE® TRACKING #

9510 8135 3246 5335 6605 06

ry date specifi
ents include $
service includ
onal insurance
mationally, a c
over certain items.
at http://pe.usps.
il Manual at http:/

ATE EN
NY WEIGHT

D ■ INS

000014

EP14F October 2023
OD: 12 1/2 x 9 1/2


PAPER
POUCH

FROM:

Greg Alkema
81 Hancock Dr
Roseville GA 95678


RECEIVED
DEC - 4 2025
PRO SE OFFICE

TO:

Pro Se Intake Unit
Hon: Jeannette A Vargas
US Magistrat Jodge
US District Court, SDNY
300 Quarropas St,
White Plains, NY 10601



Priority Mail® and Priority Mail International® packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.