# **EXHIBIT A**

**List of Certain Questions Raised by the Court During Closing Arguments**
**(Hearing Day 4 - Friday Nov. 21, 2025)**

| Page:Line | Question/Comment | Post-Hearing Filing |
|---|---|---|
| | **Questions to Zillow's Counsel** | |
| 719:14-720:16 | Because there is a lot of evidence in this record that Zillow, at the time it was formulating the listing access standards, understood that these standard would effectively end three-phase marketing. They talk about Compass being a bad actor. They talk about the possibility of market fragmentation if other brokerages follow that path, and they wanted to stomp it out That was one of the text chains that we saw, or Slack messaging. I forget. But there was certainly an understanding not just that we're just not going to carry the inventory and Compass can go out and do what it's going to do.<br><br>There was an understanding among those that were formulating this policy, that it would effectively end three-phase marketing because Compass would need to market its properties on Zillow, and that by shutting that door that they were effectively – they were regulating the industry. That's what they were attempting to do. I think there's certainly evidence in the record that suggests that was the intent.<br><br>So how do I take that combined with Dr. Aron's opinion that that is reflective of market power? Was Zillow aware and exercising that market power it would have by enacting listing access standards to effectively stop Compass's three-phase marketing? It wasn't simply saying, we don't want to carry it. You go ahead. You do you. It was saying, we want this to end as an industry-wide matter. We think Clear Cooperation Policy needs to continue forward. We're upset that NAR changed the policy. We're effectively going to make sure that the policy continues as an industry-wide phenomenon. | *See* Plaintiff's Proposed Findings of Fact ¶¶ 91-134; 144-161; 162-184. |
| 732:18-733:10 | Why can't you put it back together? There was a period of time before MLS and the internet where everything was, as we've heard in the real estate market, very fragmented. And then over time, we had the development of MLSs. We had the development of the Clear Cooperation Policy. What we have now is an evolution over time. There's a prediction that perhaps there could be fragmentation of the market if these standards were not put in place. Maybe there would, maybe there wouldn't.<br><br>But let's say at the end of the case we get an and I've granted the PI, and at the end of the case, we say actually that was imprudently granted. Defendants win, and now Zillow gets to put back into place the listing access standard. As you said, homeowners value going on | *See* Plaintiff's Proposed Conclusions of Law ¶¶ 276-277. |

| Page:Line | Question/Comment | Post-Hearing Filing |
|---|---|---|
|  | Zillow, and so they'll probably not want to go on to the private listing networks if they now have proliferated in the interim. And they'll stop listing their houses on private listing networks because they value Zillow. |  |
| 737:6-738:12 | Let me ask you to pause here because I think we do have a lot of testimony that certainly - and I think is undisputed - that Compass has poured a lot of time, effort, and money into developing its three-phase marketing. It leaned very hard into it, trainings, pushing it out to agents. And there's also a lot of testimony about their first mover advantage; how they thought this was gaining them a competitive advantage over other brokerages, and that that momentum could have built over time and that that has now come to a halt by virtue of the Zillow listing access standards. So isn't that a harm that is impossible to quantify what that growth of business could have been vis-a-vis the planned marketing campaign, the pushout to agents, how they could have expanded the homes that they would have been able to -- the listings that they would have gained.

And even Ms. Carr testified as to the fact that one listing can be exponentially important because then you get referrals, family and friends. The add-on effects of getting one listing can carry on ten years into the future. And so isn't that impossible to quantify when you take all of these metrics into account, the first mover advantage, the fact that this was, I think, fairly well established at this point that it was a cornerstone of Compass's strategy moving forward, and that all of that momentum is essentially lost? And yes, as you say, they can continue, but the reality is, both as Zillow acknowledged and Compass has put in evidence, that the listing access standards certainly make that a much harder thing for them to do. And that was the intent of Zillow to make it harder for them to carry forward with three-phase marketing; it was the stated intent internally of the policymakers. So given all of that, how can I find that there's not an unquantifiable harm to Compass? | See Plaintiff's Proposed Findings of Fact ¶¶ 22-34, 132-143, 158-160, 162-166.

