## Message

| | |
|---|---|
| **From**: | Glenn Kelman [glenn.kelman@redfin.com] |
| **on behalf of** | Glenn Kelman <glenn.kelman@redfin.com> [glenn.kelman@redfin.com] |
| **Sent**: | 3/13/2025 9:44:56 AM |
| **To**: | Christian Taubman [christian.taubman@redfin.com]; Anthony Kappus [anthony.kappus@redfin.com]; Alina Ptaszynski [alina.ptaszynski@redfin.com]; Kacey Hawker [kacey.hawker@redfin.com] |
| **Subject**: | Re: Ketchmark threatens to sue NAR if it keeps clear cooperation |

+  and ▆▆▆ ... (oops)

**Compass, Inc. v. Zillow, Inc. et al.,**
**No. 1:25-cv-05201-JAV-SDA (S.D.N.Y)**
**PLAINTIFF'S P.I. HEARING EXHIBIT**
**PX-120**

> On Thu, Mar 13, 2025 at 9:44 AM Glenn Kelman <glenn.kelman@redfin.com> wrote:
> Yep, Anthony and Alina, when is good? It should be four of us, for 45.
>
>> On Thu, Mar 13, 2025 at 8:46 AM Christian Taubman <christian.taubman@redfin.com> wrote:
>> Just us--I do think we should meet to talk about this--maybe tomorrow? To me it does look more and more likely that Compass will successfully dismantle clear cooperation this year.
>>
>>> On Wed, Mar 12, 2025 at 6:57 AM Alina Ptaszynski <alina.ptaszynski@redfin.com> wrote:
>>> Story below. Can we meet soon to discuss strategy for CC if it is overurned?
>>>
>>> Related tidbit: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
>>>
>>> **Fate of Clear Cooperation at hand as Ketchmark issues new warning**
>>> *As NAR prepares to announce its pocket listing rule decision 'in the coming weeks,' attorney Michael Ketchmark said he'll consider legal action against brokers who vote to maintain the rule*
>>>
>>> by Andrea V. Brambila
>>> Today, March 12, 2025
>>>
>>> Leaders of the National Association of Realtors are set to decide the fate of the Clear Cooperation Policy, its controversial pocket listing rule, within weeks, sources told Inman. And when they do, they'll do so with a potential legal threat hanging over them.
>>>
>>> Michael Ketchmark of Ketchmark & McCreight, lead plaintiffs' counsel for homesellers in an ongoing lawsuit known as Gibson, told Inman in a phone interview Monday that his firm will decide its next move depending on the vote outcome.
>>>
>>> "It's my expectation that after this meeting, when this comes to a NAR vote overall, that they'll do the right thing and remove that policy and let the free market continue to work," Ketchmark said.
>>>
>>> "If they refuse to do so, and the committee votes in favor of this policy, and it goes on and the changes aren't made, we'll take the depositions of the people involved and figure out exactly why they did that and what was the motivation behind it, and then make a decision at that point on how to proceed."
>>>
>>> NAR's Clear Cooperation Policy requires listing brokers to list properties in Realtor-affiliated multiple listing services within one business day of publicly marketing them. The policy has been debated since 2019, when NAR's board of directors first approved the rule.
>>>
>>> Proponents of the rule argued it would provide buyers with the equal access to listings that fair housing laws

ATTORNEYS' EYES ONLY                                                                                              REDFIN_CZ00000009

require and limit "pocket listings" — when agents and brokers don't put listings in the MLS, sometimes in the hope of double-ending deals. Opponents argued that homeowners should be able to decide how their properties were marketed and that the rule violated antitrust laws by limiting competition among listing services.

That debate had died down until the CCP burst into the limelight again following rule changes due to NAR's $418 million settlement of multiple antitrust lawsuits last year. For several months, passionate detractors and backers of the rule have been duking out its pros and cons. NAR's MLS Technology and Emerging Issues Advisory Board met twice before NAR's annual conference in November, NAR NXT, to consider changes to the rule before ultimately deciding not to recommend any changes and handing the issue over to the eight-member NAR Leadership Team.

The NAR Leadership Team currently includes President Kevin Sears, President-Elect Kevin Brown, First Vice President Christine E. Hansen, Treasurer Craig W. Sanford, Vice President of Association Affairs Jennifer Branchini, Vice President of Advocacy Sara Lipnitz, leadership team member Vince Malta, and CEO Nykia Wright. All except Wright are brokers.

Several sources who asked not to be named told Inman that NAR's leaders will meet and hold a vote on the CCP sometime before the end of the month.

In a statement, a NAR spokesperson confirmed that the 1.5-million member trade group's evaluation of the policy was almost done and that NAR would announce its decision "in the coming weeks."

"The National Association of Realtors (NAR) has been engaged in a thorough and deliberate process to evaluate the Clear Cooperation Policy (CCP), seeking input from a broad range of industry stakeholders, including Realtors, brokerage leaders, MLS executives, association executives, and multicultural partner organizations," the spokesperson said.

"Over the last several months, NAR has followed a rigorous process in assessing this input, including seeking the expertise of the MLS Technology and Emerging Issues Advisory Board and considering the implications of a range of potential paths forward.

"NAR remains committed to transparency and engagement with members as we navigate this process to ensure that any decision reflects the best and balanced interests of the industry, including the diverse perspectives of our members and the consumers they serve. The process is now nearing its completion, and NAR expects to provide an update on the decision in the coming weeks."

It is unclear at this point whether it will be the NAR Leadership Team that solely votes on whether to change the CCP or whether it will be the NAR Executive Committee that votes. The NAR Executive Committee is a subset of NAR's board of directors and has 71 members, including the eight members of the NAR Leadership Team. Most members of the executive committee are also brokers.

