# Congress of the United States

## Washington, DC 20515

February 19, 2026

The Honorable Pamela Bondi
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Dear Attorney General Bondi:

We write to request information regarding the Department of Justice's (DOJ's) review of the merger between Compass, Inc. (Compass) and Anywhere Real Estate, Inc. (Anywhere). According to recent public reporting, the Department cleared this transaction under extraordinarily questionable circumstances.[1] According to a Wall Street Journal report, "the head of the Justice Department's antitrust division, Gail Slater, wanted to launch an extended review of the merger to weigh whether it was anticompetitive," but "Compass and its lawyers appealed above her, to the office of Deputy Attorney General Todd Blanche," who overruled her and approved the merger.[2] This decision raises questions about corruption under your watch and its impact on housing affordability for American families. Allowing this merger will make it easier for these firms to exert greater control over the real estate market, limit consumer access and choice, and ultimately exacerbate the housing crisis that has put homeownership out of reach for millions of Americans.[3]

Real estate brokerage behemoths Compass and Anywhere announced a $1.6 billion merger in September 2025, which was subject to DOJ review and approval.[4] While the deal was expected to close in late 2026, Compass announced that it had completed its acquisition of Anywhere on January 9, 2026.[5] The transaction combined two of the nation's largest residential real-estate

---

[1] The Wall Street Journal, "Real-Estate Brokerages Avoided Merger Investigation After Justice Department Rift," Dave Michaels and Nicole Friedman, January 9, 2026, https://www.wsj.com/us-news/law/real-estate-brokerages-avoided-merger-investigation-after-justice-department-rift-e846c797.

[2] Id.

[3] Joint Center for Housing Studies of Harvard University, "The State of The Nation's Housing 2025," 2025, p. 9, https://www.jchs.harvard.edu/sites/default/files/reports/files/Harvard_JCHS_The_State_of_the_Nations_Housing_2025.pdf; National Association of Realtors, "First-Time Home Buyer Share Falls to Historic Low of 21%, Median Age Rises to 40," press release, November 4, 2025, https://www.nar.realtor/newsroom/first-time-home-buyer-share-falls-to-historic-low-of-21-median-age-rises-to-40.

[4] Compass, "Compass Announces Combination with Anywhere Real Estate in All-Stock Transaction," press release, September 22, 2025, https://investors.compass.com/news/news-details/2025/Compass-Announces-Combination-with-Anywhere-Real-Estate-in-All-Stock-Transaction/default.aspx; The New York Times, "Compass to Buy Top Rival, Further Condensing Brokerage Industry," Rukmini Callimachi, September 22, 2025, https://www.nytimes.com/2025/09/22/realestate/compass-anywhere-real-estate-deal.html.

[5] Compass, "Compass and Anywhere Real Estate Begin a New Chapter as One Company Built for Real Estate Professionals," press release, January 9, 2026, https://investors.compass.com/news/news-details/2026/Compass-and-Anywhere-Real-Estate-Begin-a-New-Chapter-as-One-Company-Built-for-Real-Estate-Professionals/default.aspx.

brokerages, resulting in the largest agent network in the country.[6] Purchasing a home is one of the most significant financial decisions most American families will ever make.[7] Yet, an undersupply of homes and high purchasing costs are pushing homeownership opportunities even further out of reach.[8] Affordability is even further constrained by market consolidations that hamstring consumers' ability to negotiate agent commissions or limit their access to supply options through private home listing services, a practice being widely adopted by Compass.[9]

Because of their potential impact on costs and markets, reviews of proposed mergers must be guided by an evenhanded process that applies the same scrutiny to all parties—especially in cases like the Compass-Anywhere merger, where consolidation may raise risks of reduced competition, diminished transparency, and higher housing costs for millions of Americans.[10]

The fact pattern reported in the Compass-Anywhere deal is deeply disturbing, indicating that it may be another example of well-connected industries and lobbyists obtaining inside access to high-level Trump Administration DOJ officials, and using this access to pervert the antitrust process to obtain approval of anticompetitive mergers that will reduce competition and harm the public.