See Plaintiff's Proposed Conclusions of Law ¶¶ 245-260. |
| 751:8-15 | Isn't there a flavor of that here, where Zillow is forgoing at least some percentage of Compass's listings through the listing access standards? It's listing those, the affected properties as off market, when we've heard so much testimony and evidence about how listings are Zillow's lifeblood and that it needs more and more listings, fresh listings, new listings, etc., but now it's turning down listings rather than putting them on its website to stomp out the 3PM program. | See Plaintiff's Proposed Findings of Fact ¶¶ 53, 95, 126-130, 156-157.

See Plaintiff's Proposed Conclusions of Law ¶¶ 347-351. |

3

| Page:Line | Question/Comment | Post-Hearing Filing |
|---|---|---|
| 757:11-758:2 | Let me ask you another question, which is: Obviously there was a lot of testimony about the stale listings and the evidence that more homeowners view more, schedule more tours, you know, get more views as soon as something hits the MLS. And then it degrades over time. But wouldn't that also be true for something that comes off of 3PM and then hits the MLS? Has anyone ever done any analysis—and it sounds like there hasn't been—of the attractiveness for Zillow platform users or any home search engine's platform users of premarketed homes versus nonpremarketed homes in terms of whether they're equally excited, equally scheduling tours, equally, you know, clicking on the call to action button, equally clicking up views? There seems to be a presumption in this argument that the two would not be equal; one would be viewed as stale an done would not be. But how would I, if I were to click on Zillow, ever know that something was premarketed? I wouldn't have that knowledge. | See Plaintiff's Proposed Findings of Fact ¶¶ 15, 39, 119-120, 131, 175, 177, 192.<br><br>See Plaintiff's Proposed Conclusions of Law ¶¶ 358-366. |
| 758:11-759:2 | But I think the point was made that everything hits the MLS at the same time. So let's say they're on Redfin and they're on Zillow and they're on realtor and they're on homes.com, but when this property hits the MLS, it's going to ping on everyone's app at the exact same time. So I'm still not seeing why that makes it stale in the consumer's mind…<br><br>That's my point. It's been premarketed, and it now encompasses 3-phased marketing. Phase 3, it hits the MLS. So now everyone gets the ping at the same time and all consumers who are excited about new inventory will be excited about this one equally as about the other pings they get. It's not going to come with a big sign that says, previously premarketed behind the velvet rope, you know, on Compass. | See Plaintiff's Proposed Findings of Fact ¶ 131.<br><br>See Plaintiff's Proposed Conclusions of Law ¶ 361-62. |
| 763:14-25 | I have a more general question, which is, there's been a lot of talk about who is harmed. And I guess I have a few questions, leaving aside whether Compass was harmed. But who are the relevant consumers here? Because as I sit here, I've heard a lot, the buyers, the sellers. Isn't it a little bit zero sum, though? I mean, if a buyer gets a better price and the seller is paying more, vice versa, you know, how do I evaluate who is the consumer that I need to be worried about being harmed? And is the agent a consumer? Is the agent a consumer of Zillow's products? We've heard that as well. So I, as the Court, who should I be looking to as the relevant consumer? | See Plaintiff's Proposed Findings of Fact ¶¶ 35-50.<br><br>See Plaintiff's Proposed Conclusions of Law ¶¶ 262-269, 315. |