NAR declined to provide specifics on when the meeting and vote will take place, who would be voting, and which proposal(s) are up for a vote. NAR also declined to respond to Ketchmark's comments regarding potential legal action.

In his interview with Inman, Ketchmark made clear that his focus was not on NAR as an organization.

"We've settled with the National Association of Realtors," Ketchmark said.

ATTORNEYS' EYES ONLY

REDFIN_CZ00000010

"They've upheld their end of the bargain. They've done everything that they've told us they'll do, and they've acted appropriately as [to] all parts of the settlement process."

But Ketchmark said he did have his eyes on the individual brokers who would be voting on the CCP.

"I don't want anybody to suggest or think that I'm threatening the National Association of Realtors or threatening anybody in that organization, but what I am saying is that whoever is voting to continue and enforce this rule, if we believe that it is done with anti-competitive goals in mind, that we will take their depositions and will hold anyone who is involved in that responsible for that," Ketchmark said.

"There are legal means that are available to hold any corporations or brokers or companies who are involved in this accountable, and that's what we would do," he added.

Ketchmark made clear that he was against the CCP.

"Homeowners are the ones who own their homes, not the National Association of Realtors, and if the homeowner and their agent make a decision that they don't want to list it on any particular site for any particular reason, they ought to have a right to do that," Ketchmark said.

"Why in the world, if I own a home in the Midwest or anywhere in the country, if I make a decision that I want to have my agent make a flyer and pass it out at it at a local baseball game or pass it out at a church meeting or a school board meeting, or pass around flyers in my neighborhood, should I not have a right to do that?

"That organization needs to be aware of the fact that not only will our law firm and other attorneys looking at this, but the eyes of the world are upon them, and it's time to do the right thing and let homeowners make decisions about their houses and not a bureaucratic organization."

Asked about the fair housing argument made by backers of the policy, he said NAR had "a long history" of enacting anti-competitive rules "designed to hurt consumers and homebuyers and home purchasers under the argument that that has somebody else's best interest in mind. I just don't buy it."

But, he added, if those who vote to keep the rule "are comfortable defending themselves and explaining why they're doing it, exactly the motivation behind it, then that's fine. Let them do it, and let's see if this can stand the light of day."

Ketchmark also didn't buy the argument made by some that if the policy is repealed, large brokers may keep their listings off of the MLS and the public listing portals that are fed by MLSs, such as Zillow, Realtor.com, Homes.com and Redfin, will not be able to display a comprehensive set of listings to consumers and consumers will have to either go to multiple websites or call several brokers to see all of the listings for sale. This is the reality in many countries around the world without MLSs.

"I have more faith in the free market than the people who are making arguments like that," Ketchmark said.

"Change is here. Change is upon us. It's time that people accept that and embrace that."

He declined to say whether his law firm had sent NAR a letter informing the trade group's leaders of the firm's opposition to the rule or threatening to take legal action if it wasn't repealed.

"Our feelings about the Clear Cooperation policy are well known within NAR and NAR's leadership," Ketchmark said.

ATTORNEYS' EYES ONLY

REDFIN_CZ00000011

Regarding deposing NAR's leaders, Ketchmark said that even though NAR is no longer a party to the Gibson case because of its settlement, "it doesn't mean that the individual entities that are members of NAR that are going to be following and enforcing that rule aren't going to have to be held accountable."

He clarified that you don't have to file a lawsuit against someone to take their deposition.

"We can take the deposition of anybody who's involved in this process, whether or not there's a lawsuit against them, whether or not a release has been issued," he said.

He declined to say whether he was aware of any communications between NAR's leaders that would indicate there was anything objectionable or nefarious happening in regards to the policy.

Asked whether he had been in contact with Compass, the large brokerage that has been the most vocal proponent of repealing the policy he said, "No, I'm not. All of the concerns I've had have been directed to me by individual agents. [We're] doing this on behalf of the [Gibson] plaintiffs who we are representing. It's not on anybody else's behalf."

When pressed as to why he was not currently considering suing NAR and whether NAR was released from any liability relating to the policy as it currently stands by the settlement, Ketchmark declined to say what the settlement did or did not cover.

"We're not making any allegation or suggestion that NAR right now is doing anything in violation of the release or violation of our settlement with them," Ketchmark said.

"But what I'm telling you is, if they're making a decision, from this point forward, whether they're going to continue and enforce the Clear Cooperation Policy, that can continue to have concerns if it's being used in the marketplace as a vehicle for furthering anti-competitive antitrust violations.

"That's going to subject anyone who's involved in that matter to exposure, and that should be in the forefront of the minds of the men and women who are going to be voting either later this week or next on that policy. If they're doing it for the wrong reasons, they're going to be held accountable."

He said he wanted to give NAR and its leaders the "opportunity to do the right thing" and remove the rule before issuing any threats.

"Let's just see if they do it, and if not, I will continue to have conversations with other counsel, and we'll make a decision about what we think is in the best interest of homesellers in the United States," he said.

"That's how we'll proceed."

Email Andrea V. Brambila.

--
**ALINA PTASZYNSKI | REDFIN | COMMUNICATIONS DIRECTOR**
alina.ptaszynski@redfin.com | ▮▮▮▮▮▮▮ | WASHINGTON, D.C.

Want the latest data on the housing market? Find it in our Data Center.

--
**CHRISTIAN TAUBMAN | REDFIN |** CHIEF GROWTH OFFICER
christian.taubman@redfin.com | Tel: ▇▇▇▇▇▇ | he/him

--
Glenn Kelman (he) | Redfin | ▇▇▇▇▇▇ (cell)

--
Glenn Kelman (he) | Redfin | ▇▇▇▇▇▇ (cell)

ATTORNEYS' EYES ONLY