The Antitrust Division has stated that merger review is guided by "the facts and the law," assessing "relevant and meaningful evidence" to determine whether a transaction may "substantially lessen competition or tend to create a monopoly."[11] In practice, review begins with

---

[6] Barrons, "Compass, Anywhere Merger Creates Real Estate Giant. How Browsing Home Listings Is About to Change," Shaina Mishkin, January 9, 2026, https://www.barrons.com/articles/compass-anywhere-complete-merger-real-estate-brokerage-home-listings-zillow-eb472813; ResiClub, "America's two largest brokerages are merging: Compass will have 340,000 real estate agents once the Anywhere deal closes," Lance Lambert, September 22, 2025, https://www.resiclubanalytics.com/p/two-largest-brokerages-combine-compass-will-have-340000-real-estate-agents; Curbed, "Compass Just Became the World's Largest Brokerage. Now What?," Kim Velsey, January 14, 2026, https://www.curbed.com/article/compass-anywhere-merger-worlds-largest-brokerage-buyers.html.

[7] The Foundation for Research on Economic Opportunity, "Rethinking the 30-Year Mortgage," Roger Valdez, https://freopp.org/whitepapers/rethinking-the-30-year-mortgage/.

[8] Bankrate, "Priced out of 75% of the market, Americans' dream of homeownership has become a luxury," Alex Gailey, December 8, 2025, https://www.bankrate.com/mortgages/american-dream-of-homeownership-turning-into-luxury/.

[9] Letter from Senators Elizabeth Warren and Ron Wyden to DOJ Assistant Attorney General Abigail Slater and FTC Chairman Andrew Ferguson, December 16, 2025, https://www.warren.senate.gov/imo/media/doc/20251216lettertodojandftconmergerbetweencompassincandanywhererealestateinc.pdf; Real Estate News, "'Illogical' or 'awesome'? Private listings divide Compass agents," AJ LaTrace, September 11, 2025, https://www.realestatenews.com/2025/09/11/illogical-or-awesome-private-listings-divide-compass-agents; Compass, "Compass Launches Compass Private Exclusives Book, Accessible to All Agents," press release, May 1, 2025, https://www.compass.com/newsroom/press-releases/4aPEadsMI1yWCqXnY2NON2/; Compass, "Private Exclusives," Accessed on February 9, 2026, https://www.compass.com/private-exclusives/; Yahoo Finance, "Zillow's private listings ban can proceed amid legal fight with Compass, federal judge rules," Claire Boston, February 7, 2026, https://finance.yahoo.com/news/zillows-private-listings-ban-can-proceed-amid-legal-fight-with-compass-federal-judge-rules-233326482.html.

[10] Letter from Senators Elizabeth Warren and Ron Wyden to DOJ Assistant Attorney General Abigail Slater and FTC Chairman Andrew Ferguson, December 16, 2025, pp. 6-7, https://www.warren.senate.gov/imo/media/doc/20251216lettertodojandftconmergerbetweencompassincandanywhererealestateinc.pdf.

[11] U.S. Department of Justice and Federal Trade Commission, "Merger Guidelines," December 18, 2023, https://www.justice.gov/atr/media/1329301/dl?inline; Federal Trade Commission, "Model Request for Additional

Hart-Scott-Rodino filings, triggering an initial 30-day waiting period for most transactions, and —if concerns remain—may be extended through voluntary requests or a "Second Request" to allow expert staff to evaluate competitive effects, claimed efficiencies, and potential remedies before deciding whether to clear the merger, seek a remedy, or bring an enforcement action.[12]

This is not what appears to have happened in the Compass-Anywhere merger. Recent reporting indicates that Antitrust Division leadership, including then-Assistant Attorney General Gail Slater, sought a more extended investigation of the transaction, but that senior DOJ leadership— including Deputy Attorney General Todd Blanche—cleared the transaction without that deeper review.[13] This approval from Mr. Blanche came after Compass reportedly hired Mike Davis, a Trump-aligned lawyer who has been involved in other merger review controversies,[14] to help gain approval of the Compass-Anywhere merger, and reporting suggests that Davis "helped Compass make its case to Blanche's office," contributing to the accelerated clearance timeline.[15] Assistant Attorney General Slater was subsequently forced out of the Justice Department.[16] Separate reporting indicates that Davis boasted, "I recommended her hiring. And her firing[,]"[17] and declared "good riddance" minutes after her departure became public.[18]

These developments raise serious questions about whether—under your watch—the Department's merger review process has been corrupted, whether antitrust experts were afforded appropriate independence, whether well-resourced parties had an uneven ability to obtain high-level access outside normal channels, and whether parties agreed to anything in return.