4

| Page:Line | Question/Comment | Post-Hearing Filing |
|---|---|---|
| 764:11-16 | Let's say I find that 3-phased marketing assists the seller in maximizing prices. Is that procompetitive? Because from the seller's perspective, is that a benefit to the consumer versus a harm to the seller? I think conceptually I'm having a little bit of difficult in understanding how I should conceive of this. | See Plaintiff's Proposed Findings of Fact ¶¶ 41-44, 49. |
| 765:11-15 | So are agents never consumers of Zillow products? I understood that they were also, you know, users of the platform, they are purchasers of the software. It does seem like agents are a fairly essential part of this business model. | See Plaintiff's Proposed Findings of Fact ¶ 87. |
| 766:5-7 | Shouldn't agents have the choice, shouldn't sellers have the choice, shouldn't buyers have the choice? Zillow is basically making that choice for them. | See Plaintiff's Proposed Findings of Fact ¶¶ 35-40, 178-184<br><br>See Plaintiff's Proposed Conclusions of Law ¶¶ 267-269, 314-315, 376, 421. |
| 767:21-769:3 | The home sales may be local. I think we all agree with that. But really, the question is, the home search platforms, which is the product apparently that we're talking about, is that local. And I will say intuitively, when I think of, you know, Zillow or homes.com, I don't think of them as being localized. I don't think of them as changing from market to market. I don't know that the products that Zillow provides to agents or to servicers - perhaps it differs from local market to local market. I haven't heard any testimony about that during this hearing. It does seem that wherever you are in the country, you do the same search, and if you're a Zillow agent, you're able to access the same services and support from Zillow wherever you are in the country…<br><br>The fact that Compass is not in Salt lake City doesn't show the relevant market for online home platforms generally; it just may mean that they're a smaller-scale, you know, online home search platform than a realtor.com or homes.com or Zillow.com; just may mean that they're not at that level of competition, but it certainly doesn't mean that that's not the nationwide market. | See Plaintiff's Proposed Findings of Fact ¶¶ 56-64.<br><br>See Plaintiff's Proposed Conclusions of Law ¶¶ 299-303. |
| 769:7-9 | Right. And let's let compass.com go to the side. What about realtor.com, homes.com, Zillow.com, are they all nationwide? | See Plaintiff's Proposed Findings of Fact ¶¶ 59-61. |

| Page:Line | Question/Comment | Post-Hearing Filing |
|---|---|---|
| 772:23-773:1 | Am I misremembering Dr. Aron's testimony on this? And maybe I am misremembering. I thought she represented that her counterfactual analysis constituted direct evidence, but I don't have it in front of me. | *See* Plaintiff's Proposed Findings of Fact ¶¶ 193-197.<br><br>*See* Plaintiff's Proposed Conclusions of Law ¶¶ 290. |
| **Questions to Compass' Counsel** | | |
| 779:4-9 | Let me interrupt you for a moment. Again, I have the same question I had earlier. You are using the word "consumers," but the survey is just home sellers, correct?<br><br>So who is the relevant consumer? | *See* Plaintiff's Proposed Findings of Fact ¶¶ 35-50.<br><br>*See* Plaintiff's Proposed Conclusions of Law ¶¶ 267-269. |
| 790:20-791:7 | What it's restricting, as I understand it and as you just confirmed, is that consumers may not want to do three-phased marketing, and therefore it may not wind up on Compass.com by definition. But really where the pain point is is with the consumer because Compass is totally fine go ahead with three-phase marketing as-is and pushing that as a product. But the concern is that consumers faced with the choice are going to not elect to do three-phase marketing. And then I guess that would have this attenuated connection to whether it winds up on Compass.com. But unless that potential home seller actually forgoes listing with Compass, eventually the property will be on Compass.com presumably. It just won't be on premarketing on Compass.com. | *See* Plaintiff's Proposed Findings of Fact ¶¶ 67-85, 169-175.<br><br>*See* Plaintiff's Proposed Conclusions of Law ¶¶ 319, 328, 332-333. |
| 802:1-7 | How do you respond to Mr. Tuttle's argument that at this point, given that the relief sought is prospective in nature, the first mover advantage has already been lost, and so other entrants to the private listing market have already emerged. Therefore, to the extent that harm has already occurred, it wouldn't be remedied by the issuance of a preliminary injunction. | *See* Plaintiff's Proposed Findings of Fact ¶¶ 22-34, 45-50.<br><br>*See* Plaintiff's Proposed Conclusions of Law ¶¶ 256-260. |
| 806:6-22 | You absolutely have the opportunity to do that now. I'll just tell you where I'm skeptical so you can address it, and I want you to have the opportunity to do so. I have not seen the evidence that convinces me | *See* Plaintiff's Proposed Findings of Fact ¶¶ 208-226. |