---

Information and Documentary Material (Second Request)," June 2010, pp. 1-2, https://www.ftc.gov/sites/default/files/attachments/premerger-introductory-guides/guide3.pdf.

[12] U.S. Department of Justice and Federal Trade Commission, "Merger Guidelines," December 18, 2023, https://www.justice.gov/atr/media/1329301/dl?inline; Federal Trade Commission, "Model Request for Additional Information and Documentary Material (Second Request)," June 2010, pp. 1-2, https://www.ftc.gov/sites/default/files/attachments/premerger-introductory-guides/guide3.pdf.

[13] The Wall Street Journal, "Real-Estate Brokerages Avoided Merger Investigation After Justice Department Rift," Dave Michaels and Nicole Friedman, January 9, 2026, https://www.wsj.com/us-news/law/real-estate-brokerages-avoided-merger-investigation-after-justice-department-rift-e846c797.

[14] Id.; House Committee on the Judiciary, "Judiciary Democrats Rebuke DOJ's Corrupt Settlement of HPE-Juniper Merger and Request Comprehensive Review by the Court," press release, September 9, 2025, https://democrats-judiciary.house.gov/media-center/press-releases/judiciary-democrats-rebuke-doj-s-corrupt-settlement-of-hpe-juniper-merger-and-request-comprehensive-review-by-the-court.

[15] The Wall Street Journal, "Real-Estate Brokerages Avoided Merger Investigation After Justice Department Rift," Dave Michaels and Nicole Friedman, January 9, 2026, https://www.wsj.com/us-news/law/real-estate-brokerages-avoided-merger-investigation-after-justice-department-rift-e846c797.

[16] Post on X by Gail Slater, February 12, 2026, https://x.com/gailaslater/status/2021975634445304262?s=20; The Wall Street Journal, "Justice Department's Antitrust Chief Leaves Post After Clashes With Leadership," Dave Michaels, February 12, 2026, https://www.wsj.com/politics/policy/justice-departments-antitrust-chief-leaves-post-6038bb37.

[17] Post on X by Gabe Kaminsky, February 12, 2026, https://x.com/gekaminsky/status/2022076820678496386?s=46; The Free Press, "Trump's Tough-Talking Antitrust Chief Is Pushed Out," Gabe Kaminsky, February 12, 2026, https://www.thefp.com/p/trumps-tough-talking-antitrust-chief.

[18] Post on X by Mike Davis, February 12, 2026, https://x.com/mrddmia/status/2021978100586995761?s=46; The Washington Post, "Justice Dept.'s head of antitrust departs amid tensions on enforcement," Perry Stein and Cat Zakrzewski, February 12, 2026, https://www.washingtonpost.com/national-security/2026/02/12/gail-slater-antitrust-resignation/.

Senators have previously raised concerns about corruption under your watch at DOJ. In July, Senators wrote to Federal Judge P. Casey Pitts regarding DOJ's settlement of Hewlett Packard-Juniper networks merger, after reports indicated that "defendants retained lobbyists and consultants with ties to the White House and the Office of the Attorney General to obtain a settlement that falls well outside the public interest."[19] And in December 2025, Senators wrote directly to you after a senior DOJ official "warned that DOJ is 'now overwhelmed with lobbyists with little antitrust expertise going above the antitrust division leadership seeking special favors with warm hugs.'"[20] Earlier this week, seven Senators wrote to you regarding reports that Assistant Attorney General Slater was forced out of her role, citing reports about Mr. Davis's involvement and raising concerns about the Administration's commitment to enforcing the nation's antitrust laws.[21]

Corruption in this process could exacerbate the current housing crisis, under which foreclosures are up 26 percent and mortgage delinquencies are at a four-year-high,[22] while also setting a dangerous precedent that invites political interference in merger review across industries and undermines the antitrust laws that Congress put in place to safeguard competition and protect Americans.

To help us understand the process that resulted in the Trump Justice Department rubber stamping the merger of two of the largest brokerages in the nation, and to ensure that the Department enforces antitrust law independently, consistently, and evenhandedly, we respectfully request that the Department provide written responses to the following questions no later than March 5, 2026:

1.  On what day did the merging parties submit information about the merger as required by the Hart-Scott-Rodino Act?

2.  Please describe the Antitrust Division's review of the information submitted by Compass and Anywhere.

3.  Did the Antitrust Division identify any competition concerns with the Compass-Anywhere merger following its review of the information submitted by the parties? Please describe these concerns.