| Page:Line | Question/Comment | Post-Hearing Filing |
|---|---|---|
| | that there was either an argument or that there was parallel conduct with a plus factor, so that is my concern with the Section 1 claim.<br><br>To the contrary, the evidence that was introduced, seems to suggest, at least as to any prior agreement, that there was no knowledge by Redfin in advance that Zillow was going to announce the listing access standards. And we have the contemporary message of Zillow's CEO that reflects the conversation they had on the day, where it does not seem to indicate and to the contrary seems to suggest the opposite, that this was news to Mr. Kelman, and Mr. Kelman also confirms that it was news to him. And so I think then you are just at parallel conduct, but I'm very happy to hear you on this issue and to convince me otherwise. | *See* Plaintiff's Proposed Conclusions of Law ¶¶ 381-407. |
| 811:10-12 | Is it undisputed that Redfin never actually executed on that policy? Have they ever taken any action with respect to that policy? | *See* Plaintiff's Proposed Findings of Fact ¶ 227. |
| 813:4-12 | Why is this just not common actions taken by competitors in response to a common stimuli? Where is the agreement or even, as you say, the parallelism? To me it seems as if Mr. Kelman has had a previously expressed very public opinion on his view about private listings. And he sees that Zillow has taken this action and it aligns with Redfin's priorities as well, and they contemplate taking a similar action in response to the common external event. Is that a conspiracy? | *See* Plaintiff's Proposed Findings of Fact ¶¶ 208-226.<br><br>*See* Plaintiff's Proposed Conclusions of Law ¶¶ 381-407. |
| 813:14-15 | Particularly, it's a different policy. It's not identical | *See* Plaintiff's Proposed Findings of Fact ¶¶ 219-220<br><br>*See* Plaintiff's Proposed Conclusions of Law ¶¶ 405-407. |
| 817:6-819:4 | Where is the evidence that it wasn't always their intent to send it to the MLS?.. Where is that?... This is your burden of proof, and you're saying there's a quid pro quo, that they gave something up, that previously they were going to have these listings sent purely to Zillow. I've seen no evidence of that. There's never been an indication in any of the internal documents on the Zillow side that you have—if you have something, show it to me now. But where is the evidence that prior to this phone call, they were going to only have brokers send their listings to Zillow specifically and not to the MLs?... Where is the quid pro quo?... But where is the evidence that prior to this phone call, Zillow's intent was for brokers or anyone to be sending the listings directly to Zillow and bypassing the MLS? Where is that?... | *See* Plaintiff's Proposed Findings of Fact ¶¶ 110, 219-226.<br><br>*See* Plaintiff's Proposed Conclusions of Law ¶¶ 402-404. |

| Page:Line | Question/Comment | Post-Hearing Filing |
|---|---|---|
| | So it could just be clarifying what was always the intent, in which case there was no quid pro quo. | |
| 824:13-18 | Do I have to find that Zillow's intent was to suppress competition in the home search market and it was directed at compass.com? Because all the evidence we've seen is that the intent was on the brokerage side of the business. I don't think we've seen anything that indicates that Zillow ever cared about compass.com as website. | *See* Plaintiff's Proposed Findings of Fact ¶¶ 65-69, 92-106.<br><br>*See* Plaintiff's Proposed Conclusions of Law ¶¶ 310-318, 319-322. |
| 830:24-25 | How is a private listing network a competitor to a nationwide home search engine? | *See* Plaintiff's Proposed Findings of Fact ¶¶ 65-69, 92-106, 109-113. |
| 836:1-7 | But at the end of the day, isn't your complaint that Compass's product, or certain of its products, because many of Compass's listings are going to Zillow, but that you want them to host all of your products? And how is that not duty to deal? How is that just, we want you to take all of our products, and why do they not have a right to say, we want some but not all of them? | *See* Plaintiff's Proposed Conclusions of Law ¶¶ 316-348. |