---

[19] Letter from Senators Elizabeth Warren, Amy Klobuchar, Cory Booker, and Richard Blumenthal to Judge P. Casey Pitts, p. 1, July 28, 2025, https://www.warren.senate.gov/imo/media/doc/letter_from_senator_warren_to_judge_pitts_on_hpe-juniper_merger_and_tunney_act.pdf.

[20] Letter from Senator Elizabeth Warren and Senator Richard Blumenthal to U.S. Attorney General Pamela Bondi, December 17, 2025, https://www.warren.senate.gov/imo/media/doc/warren_blumenthal_letter_to_ag_bondi_re-_warner_brosrecusal.pdf.

[21] Semafor, "Senate democrats want answers on DOJ antitrust firing," Rohan Goswami, February 15, 2026, https://www.semafor.com/article/02/15/2026/senate-democrats-take-aim-at-slaters-firing-live-nation-settlement.

[22] Attom, "U.S. Foreclosure Rate by State – December 2025," Megan Hunt, January 16, 2026, https://www.attomdata.com/news/most-recent/foreclosure-rates-by-state/; National Mortgage News, "Delinquencies jump to 4-year-high," Colin McNamara, December 23, 2025, https://www.nationalmortgagenews.com/news/mortgage-delinquencies-hit-4-year-high.

4. Did the Antitrust Division intend, at any point, to request additional information from Compass-Anywhere, either through voluntary requests or a Second Request?

    a. When was this decision communicated to non-Antitrust Division staff at the Justice Department?

    b. To whom did the Antitrust Division communicate this decision? Please list all applicable individuals and their titles.

5. Who made the decision to avoid pursuing further investigation into the Compass-Anywhere merger?

6. Why was the decision made to avoid pursuing further investigation into the Compass-Anywhere merger?

7. What was Deputy Attorney General Todd Blanche's involvement in the Compass-Anywhere merger review?

8. What was your involvement in the Compass-Anywhere merger review?

9. Which other non-Antitrust Division personnel were involved in the Compass-Anywhere merger review? Please describe their involvement.

10. Were any non-Justice Department federal employees involved in the Compass-Anywhere merger review? Please describe their involvement.

11. Who at the Department of Justice communicated with Mike Davis regarding the Compass-Anywhere merger? Please describe the contents of these discussions.

12. Specifically, did Mr. Davis or his representatives communicate in any way with Mr. Blanche or anyone in his office? What was the nature of these communications?

13. What safeguards are in place to prevent outside advocates from bypassing career staff by appealing directly to senior DOJ leadership?

    a. Please describe whether and how these safeguards were applied with respect to the Compass-Anywhere merger.

14. Please describe any communications regarding the Compass-Anywhere merger that took place outside of normal Antitrust Division merger review channels, including informal meetings, calls, or emails not shared with Antitrust Division personnel.

15. How does DOJ ensure that similarly situated companies receive the same level of scrutiny, regardless of political connections, size, or access to senior officials?

16. What steps is DOJ taking to ensure that small businesses and less-resourced parties are not disadvantaged in merger reviews by an uneven playing field?

17. Why was Assistant Attorney General Slater ousted?

    a.   Please describe any conversations that you or others at the Justice Department had with non-Justice Department individuals regarding Assistant Attorney General Slater's departure.

We appreciate your attention to this matter.

Sincerely,

Elizabeth Warren
United States Senator

Becca Balint
Member of Congress

Charles E. Schumer
United States Senator

Bernard Sanders
United States Senator

Henry C. "Hank" Johnson, Jr.
Member of Congress

Madeleine Dean
Member of Congress

Yassamin Ansari
Member of Congress

Jerrold Nadler
Member of Congress

Maxine Dexter
Member of Congress

Bonnie Watson Coleman
Member of Congress

Seth Moulton
Member of Congress

Jésus G. "Chuy" García
Member of Congress

Greg Casar
Member of Congress

Amy Klobuchar
United States Senator

Robin L. Kelly
Member of Congress

Ron Wyden
United States Senator

Peter Welch
United States Senator

Pramila Jayapal
Member of Congress